**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No.: 19-mc-00290-LPS |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF
<u>ATTACHMENT *FIERI FACIAS*</u>**

OF COUNSEL:

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice pending*)
James L. Bromley (*pro hac vice pending*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Angela N. Ellis
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
ellisan@sullcrom.com

A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
Telephone: 302-778-1000
Facsimile: 302-261-0292
bayliss@abramsbayliss.com

*Attorneys for Defendant Bolivarian Republic of
Venezuela*

Dated:  November 11, 2019

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ..............................................................................1

SUMMARY OF THE ARGUMENT ...........................................................................................2

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT ...........................................................................................................................8

I.     COLLATERAL ESTOPPEL MAY NOT BE APPLIED HERE BECAUSE
       CIRCUMSTANCES IN THE REPUBLIC AND ITS RELATIONSHIP WITH
       PDVSA HAVE CHANGED DRAMATICALLY SINCE *CRYSTALLEX I* WAS
       DECIDED. ...................................................................................................................9

       A.     This Court conducted its *Bancec* analysis in light of circumstances at the
              time of its decision. ...............................................................................................10

       B.     The circumstances in the Republic have changed dramatically since
              *Crystallex I* was decided. ......................................................................................11

       C.     These changed circumstances foreclose application of collateral estoppel
              here. ........................................................................................................................13

II.    COLLATERAL ESTOPPEL MAY NOT BE APPLIED HERE BECAUSE THE
       RELIEF THAT OIEG SEEKS RAISES SANCTIONS ISSUES NOT
       LITIGATED IN *CRYSTALLEX*. ...................................................................................13

III.   ALTERNATIVELY, THE COURT SHOULD DEFER DECIDING OIEG'S
       MOTION UNTIL THE *CRYSTALLEX* PROCEEDINGS ARE FULLY
       RESOLVED. ...............................................................................................................18

CONCLUSION ......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACL1 Investments Ltd* v. *Bolivarian Republic of Venezuela*,
No. 19-cv-09014 (S.D.N.Y. Sept. 27, 2019)..........................................................................7

*Allied Bank Int'l* v. *Banco Credito Agricola del Cartago*,
No. 83-7714 (2d Cir. July 1984)..............................................................................17

*In re: Am. Express Anti-Steering Rules Antitrust Litig.*,
2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ...............................................................18

*Argentine Republic* v. *Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..............................................................................................19

*Aurelius Capital Master, Ltd.,*  v. *Republic of Argentina*,
2016 WL 1267524 (2d Cir. Mar. 23, 2016)..................................................................17

*BG Grp., PLC* v. *Republic of Argentina*,
572 U.S. 25 (2014).................................................................................................19

*Bridas S.A.P.I.C.* v. *Government of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006) ...................................................................................19

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019).............................................................................. *passim*

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
2018 WL 4026738 (D. Del. Aug. 23, 2018) ...............................................................4

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018).................................................................... *passim*

*United States ex rel. Doe* v. *Heart Solution, PC*,
923 F.3d 308 (3d Cir. 2019)....................................................................................8

*Ellis* v. *All Steel Constr., Inc.*,
389 F.3d 1031 (10th Cir. 2004) ...............................................................................19

*Epperson* v. *Entm't Express, Inc.*,
242 F.3d 100 (2d Cir. 2001)....................................................................................19

*First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)....................................................................................3, 10, 11, 19

*Guaranty Trust Co.* v. *United States*,
    304 U.S. 126 (1938)..................................................................................11

*Jiménez* v. *Palacios*,
    2019 WL 3526479 (Del. Ch. Aug. 2, 2019) .........................................6, 12

*Jiménez* v. *Palacios*,
    2019 WL 3974923 (Del. Ch. Aug. 21, 2019) ............................................6

*The Maret*,
    145 F.2d 431, 439 (3d Cir. 1944).............................................................12

*Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*,
    288 F.3d 519 (3d Cir. 2002)..................................................................9, 18

*NML Capital Ltd.* v. *Republic of Argentina*,
    2012 WL 1150791 (2d Cir. Apr. 4, 2012) ...............................................17

*OBB Personenverkehr AG* v. *Sachs*,
    136 S. Ct. 390 (2015)...............................................................................19

*Parklane Hosiery Co.* v. *Shore*,
    439 U.S. 322 (1979)...................................................................................8

*Peacock* v. *Thomas*,
    516 U.S. 349 (1996).................................................................................19

*PenneCom B.V.* v. *Merrill Lynch & Co.*,
    372 F.3d 488 (2d Cir. 2004)..................................................................9, 18

*Red Tree Investments, LLC* v. *Petróleos de Venezuela*,
    No. 19-cv-02523, D.I. 40 (S.D.N.Y. Aug. 26, 2019).................................8

*Republic of Argentina* v. *NML Capital, Ltd.*,
    573 U.S. 134 (2014).................................................................................19

*Republic of Austria* v. *Altmann*,
    541 U.S. 677 (2004).................................................................................19

*Rubin* v. *Islamic Republic of Iran*,
    138 S. Ct. 816 (2018)..............................................................................19

*Saint-Gobain Performance Plastics Eur.* v. *Bolivarian Republic of Venezuela*,
    No. 1:18-cv-01963-LPS, (D. Del. Dec. 12, 2018) ...................................7

*Sandlin* v. *Corp. Interiors Inc.*,
    972 F.2d 1212 (10th Cir. 1992) ...............................................................19

*Scooper Dooper, Inc.* v. *Kraftco Corp.*,
    494 F.2d 840 (3d Cir. 1974) ..................................................................9

*Smith* v. *Borough of Dunmore*,
    516 F. App'x 194 (3d Cir. 2013) ............................................................9

*Suppan* v. *Dadonna*,
    203 F.3d 228 (3d Cir. 2000) ..................................................................8

*Thomas, Head & Greisen Emps. Tr.* v. *Buster*,
    95 F.3d 1449 (9th Cir. 1996) ...............................................................19

