# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 19-mc-290-LPS |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS*

Dated: November 12, 2019

Jody C. Barillare, Bar No. 5107
MORGAN, LEWIS & BOCKIUS LLP
1007 N. Orange Street, Suite 501
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

Sabin Willett (*pro hac* pending)
Christopher L. Carter (*pro hac* pending)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
christopher.carter@morganlewis.com

*Attorneys for Plaintiff, OI European Group B.V.*

DB1/ 109806716.2

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ......................................................................................................... ii
ARGUMENT .................................................................................................................................. 1
   I.   Collateral Estoppel Applies ................................................................................................ 1
      A.   Facts Relevant to the Court's *Alter ego* Ruling Have Not Changed ............................... 1
      B.   OFAC Sanctions Do Not Negate the Collateral Estoppel Effect of Crystallex I and II . 7
   II.   The Court Should Not Defer a Decision on OIEG's Motion Until the *Crystallex* Proceedings Are "Fully Resolved" ........................................................................................ 9
CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashford v. Skiles*,
  837 F. Supp. 108 (E.D. Pa. 1993) ..................................................................................10

*Crum & Forster Ins. Co. v. Goodmark Indus., Inc.*,
  488 F. Supp. 2d 241 (E.D.N.Y. 2007) ............................................................................10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  2018 WL 4026738 (D. Del. Aug. 23, 2018) ............................................................ passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ......................................................................... passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ..................................................................................... passim

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("<u>Bancec</u>")*,
  462 U.S. 611 (1983) ................................................................................................1, 2, 8

*Flair Broad. Corp. v. Powers*,
  1998 WL 247521 (S.D.N.Y. May 15, 1998) ..................................................................10

*Galderma Labs. Inc. v. Amneal Pharm.*,
  LLC, 921 F. Supp. 2d 278 (D. Del. 2012) .......................................................................9

*Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*,
  258 F.3d 132 (3d Cir. 2001) ............................................................................................9

*Jiménez v. Palacios*,
  2019 WL 3526479 (Del. Ch. Aug. 2, 2019) ....................................................................3

*Lang v. Pennsylvania Higher Educ. Assistance Agency*,
  201 F. Supp. 3d 613 (M.D. Pa. 2016) .............................................................................7

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
  2016 WL 1743475 (3d Cir. May 3, 2016) ......................................................................2

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*,
  288 F.3d 519 (3d Cir. 2002) ........................................................................................6, 7

*Raytech Corp. v. White*,
   54 F.3d 187 (3d Cir. 1995) ............................................................................................. 5

*Republic of Iraq v. ABB AG*,
   768 F.3d 145 (2d Cir. 2014) ........................................................................................... 3

*Scooper Dooper, Inc. v. Kraftco Corp.*,
   494 F.2d 840 (3d Cir. 1974) ........................................................................................... 6

*Suppan v. Dadonna*,
   203 F.3d 228 (3d Cir. 2000) ........................................................................................... 6

**Statutes**

8 Del. C. § 169 ...................................................................................................................... 6

Plaintiff OI European Group B.V. ("OIEG") replies to Defendant Bolivarian Republic of Venezuela's ("Venezuela") opposition to OIEG's motion for a writ of attachment *fieri facias* against the shares of Delaware corporation PDV Holding, Inc. ("PDVH"), nominally owned by Venezuela's *alter ego*, Petroleos de Venezuela S.A. ("PDVSA").

## ARGUMENT

### I. Collateral Estoppel Applies

Venezuela does not argue that any material difference exists between the circumstances of the ICSID awards granted to OIEG and Crystallex. Rather, it argues first that relevant facts governing the Court's *alter ego* determination have changed since the operative rulings,[1] and next that changes in sanctions issued by the United States preclude attachments – evidently to all creditors, including Crystallex. Neither argument has merit.

*A. Facts Relevant to the Court's Alter ego Ruling Have Not Changed*

The first question is whether facts pertinent to the Court's *alter ego* ruling have changed. An equitable concept, "*alter ego*" doctrine permits courts to disregard the corporate form where justice requires, in order to fashion relief based on substance. *Crystallex III*, 932 F. 3d at 140. It applies even as to foreign sovereign instrumentalities like PDVSA, allowing the federal courts to disregard "the normally separate juridical status of a government instrumentality" where "internationally recognized equitable principles" require, *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 633-34 (1983), and applies specifically to PDVSA. *Crystallex III*, 932 F.3d 126.

