# EXHIBIT 1



July 1, 2019

OFFICE OF THE SPECIAL ATTORNEY GENERAL OF THE BOLIVARIAN REPUBLIC OF VENEZUELA

GUIDELINES FOR THE RENEGOTIATION OF THE CHÁVEZ/MADURO ERA LEGACY PUBLIC EXTERNAL DEBT.

*

This memorandum describes the policies that will guide the Interim Government and the National Assembly of the Bolivarian Republic of Venezuela led by President Jan Guaidó (the "Authorities") as they approach the imminent renegotiation of foreign currency-denominated private claims against the Republic and the Venezuelan public sector (that is, claims asserted by private sector parties, not claims of official sector entities). This memorandum has been prepared by the advisory commission designated by the Special Attorney General, José Ignacio Hernández G., integrated by Ricardo Hausmann and Alejandro Grisanti. Furthermore it benefited from the advice of Lee Buchheit, who is the Authorities' strategic adviser in public debt matters.

**

This public external debt renegotiation cannot begin until the usurpation by regime of Nicolas Maduro has not ended and the economic sanctions imposed on said regime by the United States of America and other countries have not been lifted. Consequently, once these events have occurred, it shall be the policy of the Authorities to proceed with an orderly and consensual renegotiation of legacy private claims as soon as practicable thereafter, in accordance with the Special Law to be passed by the National Assembly.

**1.    Comprehensive Private Claims Renegotiation**

The Authorities anticipate that this will be a comprehensive renegotiation of claims against the Venezuelan State, including all the foreign currency-denominated claims against the Venezuelan public sector. A significant number of the outstanding claims against the Venezuelan public sector did not arise in the context of traditional debt instruments evidencing obligations contracted. These include, for example, claims related to unpaid supplier invoices and damage claims resulting from the expropriations and nationalizations carried out by the Chavez/Maduro regimes. The Authorities intend to use this opportunity to resolve as many outstanding private claims against the Venezuelan public sector as possible.

**2.    Claim Reconciliation**

Only reconciled foreign currency-denominated claims will be eligible to participate in the renegotiation. The Authorities expect to appoint a claims reconciliation agent, whose

1



responsibilities will include, among others, compiling a comprehensive list and inventory of the outstanding legacy claims, as well as determining the amounts of each one of these claims for purposes of renegotiation. In many cases (such as bonds or loans that were not issued with significant amounts of original discount) the Authorities expect the reconciliation process will be straightforward; the reconciled amount of such claims will represent unpaid principal and interest accrued according to original contractual terms.

There may be other categories of foreign currency-denominated claims. However, that will require the claims reconciliation agent to undertake a factual investigation. Among these may be claims whose face amount was inflated at the time of issuance in expectation of a heavy market discount upon resale by the holder, debt instruments issued with significant amounts of original issue discount, claims (such as arbitration claims that have not yet resulted in a final arbitral award) whose quantification will require discussion by the Authorities and the holder of the claim, claims procured or tainted by demands of corruption allegedly committed by officials in the Chávez/Maduro regimes, and perhaps other categories of questionable claims.

The Authorities will early in the process publish a memorandum describing the policies that will guide the claims reconciliation agent in carrying out its functions.

The Authorities reserve the right to exercise all actions and potential legal defenses with respect to questionable claims until the point that such claim has been reconciled in order to participate in the renegotiation in accordance with the published guidelines and accepted by the Authorities.

**3.   Equal Treatment**

Once the amount of a claim has been reconciled and accepted to be renegotiated, the claim shall be eligible to participate in the renegotiation on equal terms with all other reconciled private claims (subject to the exceptions described in the next paragraph). Stated differently, no different treatment shall be accorded to eligible foreign currency-denominated claims as a result of their origin (for example, whether arising pursuant to a debt instrument, an unpaid invoice, an expropriation, etc.), the nature or domicile of the holder of the claim, and/or the identity of the public sector obligor (the Republic, PDVSA or another public sector entity, whether the claim has been reduced to a court judgment or otherwise.

Claims that benefit from a valid first priority security interest in property of the Venezuelan state or its public sector entities may be given separate treatment in the renegotiation.

**4.   Financial Terms**

Promptly once the transition has taken place, the Authorities expect to request the assistance of the International Monetary Fund (IMF) and other multilateral agencies in



addressing the dire humanitarian crisis in Venezuela and in developing a longer-term program for the country's economic recovery. The Authorities recognize that designing an economic recovery program for a country in the condition of Venezuela will be a challenging and time-consuming task. That program is expected to include a projection about the level of debt and associated debt service requirements that the country will be able to carry in future years.

As a practical matter, a detailed discussion about the financial terms of the foreign currency-denominated claims renegotiation must await the conclusion of the IMF's assessment of Venezuela's condition and economic prospects. With that assessment in hand, however, and consistent with IMF policies, the Authorities will enter into discussions with representatives of the various claimant groups regarding both the proposed financial terms for the renegotiation of their claims and the nature of the new debt instruments that will be issued.

It shall be the policy of the Authorities to ensure that settlements of both commercial and financial legacy claims, as well as bilateral claims, are consistent with the economic recovery program supported by the IMF and other official sector sponsors.

The Authorities acknowledge and appreciate the forbearance from exercising legal remedies shown by most private creditors despite the behavior and the provocations of the Maduro regime. Few, if any, claims are in danger of becoming time-barred as a result of the running of a statute of limitations. To the extent that any claims are in danger of becoming time-barred, the Authorities will entertain proposals to extend the relevant limitations period to permit the debt renegotiation to proceed. Moreover, as noted above, no preferential treatment will be accorded in the debt renegotiation to claims that have been reduced to a court judgment. The Authorities therefore request all claimants to refrain from pursuing legal remedies (and suspend, without prejudice, any actions that have already been commenced) pending the coming end of usurpation and the commencement by the Authorities of an orderly, consensual resolution of those claims.