*U.S.I. Properties Corp.* v. *M.D. Const. Co.*,
    230 F.3d 489 (1st Cir. 2000) ...............................................................19

*United States* v. *Athlone Indus., Inc.*,
    746 F.2d 977 (3d Cir. 1984) ..................................................................8

*White Beech SNC* v. *PDVSA*,
    No. 18-civ-4148, D.I. 31 and 32 (S.D.N.Y. Feb. 6, 2019) .....................18

**Statutes & Other Authorities**

Del. Code Ann. tit. 8 § 169 ...........................................................................16

31 C.F.R. § 591.202(e) ..................................................................................16

31 C.F.R. § 591.310 ......................................................................................16

Exec. Order No. 13,692, 80 Fed. Reg. 12,747 (Mar. 8, 2015) .....................14

Exec. Order No. 13,808, 82 Fed. Reg. 41,155 (Aug. 24, 2017) ...................14

Exec. Order No. 13,827, 83 Fed. Reg. 12,469 (Mar. 19, 2018) ...................14

Exec. Order No. 13,835, 83 Fed. Reg. 24,001 (May 21, 2018) ....................14

Exec. Order No. 13,850, 83 Fed. Reg. 55,243 (Nov. 2, 2018) .....................15

Exec. Order No. 13,884, 84 Fed. Reg. 38,843 (Aug. 5, 2019) .................5, 15

*Restatement (Second) Judgments* ................................................................19

## NATURE AND STAGE OF PROCEEDINGS

Defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") respectfully submits this memorandum of law in support of its opposition to the motion of Plaintiff OI European Group B.V. ("OIEG") for an order authorizing the Clerk of this Court to issue a writ of attachment *fieri facias* under the Foreign Sovereign Immunities Act ("FSIA"), the Federal Rules of Civil Procedure and the Delaware Code.[1]

On August 19, 2018, this Court granted a motion by Crystallex International Corp. ("Crystallex") for a writ of attachment *fieri facias* to attach the shares of PDV Holding, Inc. ("PDVH"), which are wholly owned by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela. *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386-87 (D. Del. 2018) ("*Crystallex I*").

Attempting to capitalize on the Court's *Crystallex I* decision, plaintiff OIEG seeks a writ of attachment based on the very same theories advanced in *Crystallex I*. Rather than show that those theories should apply here, however, OIEG invokes the doctrine of collateral estoppel to argue that the Republic is precluded from challenging OIEG's entitlement to the relief it seeks. D.I. 3 at 9. But collateral estoppel cannot apply here, because control of PDVSA, particularly as it relates to PDVSA's assets outside the United States, has completely changed since this Court's *Crystallex I* decision, as has the U.S. sanctions regime. As a result, the findings that provided the foundation for (1) the Court's alter ego holding, and (2) its conclusion that no license from the Office of Foreign Assets Control ("OFAC") license was necessary before a writ of attachment could issue, no longer apply. In addition, even if collateral estoppel might otherwise apply, the

---

[1] The Republic expressly preserves all of its immunity and jurisdictional defenses on the bases set forth by the Republic and PDVSA in the *Crystallex* briefing in this Court and the Third Circuit.

Court should stay OIEG's motion until the resolution of the *Crystallex* petitions for reconsideration and *en banc* review, and the virtually certain petition for certiorari by one side or the other.

## **SUMMARY OF THE ARGUMENT**

1.      Collateral estoppel cannot apply here because the circumstances that supported this Court's finding in Crystallex I that PDVSA could be deemed to be the "alter ego" of Venezuela at the time of the Court's decision, which the Court held permitted it to treat the shares of PDVH as the property of the Republic, no longer reflect the current relationship between the Republic and PDVSA.  When Crystallex I was decided, Venezuela was led by Nicolás Maduro, and it was his regime that was then responsible for the relationship between the Republic and PDVSA.  Now, the United States and over 50 other countries have recognized Juan Guaidó as the Interim President of the Republic, and the interim government he leads (the "Interim Government") has redefined the relationship between PDVSA and the Republic.  The question of whether PDVSA can, under current circumstances, be deemed an alter ego of the Republic has not been actually litigated by the parties nor decided by any court.

2.      Collateral estoppel cannot apply because the relief OIEG seeks raises sanctions issues that were not litigated in *Crystallex*.  Indeed, since *Crystallex I* was decided, the United States has imposed sweeping new sanctions that, for the first time, block all property and interests in property of PDVSA in the United States and therefore clearly prohibit the attachment of the PDVH shares without an OFAC license.  Whether a license is needed under these blocking sanctions is thus also a different issue from the Executive Order 13835 issue addressed in *Crystallex I.*

3.      In the alternative, this Court should defer a decision on OIEG's motion pending final resolution of the Crystallex I merits appeal.

-2-

## STATEMENT OF FACTS

This dispute arises from arbitration proceedings commenced in September 2011 before the International Centre for Settlement of Investment Disputes ("ICSID") alleging that Venezuela, under Hugo Chávez, expropriated several glass factories owned and operated by OIEG.  D.I. 3 at 1.  An ICSID tribunal issued an award in OIEG's favor in March 2015, and, on May 21, 2019, the United States District Court for the District of Columbia entered a judgment in favor of OIEG.  *Id.* at 1-2[2]

Separately, on August 14, 2017, Crystallex—which also had won an arbitration award against Venezuela—filed a lawsuit in this Court seeking a writ of attachment *fieri facias* to attach the shares of PDVH.  *Crystallex I*, 333 F. Supp. 3d at 386-87.  Crystallex was the judgment creditor of Venezuela on an arbitration award arising out of the revocation by the Chávez regime of a contract Crystallex had entered into with the Government of Venezuela in 2002 to develop a gold mine.  PDVSA owns, through PDVH, "100% of the shares of CITGO Petroleum Corp. ("CITGO"), a multi-billion dollar Delaware corporation headquartered in Texas."  *Id.* at 418 n.36.