---

[1] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018) ("*Crystallex I*") (holding PDVSA is an *alter ego* of Venezuela), *aff'd*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex III*"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018) ("*Crystallex II*") (granting a writ of attachment to Crystallex).

Identity of issues exists where "the issues presented by [the current] litigation are in substance the same as those resolved in the previous litigation." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 2016 WL 1743475, at *5 (3d Cir. May 3, 2016). The "facts of the two cases do not need to be identical so long as any factual differences have no 'legal significance' in 'resolving the issues presented in both cases.'" *Id*. at *5 (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984)).

Venezuela begins by eliding the question of timing. It contends that *after* all of the facts giving rise to *alter ego* liability to Crystallex took place, Venezuela ceased to abuse the corporate form. Below we show that the contention is incorrect, but it would be irrelevant even if it were correct. This Court's *alter ego* ruling is premised on facts found by the Court to have existed between 2002 and 2018. During that time Crystallex's assets – and OIEG's assets – were expropriated. During that time, Crystallex and OIEG each obtained ICSID arbitration awards. Venezuela's abuse of the corporate form during that period prejudiced these creditors and gave rise to a right of action against assets that, while nominally property of PDVSA, were deemed on the basis of that history to be assets of Venezuela.[2]

Venezuela does not contend that any of those historical facts have changed. Instead, its brief points out that, after those events, Venezuela's national assembly declared, and the United States recognized new "interim president" Juan Guaidó (Brf. at 4), and that Mr. Guaidó has

---

[2] Here, as in the Court of Appeals, Venezuela offers "no authority for [the] proposition" that "the moment the writ is issued" is the "relevant time for a *Bancec* analysis." *See Crystallex III*, 932 F. 3d at 144. Affirming this Court's *alter ego* determination, the Court of Appeals cited "bondholder disclosures [of State control] in 2011 and 2016," *id*. at 146, events "since 2002," *id*. at 135, and events in 2014 and 2016. *Id*. at 148. None of these facts could change, and all apply equally to OIEG.

2

appointed, or caused the appointment of new directors of PDVSA and certain subsidiaries (Brf. at 5-7).

OIEG has not sued Mr. Guaidó, nor his predecessor Mr. Maduro, nor his predecessor Mr. Chavez. Its claim lies not against Venezuela's *government*, but the sovereign itself, and that sovereign's *alter ego* PDVSA. "The obligations of a foreign state are unimpaired by a change in that state's government." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 164 (2d Cir. 2014). Mr. Guaidó is simply a new steward of an old defendant. His appointment did not change the nature of the sovereign defendant Venezuela or its relationship with its *alter ego*. Form has changed – but not substance. As a formal matter, the United States recognized Mr. Guaidó as Venezuela's president in January 2019. So too, as a formal matter, have the persons who may be recognized *in the United States* as directors of U.S.-domiciled subsidiaries changed.[3] But *alter ego* doctrine is concerned with facts, not forms, and it is indisputable that the sovereign and its *alter ego* have not changed as a matter of *fact*. Mr. Guaidó has no practical control over the sovereign, PDVSA remains wholly controlled by that sovereign, and the new board members have no power to enforce their corporate decrees in Venezuela either.

Venezuela concedes as much. Mr. Guaidó "does not have full access to the personnel and documents of the government and its instrumentalities. To the contrary, the illegitimate Nicolas Maduro regime has refused to relinquish control of the operation of many organs of the Venezuela government." Declaration of Ambassador Carlos Alfredo Vecchio ¶5;[4] *see* Brf. at 12 n.12 (referring to the "extent that PDVSA's assets within Venezuela remain under the illegal domination and control of Mr. Maduro and his political allies"). Venezuela does not and cannot

---

[3] *See Jiménez v. Palacios*, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019).

[4] The declaration was filed in the Court of Appeals in August 2019, and in this Court on November 11, 2019. *See* Declaration of Joseph E. Neuhaus Ex. A. [Dkt. 12].

allege that new directors appointed by the regime in exile have any power over PDVSA, or have changed its functions, nor that Mr. Guaidó has access to Venezuela's treasury, or the ability to cause the issuance of exchange debt that would be honored by Venezuela, or any other powers that would effect a restructuring or payment.