On August 9, 2018, this Court held that, under *First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), PDVSA could be deemed an "alter ego" of Venezuela, which was then controlled by Mr. Maduro.  *Crystallex I*, 333 F. Supp. 3d at 414.  The Court found that, for example, "Venezuela uses PDVSA's property, including aircraft and tanker trucks, for its own political purposes," "several Government Ministers are also members of PDVSA's Board of Directors," "Venezuela's Oil Ministry and PDVSA share physical office space," "Venezuela instructs PDVSA to whom it must sell oil

---

[2]     For the Court's convenience, we have set forth the key dates relevant to this motion in chart form in an Appendix to this brief.

internationally and at what price," "Venezuela uses PDVSA to achieve its social and political goals, both domestically . . . and abroad," and "Venezuela manipulates PDVSA's conversion of U.S. Dollars to Venezuelan Bolivars . . . to the detriment of PDVSA." *Id.* at 402.  On August 23, 2018, the Court issued a writ of attachment on the shares of PDVH stock owned by PDVSA. *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2018 WL 4026738, at \*1 (D. Del. Aug. 23, 2018) ("*Crystallex II*").  The Republic appealed the decision to the Third Circuit.

While the appeal of *Crystallex I* was pending, on January 10, 2019, the Venezuelan National Assembly declared Juan Guaidó the interim President of the Republic pursuant to article 233 of the Venezuelan Constitution.  On January 23, 2019, the President of the United States officially recognized Juan Guaidó as the Interim President and declared the Maduro regime illegitimate.[3]  The Interim Government has now been recognized as the legitimate government of the Republic by over 50 countries.  *See* Declaration of Ambassador Carlos Alfredo Vecchio (August 29, 2019) ("Vecchio Decl.") ¶3.[4]  Amidst this political turmoil, Venezuela also faces an enormous humanitarian and economic crisis.  Over the past five years, Venezuela's gross domestic product has plummeted nearly 50%.[5]  According to the United Nations High Commissioner for Human Rights, more than four million people have fled

---

[3]     The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela* (Jan. 23, 2019), 2019), https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela.

[4]     The Vecchio Declaration was attached as Exhibit A to the Republic's response to Crystallex's motion to lift a stay in the Third Circuit.  *Crystallex III*, No. 18-02797, D.I. No. 3113334282 (3d Cir. Aug. 29, 2019).  A copy is submitted for the Court's convenience as Exhibit A to the Declaration of Joseph E. Neuhaus ("Neuhaus Decl.").

[5]     This is considered the biggest economic collapse in human history outside of war or state collapse and is double the size of the GDP drop in the United States during the Great Depression. Ricardo Hausmann, Understanding Venezuela's Collapse, The Harvard Gazette (Feb. 12, 2019), *available at* https://news.harvard.edu/gazette/story/2019/02/harvard-expert-tries-to-make-sense-of-venezuelas-collapse/.

Venezuela "[a]s a direct result of this far-reaching human rights crisis."[6]

Following the United States Government's recognition of the Interim Government on January 23, 2019, the U.S. Treasury Department imposed new and more comprehensive sanctions against PDVSA, discussed further below, in order to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela."[7]

The Interim Government immediately took steps to redefine the relationship between the Republic and PDVSA and restore the functional autonomy of PDVH.   *See* Vecchio Decl. ¶¶ 7-8.   On February 5, 2019, the Venezuelan National Assembly passed a statute to regulate the powers of Interim President Guaidó.   *See* Statute to Governs a Transition to Democracy to Re-establish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela ("Democracy Transition Statute"), (Neuhaus Decl., Ex. B (Spanish original), Ex. C (English translation)).   Article 15(a) of the Democracy Transition Statute empowers the Interim President to "[a]ppoint ad hoc Administrative Boards" of state-owned corporations for the purpose of "adopting the measures necessary to control and protect State company assets."

With respect specifically to PDVSA, Article 34 of the Democracy Transition Statute directs the Interim President to "appoint an ad hoc Administrative Board" for PDVSA

---

[6]     Statement by United Nations High Commissioner for Human Rights Michelle Bachelet, Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela (Mar. 20, 2019), https://www.ohchr.org/en/NewsEvents/Pages/DisplayNews.aspx?NewsID=24374 ("UNHCHR Oral Statement").

[7]     U.S. Dep't of Treasury, Press Release, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), *available at* https://home.treasury.gov/news/press-releases/sm594.   *See also* U.S. Dep't of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019) (designating PDVSA as a blocked person pursuant to Executive Order 13850 of Nov. 1 2018); Exec. Order No. 13884, § 1(a), 84 Fed. Reg. 38843 (Aug. 5, 2019) (property and interests in property of *both* the Republic and PDVSA in the United States "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.").

("PDVSA Administrative Board") and calls for the PDVSA Administrative Board's authority with respect to PDVH and its subsidiaries.  Article 34 directs the PDVSA Administrative Board to appoint a new board of directors for PDVH, which, in turn, is "to appoint new boards of directors for the PDV Holding, Inc.'s subsidiaries, including Citgo Petroleum Corporation." Article 34 also mandates that the new PDVH directors "guarantee the functional autonomy of said companies, particularly with respect to PDVSA."  To that end, Article 34 provides for "autonomous management" of PDVH and its subsidiaries, specifically insulates PDVH and the CITGO Entities from Maduro, stating that they "shall have no relationship whatsoever with the people currently usurping the Presidency of the Republic," and prohibits PDVH and its subsidiaries from making payments or distributions to PDVSA until democracy is restored in Venezuela.

On February 8, 2019, Interim President Guaidó appointed an *ad hoc* administrative board to represent PDVSA in its capacity as sole shareholder of PDVH, which the National Assembly ratified by a special resolution.[8]  On February 15, the PDVSA Administrative Board appointed a new, independent board of directors of PDVH, which subsequently elected a new board of directors of CITGO.  *See Jiménez* v. *Palacios,* 2019 WL 3526479, at *6 (Del. Ch. Aug. 2, 2019).  The Delaware Court of Chancery found that the appointment of the *ad hoc* PDVSA board was valid and lawful, *id.*, and subsequently declared that the boards of PDVH and CITGO were validly and lawfully appointed,  *Jiménez* v. *Palacios*, 2019 WL 3974923, at *1 (Del. Ch. Aug. 21, 2019).