Ambassador Vecchio describes what the Guaidó administration "deplores," what "shall be" its policy, and what it "plans to engage in," *see* Vecchio Decl. ¶13, but concedes candidly that the administration will "need time." *Id*. ¶ 15. Neither his declaration nor the brief asserts any basis to predict that the fledgling government-in-exile will ever have the power to control or change the sovereign defendant in this case, or its *alter ego*.[5] And what applies generally applies specifically to OIEG. After the Guaidó government was recognized by the United States in January, nothing changed for OIEG. Venezuela continued to fail to pay OIEG's judgment or tender any settlement of the same.

Telling evidence of the new regime's impotence is seen in the actions of the United States. Having acknowledged the Guaidó government on January 23, 2019, the United States "imposed new and more comprehensive sanctions against PDVSA" five days later. Brf. at 5. If recognition of Guaidó had changed Venezuelan behavior toward its *alter ego* PDVSA, these sanctions would have been unnecessary. In February, the national assembly purported to confer powers on the Guaidó regime, and the regime thereafter purported to exercise them. Brf. at 5-7. Had that worked a practical change, one might have expected to see sanctions lifted. Instead, in August 2019, the

---

[5] The opposite may be true. *See generally* Philip Reeves, *In Venezuela, Juan Guaidó's Campaign Faces New Difficulties*, NPR (September 25, 2019), available at: https://www.npr.org/2019/09/25/764390079/in-venezuela-juan-guaid-s-campaign-faces-new-difficulties; Stephen Gibbs, *Venezuela loses patience waiting for Guaidó* (September 19, 2019), The Times, available at: https://www.thetimes.co.uk/edition/world/venezuela-loses-patience-waiting-for-guaido-xrhp36zjn.

4

United States issued Executive Order 13884, imposing limits on consensual transfers of assets of both Venezuela and PDVSA in the United States. Brf. at 15. It did so because the Guaidó government has utterly failed to assume power. Were it not so, this new round of sanctions would have crippled the very ally that the United States was attempting to support. The new sanctions are authoritative proof that nothing about the relationship between the sovereign Venezuela and its *alter ego* PDVSA has changed.

Remarkably, even Venezuela's arguments show that nothing has changed the *alter ego* conclusions reached in *Crystallex I* and *III*:

- "Article 15(a) of the Democracy Transition Statute empowers the Interim President to '[a]ppoint ad hoc Administrative Boards' of state-owned corporations for the purpose of 'adopting the measures necessary to control and protect State company assets." Brf. at 5. While President Guaidó now *exercises* Venezuela's appointment power (although his appointments have no practical effect in Venezuela), it remains the case that "Venezuela appoints PDVSA's Board of Directors." *See Crystallex I*, 333 F. Supp. 3d at 402.

- Venezuela's brief describes Article 34 of the Democracy Transition Statute, commenting that "payments or distributions" from subsidiaries to PDVSA should be delayed "until democracy is restored in Venezuela." Brf. at 6. This Court previously determined, "Venezuela uses PDVSA to achieve its social and political goals, both domestically . . . and abroad." *Crystallex I*, 333 F. Supp. 3d at 402. The social and political goals may now be different than they were under Maduro, but Venezuela asserts that it continues to control PDVSA.

- So too with Presidential Decree No. 3, "which granted 'new powers and duties' to the PDVSA Administrative Board for the purpose of 'protect[ing] Venezuela State assets abroad, directly or indirectly controlled by PDVSA.'" Brf. at 6-7. Interim President Guaidó's decree requires PDVSA to protect *Venezuela State* assets abroad which continues to establish that "Venezuela regularly uses PDVSA's assets as its own" and "that Venezuela causes PDVSA to achieve domestic social and political goals and to advance Venezuela's foreign policy goals." *Crystallex I*, 333 F. Supp. 3d at 406, 409.