On April 10, 2019, Interim President Guaidó issued Presidential Decree No. 3, which granted "new powers and duties" to the PDVSA Administrative Board for the purpose of

---

[8]     See Neuhaus Decl., Ex. D (Spanish original), Ex. E (English translation).

"protect[ing] Venezuelan State assets abroad, directly or indirectly controlled by PDVSA" including, for example, the power to "legally represent PDVSA and its subsidiaries abroad."[9] The Decree also mandated the Board's strict political independence, ordering it to "autonomously and independently exercise the powers herein conferred," and directed the Board to, among other things "abstain from following political or partisan guidelines" or from "making any decision allowing the use of subsidiary assets or resources for the benefit of the Republic." *Id.* The Decree also directed PDVSA's subsidiaries to "implement corporate governance provisions to ensure their autonomy and independence." *Id.*

On July 29, 2019, six months after Interim President Guaidó assumed control of the Republic's assets outside Venezuela, the Third Circuit affirmed this Court's decision in *Crystallex II. Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex III*").  In limiting its holding to the "record before the district court" in 2018, the panel's opinion observed that the Republic could, on remand, "direct to the District Court credible arguments to expand the record with later events." *Id.* at 144.  On September 26, 2019, the Republic sought reconsideration and *en banc* review of the panel's ruling in *Crystallex III*. That petition is pending.

This Court's decision in *Crystallex I* has not gone unnoticed by others with claims against Venezuela.  After the decision was announced, and also after the Third Circuit's decision in *Crystallex III*, additional creditors quickly initiated actions seeking to enforce claims against the Republic and obtain priority over similarly-situated creditors.[10]  On November 4, 2019,

---

[9]     *See* Neuhaus Decl., Ex. F (Spanish original), Ex. G (English translation).

[10]    *See*, *e.g.*, *Saint-Gobain Performance Plastics Europe* v. *Bolivarian Republic of Venezuela et al*, C.A. No. 18-cv-01963-LPS, D.I. 1 ¶3  (D. Del. Dec. 12, 2018) ("[PDVSA] is, as this Court has already found, an alter ego of Venezuela"); *ACL1 Investments Ltd., et al.* v. *Bolivarian Republic of Venezuela*, C.A. No. 19-cv-09014, D.I. 1, ¶ 31 (S.D.N.Y. September, 27,

OIEG moved for a writ of attachment against PDVSA's shares in PDVH, relying solely on this Court's decision in *Crystallex I*, which, it argues, applies on the basis of collateral estoppel.  D.I. 3 at 1, 9.

## ARGUMENT

The doctrine of nonmutual offensive collateral estoppel allows a plaintiff who was not a party to a prior judgment to "use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding."  *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 (1979).  Collateral estoppel may apply only if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment."  *United States ex rel. Doe* v. *Heart Solution, PC*, 923 F.3d 308, 316 (3d Cir. 2019) (internal quotation marks omitted).  As the party asserting collateral estoppel, OIEG bears the burden of establishing that each of these elements is met in this case.  *See United States* v. *Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).

Critically, the requirement that the issues in the two actions be identical requires "that the same general legal rules govern both cases *and* that the facts of both cases are indistinguishable as measured by those rules."  *Suppan* v. *Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (quoting 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4425 (1981) (emphasis added).  "It is well settled that changed factual circumstances" can "preclude the

---

2019) (arguing that "ongoing economic and political instability in Venezuela . . . has not prevented other creditors from pursuing remedies" and that "[t]hese regrettable circumstances . . . constrain [the plaintiffs] to bring the present action to preserve their rights").  *See also Red Tree Investments, LLC* v. *Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, C.A. No. 19-cv-02523, D.I. 40, at 6 (S.D.N.Y. August 26, 2019) (arguing that a stay should be lifted, because, *inter alia*, other parties seeking to enforce their rights against PDVSA and Venezuela might otherwise obtain priority).

application of collateral estoppel" if they are "material" or "controlling."  *Scooper Dooper, Inc.* v. *Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974); *see also id.* ("Where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive.") (citing *Comm'r* v. *Sunnen*, 333 U.S. 591, 599-600 (1948)).

Although these elements are necessary "prerequisites," courts must also consider whether equitable principles weigh in favor of issue preclusion in each individual case.  *See Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525, 528 (3d Cir. 2002) (courts "must consider whether there are special circumstances present" that make application of collateral estoppel "inequitable or inappropriate"); *PenneCom B.V.* v. *Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("[C]ollateral estoppel is an equitable doctrine—not a matter of absolute right.  Its invocation is influenced by considerations of fairness in the individual case."); *Smith* v. *Borough of Dunmore*, 516 Fed. Appx. 194, 199 (3d Cir. 2013) ("district courts have broad discretion to determine when to apply non-mutual offensive collateral estoppel").

I.   **Collateral Estoppel May Not Be Applied Here Because Circumstances in the Republic and Its Relationship with PDVSA Have Changed Dramatically Since *Crystallex I* Was Decided.**

This Court's extensive findings concerning the relationship between PDVSA and the Maduro-led Republic in *Crystallex I* were based on a record reflecting the circumstances at the time of the Court's decision.  Since this Court issued its decision 15 months ago, Venezuela has undergone seismic political changes, in particular with respect to control of PDVSA's assets outside Venezuela, and those "changed factual circumstances" are highly material to the Court's conclusion of alter ego status and thus "preclude the application of collateral estoppel."  *Scooper Dooper,* 494 F.2d at 846.