In short, while the regime acknowledged abroad (but not at home) as ruling Venezuela has changed, the facts and circumstances of *Venezuela's* control over PDVSA have not. No change has occurred that would warrant this Court coming to a different conclusion as to PDVSA being

an *alter ego* of Venezuela. *See Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"). Just the opposite: President Guaidó published a proposed consensual restructuring process on July 1, 2019. Brf. at 17 n.21. The cited document states that "no different treatment shall be accorded" as between claims against Venezuela and claims against PDVSA. *See* Supplemental Declaration of Christopher L. Carter Ex.1. In other words, President Guaidó admits that for debt resolution purposes, PDVSA and Venezuela continue to be the same entity, each being an *alter ego* of the other. And through PDVSA, Venezuela continues to own commercial property in the United States. *See Crystallex I*, 333 F. Supp. 3d at 417-18. PDVSA's shares of PDVH are located in Delaware as a matter of law,[6] and continue to permit PDVSA (under its new board) to run the business, under the factors cited by the Court of Appeals. *Crystallex III*, 932 F.3d at 151. Thus they remain subject to attachment by judgment creditors such as OIEG.

Venezuela's cited authorities cut against it. In *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir. 1974), the Third Circuit refused to reject a collateral estoppel argument based on a suggestion of changed circumstances. *Id*. at 848-49. "Carried to its extreme, the concept of changed factual circumstances could totally undermine the application of collateral estoppel. Rare would be the case in which counsel could not conjure up some factual element that had changed between adjudications." *Id.* at 846. In *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000), the Court of Appeals held collateral estoppel did not apply where the second case "involves different legal issues that arise in a different factual context," *id*. at 233-34, and where these different facts raised different legal principles. *Id.* at 233.

---

[6] Under Delaware law, "[f]or . . . purposes of . . . attachment [and] garnishment . . . the situs of the ownership of the capital stock of all corporations existing under the laws of this State . . . shall be regarded as in this State." 8 Del. C. § 169.

Venezuela does not address two cases that *are* on point. In *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 527 (3d Cir. 2002), a state commission argued that circumstances had changed because current commissioners were not parties to an earlier proceeding. The Court rejected the argument, ruling that a changing slate of commissioners does not change the PUC itself for claim preclusion purposes. *Id*. at 527. *Lang v. Pennsylvania Higher Educ. Assistance Agency*, 201 F. Supp. 3d 613 (M.D. Pa. 2016), held that conclusory pronouncements by a legislature do not change facts on the ground. "Just because the General Assembly passed legislation asserting that PHEAA is an 'integral part and arm of the Commonwealth' and 'is directly controlled by the Commonwealth' does not make it so." *Id*. at 626.

### B. OFAC Sanctions Do Not Negate the Collateral Estoppel Effect of *Crystallex I and II*

Venezuela asserts that recent OFAC sanctions prevent OIEG from asserting the collateral estoppel effect of *Crystallex I* and *II*. The argument lacks merit.

At the outset, Venezuela is estopped to raise questions of OFAC sanctions. The sanctions regime has been imposed *against* Venezuela. It can hardly be asserted defensively *by* Venezuela to avoid judgments granted by the federal courts, and remedies on such judgments provided by statute. OIEG sought an OFAC license in March 2019, and its application remains pending. It has regularly updated OFAC on the progress of its collection efforts, including most recently as to the filings in this proceeding.[7] These cases are well known and understood by the Treasury Department, which can intervene should it object to the proceedings.

The sanctions broadly bar *consensual* dealings in the shares. Assets may not be "transferred, paid, exported, withdrawn or otherwise dealt in." Brf. at 15, quoting Executive Order

---

[7] *See generally,* Supplemental Declaration of Christopher Carter.

13850. This Court previously concluded that Executive Order 13835 did not bar relief. *Crystallex I*, 333 F. Supp. 3d at 421 (citing OFAC FAQs: Other Sanctions Programs, *Venezuela Sanctions*). Venezuela focuses on the use of "transfer" in Executive Orders 13850 and 13884, *see* Brf. at 15, but this Court already determined that the use of "transfer" in Executive Order 13835 was not a bar to the issuance of an attachment. *See Crystallex I*, 333 F. Supp. 3d at 421. The more recent Executive Orders provide no new barrier to this Court's authority to issuance of an attachment. To be sure, a license – or official guidance – would be necessary to *execute* on the attachment.[8]

OIEG understands that OFAC is likely to wait for a potential sale transaction before issuing a license, and accordingly that Crystallex's suggested auction procedures would condition transfer of the shares upon the issuance of an OFAC license to both the secured creditors and the transferee. OIEG agrees with this approach. An attachment order should issue in the interim to establish a junior priority in the assets.