**A.      This Court conducted its *Bancec* analysis in light of circumstances at the time of its decision.**

In concluding that PDVSA was the alter ego of the Republic such that the shares of PDVH owned by PDVSA were deemed to be the property of the Republic, this Court considered the facts at the time of its decision.  The Court noted that the relief Crystallex was seeking related to the status of the shares of PDVH at that time, and not some other time:  "'the specific property at issue on this motion—the shares of PDVH—though nominally held in the name of PDVSA, are, *at this time*, really the property of Venezuela.'"  *Crystallex I*, 333 F. Supp. 3d at 391, 394 (emphasis added) (twice quoting Crystallex's motion).  In granting that relief, the Court looked to events over several years leading up to its August 2018 decision, an approach that the Third Circuit affirmed, *Crystallex III*, 932 F.3d at 150 (affirming "totality-of-the-circumstances inquiry" to determine commercial use "at the moment the writ is executed").  This Court expressly cautioned that its alter ego finding in *Crystallex I* was limited to the facts at that time and on the record before it:

> [T]he record which has persuaded this Court that PDVSA and Venezuela should be treated as alter egos of one another may not be the same record that is created in some other action.  Indeed, even in this case, the record may be supplemented in the next stage of the proceedings . . . which could potentially lead to different findings.

333 F. Supp. 3d at 424-25; *see also id.* at 425 (noting that the Republic might subsequently "appear and seek to supplement the factual record already developed in this litigation" in support of an effort to quash the writ).  The Third Circuit made a similar point.  932 F.3d at 144 ("[W]e render our decision based on the record before the district court . . . .  On remand, Venezuela may direct to the District Court credible arguments to expand the record with later events.").[11]

---

[11]      In its brief before the Third Circuit, the Republic argued that the court should take into account the changed political situation in its analysis.  *Crystallex III*, 932 F.3d at 145.  The

Both caveats were well-advised, because in fact the situation that the Court must confront to adjudicate OIEG's application is radically different, as set out below. (The Republic, which at the time of the *Crystallex* district court proceedings was under the Maduro regime and did not appear in that case, reserves the right to make additional arguments regarding the appropriate time period for determining whether an alter ego relationship existed between PDVSA and the Republic.)

**B.      The circumstances in the Republic have changed dramatically since *Crystallex I* was decided.**

*Crystallex I* was decided in August 2018, when the Maduro regime was still the recognized government of the Republic. The Court's extensive control findings therefore concerned the relationship between PDVSA and the Maduro-controlled Republic. All this changed, however, on January 10, 2019, when the Venezuelan National Assembly declared Juan Guaidó—then President of the Venezuelan National Assembly—to be Interim President of the Republic and President Guaidó took control of the Republic's assets outside Venezuela. The President's recognition of the Interim Government (and *nonrecognition* of the Maduro regime) has sweeping effects, including binding all domestic courts to recognize the Interim Government as the sole legitimate government in Venezuela in proceedings before them. *See Guaranty Tr. Co.* v. *United States*, 304 U.S. 126, 138 (1938) (executive branch's "action in recognizing a foreign government" "is conclusive on all domestic courts."); *see also Crystallex III*, 932 F.3d at 135 n.2 (following *Guaranty Trust*). Likewise, "the courts of this country may not examine the effect of decrees of the unrecognized foreign sovereign and determine rights in property . . . upon

---

Circuit declined to do so, however, stating that it would instead follow "the standard practice" in rendering its decision based on the record that was before this Court, and invited this Court to consider the changed situation on remand. *Id.* Thus, the question of whether current political circumstances in Venezuela would satisfy *Bancec* has not been actually litigated or decided by either Court.

the basis of these decrees." *The Maret*, 145 F.2d 431, 439 (3d Cir. 1944) (emphasis added).[12]

The National Assembly and President Guaidó have taken extensive steps to insulate the asset at issue here—the shares of PDVH—from any control of the Republic.  As discussed above, one of the Interim Government's first official acts was to approve the Democracy Transition Statute, which, among other things, redefined the relationship between the Republic and PDVSA while guaranteeing the functional autonomy of PDVH with respect to PDVSA. Vecchio Decl. ¶¶ 7-8.  The Democracy Transition Statute empowered the Interim Government to appoint an *ad hoc* Managing Board of PDVSA, which the Interim Government did on February 8, 2019. *See Jiménez* v. *Palacios,* 2019 WL 3526479, at *6 n.24 (citing Decree of Juan Guaidó (Feb. 8, 2019)).  The *ad hoc* Managing Board and its appointment of new management at CITGO was approved by the Delaware Court of Chancery in August 2019.  *Id.* at *11-12.

There is thus evidence that the alter ego status, *vel non*, of PDVSA as of the Court's August 2018 decision is now very different.  Further, there is no reason to believe that the Interim Government is abusing the corporate form of PDVSA, has inappropriately misused the assets of PDVSA or has diverted the Republic's assets to PDVSA to shield them from creditors.  To the contrary, the Republic submits that, on a full record reflecting current facts, the Court would reach a completely different conclusion.

---

[12]    For this reason, to the extent that PDVSA's assets within Venezuela remain under the illegal domination and control of Mr. Maduro and his political allies, that control may no longer be attributed to the Republic.  If the Court were to attribute to the Republic the current conduct of Mr. Maduro and his associates, it would be implicitly recognizing their legitimacy, contrary to the President's exclusive recognition power.  *See Maret*, 145 F.2d at 442 (refusing to give effect to decrees of a non-recognized government).

**C.** **These changed circumstances foreclose application of collateral estoppel here.**

In light of the dramatically changed circumstances described above, OIEG cannot establish either of the first two elements of collateral estoppel—that the issues are identical and were actually litigated in the prior proceeding—because (i) the issue sought to be precluded (whether PDVSA currently is an *alter ego* of the Guaidó-led Republic) is not the same as the issue decided in *Crystallex I* (whether, in 2018, PDVSA could be deemed the *alter ego* of the Maduro-led Republic), and (ii) the question of whether PDVSA is currently the *alter ego* of the Republic was not—and could not have been—actually litigated.  Neither Crystallex nor OIEG has propounded a record on which the Court could make that finding, nor has the Republic or PDVSA had the opportunity to actually litigate that question.