OFAC considerations were not relevant to this Court's analysis of whether or not PDVSA is an *alter ego* of Venezuela *or* whether or not PDVSA's assets were subject to attachment by Crystallex. The "primary ruling" in *Crystallex I* and *II* "was that PDVSA is Venezuela's '*alter ego*' under *Bancec*." *Crystallex III*, 932 F.3d at 135. This Court "concluded that Venezuela's control over PDVSA was sufficient to allow Crystallex to attach PDVSA's shares of PDVH in satisfaction of its judgment against [Venezuela]." *Id*. at 132. *These* determinations were essential to the prior judgment, even if the actual execution on any attachment will require an OFAC license (or guidance). In short, Venezuela is collaterally estopped from challenging the Court's prior

---

[8] Certainly OFAC considerations are inapplicable to the *merits* of the collateral estoppel effect of *Crystallex I* and *II*. "Whether the Treasury Department permits execution in this case, it is clear that the sanctions do not make the PDVH shares immune from attachment under the Sovereign Immunities Act." *Crystallex III*, 932 F.3d at 151.

determination that (i) PDVSA is the *alter ego* of Venezuela, and (ii) that PDVSA's shares of PDVH are subject to attachment by a judgment creditor of Venezuela.

## II. The Court Should Not Defer a Decision on OIEG's Motion Until the *Crystallex* Proceedings Are "Fully Resolved"

Venezuela asserts that this Court should defer action on OIEG's motion pending the Third Circuit's review of the petitions for rehearing or *en banc* review.

A panel of the Third Circuit unanimously affirmed this Court's decisions in *Crystallex I* and *II*. *See Crystallex III*, 932 F.3d at 126. The court also lifted its stay of the district court *Crystallex* proceedings, thereby authorizing this Court to take further action in aid of execution, and has taken no subsequent action to limit that action. *See* Order, Nos. 18-2797, 18-3124 (3d Cir. Sept. 30, 2019), Doc. 3113360907, at 2. Now that the Third Circuit has lifted its stay of proceedings in the district court, this Court can and should proceed with enforcement actions against Venezuela.

That Venezuela has sought discretionary review of *Crystallex III* is of no consequence. If this Court allows this case to proceed, Venezuela will not be harmed. Rather, OIEG is rightfully entitled to an attachment to establish its priority as it continues its efforts to receive payment on its years-old ICSID award.

Venezuela's pending rehearing and *en banc* review request do not limit the collateral estoppel effect of *Crystallex I* and *II*. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 142 (3d Cir. 2001) ("the possibility that this judgment may be overturned during the proper course of appellate review does not prohibit resort to collateral estoppel"); *Galderma Labs. Inc. v. Amneal Pharm.*, LLC, 921 F. Supp. 2d 278 (D. Del. 2012) (stating that the pendency of an appeal does not diminish either the finality or binding effect of previous court's holding); *see also Flair Broad. Corp. v. Powers*, 1998 WL 247521, at *4, (S.D.N.Y. May 15, 1998) ("the pendency

of an appeal does not preclude the application of collateral estoppel under either federal or New York law"); *Crum & Forster Ins. Co. v. Goodmark Indus., Inc.*, 488 F. Supp. 2d 241, 246 (E.D.N.Y. 2007) (same); *Ashford v. Skiles*, 837 F. Supp. 108 (E.D. Pa. 1993) (pendency of appeal does not diminish collateral estoppel effect of valid final judgment).

## CONCLUSION

For the reasons set forth above, this Court should grant the Motion.

Dated: November 12, 2019

Respectfully submitted,

*/s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
MORGAN, LEWIS & BOCKIUS LLP
1007 N. Orange Street, Suite 501
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

Sabin Willett (*pro hac* pending)
Christopher L. Carter (*pro hac* pending)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
christopher.carter@morganlewis.com

*Attorneys for Plaintiff, OI European Group B.V.*