**II.** **Collateral Estoppel May Not Be Applied Here Because the Relief that OIEG Seeks Raises Sanctions Issues Not Litigated in *Crystallex*.**

OFAC "sanctions can be either comprehensive or selective, using the blocking of assets and trade restrictions to accomplish foreign policy and national security goals."[13] Selective sanctions impose restrictions only with respect to specified transactions, while the blocking of assets constitutes a comprehensive sanction and "immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to [blocked] property."[14]  As a result of blocking, "the exercise of powers and privileges normally associated with ownership is prohibited without authorization from OFAC."  *Id.*

At the time of this Court's decision in *Crystallex I*, OFAC had issued only

---

[13]     U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 1 (2019), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic.

[14]     *See* U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 9 (2019), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic.

selective sanctions against Venezuela.[15]   Executive Order 13835 prohibited "the sale, transfer, assignment, or pledging as collateral by the Government of Venezuela of any equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest."  83 Fed. Reg. 24001 (May 21, 2018).  PDVSA argued to the Court that this provision prohibited "'the attachment and execution of the shares of its wholly-owned Delaware subsidiary, PDVH,'" relying in particular on OFAC guidance that said, "OFAC authorization would likely be required for attachment of equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest."  333 F. Supp. 3d at 420-21 (*citing* D.I. 63 at 2 & OFAC FAQs: Other Sanctions Programs, Venezuela Sanctions).  The Court, without distinguishing between attachment and execution and noting that the OFAC guidance said only that a license would "likely" be required, found that "Executive Order 13835 does not pose a bar to granting the relief [the Court] has granted today."  *Id.* at 421 (*quoting* OFAC FAQs: Other Sanctions Programs, Venezuela Sanctions).[16]

After this Court's decision in *Crystallex I*, and following President Trump's recognition of Juan Guaidó as the Interim President of the Republic, the Executive Branch issued a series of measures that significantly bolstered and broadened the Venezuela sanctions regime. In particular, on January 28, 2019, OFAC issued a comprehensive sanction designating PDVSA

---

[15]     Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015); Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017); Exec. Order No. 13827, 83 Fed. Reg. 12469 (Mar. 19, 2018); Exec. Order No. 13835, 83 Fed. Reg. 24001 (May 21, 2018).

[16]     The Republic respectfully disagrees with that finding and suggests that, on a full record and with participation from OFAC, the Court would reach the conclusion that, even under the prior sanctions regime, a creditor would be required to obtain a license from OFAC not only for *execution* of the PDVH shares but also for the earlier step of *attachment* of the shares, as the wording of the OFAC guidance suggests.

as a blocked person pursuant to Executive Order 13850 of November 1, 2018.[17]   As a consequence of that designation, all property and interests in property of PDVSA in the United States were "blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in."  Exec. Order No. 13850, § 1(a), 83 Fed. Reg. 55243 (Nov. 2, 2018).  This measure was intended to "support Interim President Juan Guaidó . . . to restore [Venezuela's] democracy" and to "preserve [PDVSA's] assets for the people of Venezuela."[18]   Subsequently, on August 5, 2019, President Trump went further, issuing Executive Order 13884, which is an additional comprehensive sanction that provides that all property and interests in property of *both* the Republic and PDVSA in the United States "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."  Exec. Order No. 13884, §§ 1(a), 6(d), 84 Fed. Reg. 38843 (Aug. 5, 2019).

In finding that the selective sanctions of Executive Order 13835, and the particular guidance thereunder, did not prevent Crystallex from obtaining a writ of attachment, the Court never had occasion to consider the effect of the broader subsequently issued blocking orders, Executive Orders 13850 and 13884 (the "Blocking Orders").  As a consequence, the Court's ruling does not resolve whether a license is *now* needed to attach the PDVH shares.  There is ample reason to believe that, upon a full record, which OIEG has not attempted to advance, this Court would reach the conclusion that OIEG must obtain such a license before moving to secure any writ of attachment against the now-blocked PDVH shares.

In particular, each of the Blocking Orders blocks any transfers of property and

---

[17]     *See* U.S. Dep't of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019) *available at* https://www.treasury.gov/resource-center/sanctions/Programs/ Documents/vz_sector_determination_oil_20190128.pdf.

[18]     *See supra* note 7.

interests in property of PDVSA in the United States.[19]   Under OFAC's Venezuelan Sanctions Regulations, which implement a prior blocking order issued pursuant to the same declaration of national emergency as the Blocking Orders, the term "transfer" has been broadly defined to include "the appointment of any agent, trustee, or fiduciary; the *creation* or transfer of *any lien*; the issuance . . . of . . . any judgment, decree, *attachment* . . . or other judicial or administrative process or order, or the *service of any garnishment*."   31 C.F.R. § 591.310 (emphasis added). Further, OFAC's Venezuela Sanctions Regulations provide that "any *attachment*, judgment, decree, *lien*, execution, *garnishment*, or *other judicial process* is null and void" with respect to blocked property.   31 C.F.R. § 591.202(e) (emphases added).   Under OFAC's long-standing interpretations of blocking orders, as reflected in those regulations, OIEG cannot seek to attach PDVH shares unless it obtains a license from OFAC.

Plaintiff's motion makes no effort to engage with these new and serious questions—much less demonstrate that it is authorized under any specific or general license to seek to attach PDVH's shares.[20]   Instead, OIEG relies solely on this Court's holding in

---

[19]     Shares of Delaware corporations are deemed to be located in Delaware.  Del. Code  Ann. tit. 8 § 169.

[20]     Plaintiff has not demonstrated that it applied for, let alone obtained, a specific license to attach the PDVH shares.  Likewise, Plaintiff has not demonstrated that it is authorized to attach such shares under any existing general license.  Nor is the Republic aware of any general license that would permit such attachment.  General License 9F authorizes "transactions and activities prohibited by [the Blocking Orders] . . . that are ordinarily incident and necessary to dealings in any . . . equity in, . . . [PdVSA] or any entity in which PdVSA owns, directly or indirectly, a 50 percent or greater interest, . . . provided that any divestment or transfer of, or facilitation of divestment or transfer of, any holdings in such PdVSA securities *must be to a non-U.S. person*." U.S. Dept. of Treasury, OFAC, General License No. 9F, Authorizing Transactions Related to Dealings in Certain Securities (Sep. 30, 2019) (emphasis added), *available at* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl9f.pdf. General license 9F does not apply in this context because, among other things, there is no assurance that the PDVH shares will be transferred to a non-U.S. person upon the completion of a sale process.

*Crystallex I* that Executive Order 13835 did not bar attachment of PDVH shares.  But because

the Blocking Orders were not in effect at the time *Crystallex I* was decided, the question of

whether they prevent attachment of PDVH shares was not—and could not possibly have been—

actually litigated.  The Republic therefore cannot be precluded from challenging OIEG's motion

on this basis and this Court should not take further action before permitting the Republic the

opportunity to fully brief the issues arising under the Blocking Sanctions.

At the least, because any decision authorizing the issuance of a writ of attachment

absent an OFAC license could adversely affect U.S. foreign policy, this Court should solicit the

views of the U.S. Executive Branch and ensure that it has an opportunity to inform this Court of

the effect that the relief Plaintiff seeks would have on the United States' foreign relations

interests.[21]  Alternatively, this Court should instruct Plaintiff to seek guidance from OFAC to

---

Likewise, General License 14, which authorizes "transactions that are for the conduct of the official business of the United States Government," does not authorize the attachment sought because it only authorizes transactions prohibited under Executive Order 13850, not the blocking under Executive Order 13884.  U.S. Dept. of Treasury, OFAC, General License No. 14, Official Business of the United States Government (Jan. 28, 2019), *available at* https://www.treasury.gov /resource-center/sanctions/Programs/Documents/venezuela_gl14.pdf.

[21]     Among other things, permitting some creditors to attach assets to secure their claims, and thus obtain priority over otherwise similarly situated creditors, would seriously compromise Venezuela's ability to pursue an orderly and consensual restructuring process, as the Interim Government has announced it intends to do.  Office of the Special Attorney-General of the Bolivarian Republic of Venezuela, Guidelines for the Renegotiation of the Chávez/Maduro Era Legacy Public External Debt (July 1, 2019) *available at* https://www.creditslips.org/files/wp-deuda-oper-eng.pdf (announcing guidelines for restructuring Venezuela debt).  Long-standing United States policy supports orderly and consensual restructurings of sovereign debt.  *See*, *e.g.*, Brief for the United States, *NML Capital Ltd.* v. *Republic of Argentina*, 2012 WL 1150791, at *7 (2d Cir. Apr. 4, 2012) (stating that "in those rare cases where a sovereign cannot meet its external obligations . . . the policy of the United States is that the orderly and consensual restructuring of sovereign debt . . . is the most appropriate response"); *accord* Brief of the United States, *Aurelius Capital Master, Ltd., et al.* v. *Republic of Argentina*, 2016 WL 1267524, at *4 (2d Cir. March 23, 2016); Statement of Interest of the United States at 4, *Allied Bank Int'l* v. *Banco Credito Agricola del Cartago*, No. 83-7714 (2d Cir. July 1984) (noting that "orderly [debt] resolution[s] [are] crucial to the stability and future growth of the world and the U.S. economy").

determine whether any existing general license authorizes the issuance of a writ of attachment on PDVH's shares.  *Cf. White Beech SNC* v. *PDVSA*, No. 18-civ-4148, D.I. 31 and 32 (S.D.N.Y. Feb. 6, 2019) (in response to order inquiring why action against PDVSA "should not be stayed in light of Executive Order 13850," plaintiff agreed to "seek[] guidance from [OFAC] to determine whether any existing general license authorizes the continuation of this litigation and issuance of a final judgment against . . . PDVSA").  This course of action is particularly appropriate in light of President Trump's recognition of the Interim Government and the U.S. interest in preserving Venezuelan assets and facilitating an orderly debt restructuring process.

## III.   Alternatively, the Court Should Defer Deciding OIEG's Motion Until the *Crystallex* Proceedings Are Fully Resolved.

Alternatively, in the exercise of its equitable discretion, this Court should defer a decision on OIEG's motion until the *Crystallex* merits appeal is fully resolved.  *Cf. Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*, 288 F.3d 519, 528 (3d Cir. 2002) (finding courts "must consider whether there are special circumstances present" that make application of collateral estoppel "unequitable or inappropriate"); *PenneCom B.V.* v. *Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("[C]ollateral estoppel is an equitable doctrine—not a matter of absolute right.  Its invocation is influenced by considerations of fairness in the individual case.").

Collateral estoppel should not apply where, as here, a party is seeking to preclude issues of exceptional significance that are subject to ongoing appellate review.  *In re: Am. Express Anti-Steering Rules Antitrust Litig.,* 2016 WL 748089, at *5 (E.D.N.Y. Jan. 7, 2016) (holding that, regardless of whether the elements were technically met, exercising collateral estoppel in that case "would be unfair to Defendants" because the antitrust issues there at stake were significant and still subject to appellate review); *accord Restatement (Second) Judgments* § 16, comment b (it may be "advisable" for a court "to stay its own proceedings to await the

ultimate disposition of the judgment in the trial court or on appeal" particularly where "the disposition will not be long delayed and especially if there is substantial doubt whether the judgment will be upheld.").

Here, the issues are of immense importance and there are substantial grounds for *en banc* review or certiorari. The Third Circuit's opinion conflicts with the decisions of other Courts of Appeal on two different grounds:  (1) the significance of *Peacock* v. *Thomas*, 516 U.S. 349 (1996), and whether an independent basis for subject matter jurisdiction was needed over PDVSA,[22] and (2) whether *Bancec*'s "extensive control" prong requires a nexus between the control over the instrumentality and the plaintiffs' injury.[23] The Supreme Court frequently grants certiorari to resolve questions concerning the treatment of foreign sovereigns in U.S. courts.[24] Further, applying collateral estoppel and allowing attachment of PDVH shares now will undoubtedly encourage even further additional litigation,[25] leading to a scramble for priority by

---

[22]     *See U.S.I. Properties Corp.* v. *M.D. Const. Co.*, 230 F.3d 489, 499 (1st Cir. 2000) (holding that district court lacked jurisdiction over Rule 69 proceedings seeking to enforce judgment against alleged *alter ego* of the judgment debtor); *Sandlin* v. *Corp. Interiors Inc.*, 972 F.2d 1212, 1218 (10th Cir. 1992) (same); *Ellis* v. *All Steel Constr., Inc.*, 389 F.3d 1031, 1035 (10th Cir. 2004) (reaffirming *Sandlin*); *Epperson* v. *Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001); *Thomas, Head & Greisen Emps. Tr.* v. *Buster*, 95 F.3d 1449, 1454 (9th Cir. 1996) (observing that veil-piercing theory in Rule 69 proceedings would require independent basis of jurisdiction). This Court acknowledged that "the proper resolution of this issue is not free from doubt." *Crystallex I*, 333 F. Supp. 3d at 393.

[23]     The Third Circuit expressly acknowledged that its decision created a conflict with the Fifth Circuit, which has held that the *alter ego* doctrine applies only if "the owner exercised complete control over the corporation *with respect to the transaction*" that injured the plaintiff. *Bridas S.A.P.I.C.* v. *Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006) (emphasis added) (quoting *Bridas S.A.P.I.C.* v. *Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003)); *Crystallex III*, 932 F.3d at 142 n.9, 143.

[24]     *See, e.g., Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018); *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015); *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134 (2014); *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25 (2014); *Republic of Austria v. Altmann*, 541 U.S. 677 (2004); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989).

[25]     *See* n. 10 *supra.*

Venezuela's creditors, which would, as noted above, undermine the United States' policy of supporting the orderly and consensual restructurings of sovereign debt and, if *Crystallex III* is ultimately reversed, result in a significant waste of judicial resources.

A stay would not harm or prejudice OIEG.  Because this Court retains jurisdiction over requests for a writ of attachment against PDVSA's shares in PDVH (D.I. 3 at 7 (citing 28 U.S.C. § 1610(a)(6)), a stay would not permit other creditors to attach such shares before, and obtain priority over, OIEG.  D.I. 3 at 6-7.  Moreover, this Court controls the pace and substance of any sale process (which the Republic submits should in any event also not proceed pending the completion of the appellate process).

For these reasons, even if the Court concludes the technical elements for collateral estoppel are met (they are not), it should exercise its discretion to defer ruling on OIEG's motion, and temporarily stay this action, until the *Crystallex* merits appeal is fully and finally resolved.

## **CONCLUSION**

At bottom, OIEG asks this Court to conclude that the corporate veil between PDVSA and the Republic is forever pierced because of the way the Republic previously treated PDVSA.  OIEG further asks this Court to conclude that the PDVH shares are forever free from limitations on attachment because of the state of OFAC's pronouncements under a previous sanctions regime. To draw these conclusions, this Court would have to disregard the fundamental shifts that have occurred in Venezuela since this Court decided *Crystallex I*, and ignore the significant changes in the U.S. sanctions regime that clearly prohibit attachment of PDVH shares without an OFAC license.  The doctrine of collateral estoppel simply does not stretch that far. The Court should deny Plaintiff's motion or, at a minimum, stay this action until the *Crystallex* merits appeal is resolved.

OF COUNSEL:

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice pending*)
James L. Bromley (*pro hac vice pending*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Angela N. Ellis
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
ellisan@sullcrom.com

Dated:  November 11, 2019

  _/s/_____
A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone: 302-778-1000
bayliss@abramsbayliss.com

*Attorneys for Defendant Bolivarian Republic of Venezuela*

# APPENDIX
## Summary of Key Dates

| Date | Action |
|---|---|
| August 14, 2017 | *Crystallex* Motion for Writ of Attachment |
| May 21, 2018 | Executive Order 13835 (Transfer prohibition on certain equity interests owned by Venezuela) |
| July 19, 2018 | OFAC FAQ 596 (Attachment of equity interest likely requires license) |
| August 9, 2018 | *Crystallex I* (Decision on alter ego) |
| August 23, 2018 | *Crystallex II* (Order for Writ of Attachment) |
| November 1, 2018 | Executive Order 13850 (Blocking sanction against Specially Designated Nationals) |
| January 10, 2019 | National Assembly declares Juan Guaidó the Interim President of the Republic |
| January 23, 2019 | U.S. Government recognizes Juan Guaidó as Interim President of the Republic |
| January 28, 2019 | U.S. Government designates PDVSA as Specially Designated National under Executive Order 13850 |
| February 8, 2019 | Interim President Guaidó appoints *ad hoc* administrative board of PDVSA |
| February 15, 2019 | The *ad hoc* board of PDVSA appoints a new board of directors of PDVH, which appoints a new board of Citgo |
| May 1, 2019 | D.C. Dist. Ct. judgment in favor of OIEG |
| July 29, 2019 | *Crystallex III* (Third Circuit affirming *Crystallex I*) |
| August 5, 2019 | Executive Order 13884 (new blocking sanctions against *both* PDVSA and the Republic) |
| August 21, 2019 | *Jiménez v. Palacios* (Final order finding appointment of PDVH and Citgo boards was valid and lawful) |
| September 26, 2019 | Republic seeks reconsideration and *en banc* review of panel's ruling in *Crystallex III* |
| November 4, 2019 | OIEG Motion for Writ of Attachment |