<pre>
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                  - - -

 4   OI EUROPEAN GROUP B.V.,            :   MISCELLANEOUS ACTION
                                        :
 5              Plaintiff,              :
     v                                  :
 6                                      :
     BOLIVARIAN REPUBLIC OF VENEZUELA;  :
 7                                      :   NO. 19-290-LPS
                Defendant.
 8                                  - - -
                              Wilmington, Delaware
 9                            Thursday, April 22, 2021
                         Argument by Telephone Conference
10
                                    - - -
11
     BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
12
     APPEARANCES:                   - - -
13

14              MORGAN LEWIS & BOCKIUS, LLP
                BY:  JODY C. BARILLARE, ESQ.
15
                    and
16
                MORGAN LEWIS & BOCKIUS, LLP
17              BY:   JONATHAN M. ALBANO, ESQ., and
                      CHRISTOPHER L. CARTER, ESQ.
18                    (Boston, Massachusetts)

19                  and

20              SEQUOR LAW, P.A.
                    EDWARD H. DAVIS, JR., ESQ.
21                  FERNANDO J. MENENDEZ, ESQ., and
                    CRISTINA VICENS BEARD, ESQ.
22                  (Miami, Florida)

23                      Counsel on behalf of
                        OI European Group B.V.
24

25                              Brian P. Gaffigan
                                Registered Merit Reporter
</pre>

```
1    APPEARANCES:   (Continued)

2

3                    ABRAMS & BAYLISS
                     BY:   STEPHEN C. CHILDS, ESQ.
4
                           and
5

6                    SULLIVAN & CROMWELL, LLP
                     BY:   JOSEPH E. NEUHAUS, ESQ.
7                          (New York, New York)

8                            Counsel for Bolivarian Republic of
                             Venezuela
9

10                   HEYMAN ENERIO GATTUSO & HIRZEL LLP
                     BY:   SAMUEL T. HIRZEL, II, ESQ.
11
                           and
12
                     CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
13                   BY:   JULIA B. MOSSE, ESQ.
                           (New York, New York)
14
                             Counsel for Intervenor Petróleos de
15                           Venezuela, S.A.

16

17

18

19

20

21                           - oOo -

22                       P R O C E E D I N G S

23                   (REPORTER'S NOTE:   The following argument by

24   telephone conference was held remotely, beginning at 3:04

25   p.m.)
```

1          THE COURT:  Good afternoon, everybody.  This is

2    Judge Stark.  I hope you can hear me.  If so, who is there

3    for the plaintiff, please?

4          MR. BARILLARE:  Good afternoon, Your Honor.

5    This is Jody Barillare from Morgan Lewis on behalf of the

6    plaintiff.  Along with me today are my colleagues from

7    Morgan Lewis, Jonathan Albano, and Chris Carter; and my

8    co-counsel from Sequor Law, Fernando Menendez, Ed Davis, and

9    Cristina Beard.

10          And with Your Honor's permission Mr. Menendez

11    will be arguing with potentially Mr. Albano chiming in, if

12    needed, to address the briefing related to the writ.

13          THE COURT:  Okay.  Thank you.  Good afternoon

14    to all of you, and certainly Mr. Menendez has permission.  I

15    don't think we'll need to get into the writ, but we'll see.

16          And who is there for PDVSA, please?

17          MR. HIRZEL:  Good afternoon, Your Honor.  Sam

18    Hirzel from Heyman Enerio on behalf of PDVSA.  With me on

19    the line is Julia Mosse from Curtis, Mallet-Prevost, Colt &

20    Mosle, and Ms. Mosse will be making the argument today.

21          THE COURT:  Okay.  Thank you.

22          Is there anybody else on the line who wants to

23    enter an appearance?

24          MR. CHILDS:  Yes, Your Honor.  This is Steve

25    Childs of Abrams & Bayliss on behalf of the Republic of

1   Venezuela.  And with me on the line today is Joe Neuhaus of

2   & Cromwell who is available if Your Honor has any questions

3   of the Republic.

4            THE COURT:  Good afternoon to you.  Thank you.

5            Anybody else?

6            Okay.  My court reporter is, of course, on the

7   line.  For the record, it is our case of OI European Group

8   BV versus Bolivarian Republic of Venezuela.  This is our

9   Miscellaneous Action No. 19-290-LPS, and this is the time

10  we set to hear argument on PDVSA's motion for a protective

11  order and to quash.  And we will hear from PDVSA first, and

12  I believe it's Ms. Mosse.  If so, go right ahead.

13           MS. MOSSE:  Good afternoon, Your Honor.  Thank

14  you.  Julia Mosse from Curtis, Mallet-Prevost Colt & Mosle

15  on behalf of PDVSA.

16           PDVSA moves for a protective order with

17  respect to the Rule 30(b)(6) notice directed to it and for

18  a protective order or order quashing the nonparty subpoena

19  served on Horacio Medina who is the chairman of the PDVSA ad

20  hoc board.  Both the PDVSA 30(b)(6) notice and the subpoena

21  to Mr. Medina are virtually identical and they seek broad

22  categories of documents and information largely concerning

23  the Maduro regime's actions with respect to PDVSA's assets

24  outside of the United States, and also concerning the PDVSA

25  ad hoc board's alleged lack of de facto control over PDVSA's

1    assets outside of the United States.

2         And OIEG seeks this discovery in connection

3    with its motion to attach PDVSA's shares of PDV Holding.

4    And in its attachment motion, OIEG argues that because the

5    Maduro regime continues to exercise control over PDVSA and

6    its assets outside of the United States, that PDVSA should

7    be considered Venezuela's alter-ego under the Supreme Court

8    decision in *Bancec*.

9         PDVSA's motion for a protective order and to

10   quash is based on three grounds:

11        The first is that the discovery that OIEG

12   seeks is barred by the for Foreign Sovereign Immunities

13   Act.  Because OIEG seeks discovery in support of a legally

14   irrelevant Maduro theory of jurisdiction and it failed to

15   plead specific non-conclusory facts that would entitle it to

16   discovery into the interim government led by Juan Guaidó's

17   relationship with PDVSA as managed by the ad hoc board.

18        The second ground for the motion for protective

19   order is the discovery that OIEG seeks is inconsistent with

20   the Federal Rules of Civil Procedure.  Similarly, because

21   it seeks information and documents that are not legally

22   relevant and because it's overly broad, unduly burdensome

23   and as to the Medina subpoena it is wholly duplicative to

24   the PDVSA 30(b)(6) notice.

25        And the third ground is that if any discovery

1    is to occur, it should occur after the hearing that is

2    scheduled to take place on April 30th on OIEG's attachment

3    motion, during which the Court will hear presentations from

4    the Republic, from PDVSA and from OIEG on the viability of

5    OIEG's Maduro theory of jurisdiction and on the sufficiency

6    of OIEG's allegations regarding the relationship between the

7    interim government and the PDVSA ad hoc board.

8              And these are the central legal issues both to

9    the attachment motion and to PDVSA's, PDVSA's motion for

10   protective order and that --

11             THE COURT:  Yes.  Let me -- I want to talk about

12   that third point in your suggestion that maybe I just defer

13   deciding the discovery point.

14             Could you play that out for me what that would

15   look like?  We're all going to be spending all of next

16   Friday on video together and I'm going to hear, you know,

17   extensive argument and some evidence.

18             Because at least much of your first two

19   arguments turns on irrelevancy.  If I agree to defer ruling

20   on this, is it going to follow that the discovery is going

21   to become relevant if I rule on certain legal issues for

22   OIEG or, you know, might this dispute become moot or, what,

23   it seems to me there is a risk that there is going to need

24   to be supplemental briefing after that hearing.

25             What, articulate why it's a good idea to sort of

1    kick this can down the road and what you would see happening

2    thereafter with respect to this discovery dispute.

3            MS. MOSSE:  Sure.  We do think that discovery

4    would become moot following the Court's hearing.

5            The Court will hear argument on the viability of

6    OIEG's theory of jurisdiction that rests on allegations of

7    the Maduro regime actions with respect to PDVSA's assets

8    outside of the United States.  We submit that the Court

9    will conclude or should conclude that those allegations are

10   legally irrelevant and therefore cannot serve as a basis

11   for jurisdiction over PDVSA and not for jurisdictional

12   discovery.

13           The Court will also hear argument on a

14   sufficiency of OIEG's very few allegations concerning the

15   interim government's relationship with the PDVSA ad hoc

16   board which is PDVSA's position is the only relevant

17   relationship for this Court to consider under *Bancec*.

18           And after hearing those arguments and also

19   hearing testimony from Mr. Medina on his declaration,

20   PDVSA submits that the Court will conclude that discovery

21   or should conclude that no discovery is necessary and

22   therefore the discovery request in this motion will be

23   mooted.

24           THE COURT:  So what if I came out the other way

25   and find that their theory is not legally irrelevant?

1    Would the discovery at issue today become moot under that

2    reasoning as well?

3              MS. MOSSE:  If Your Honor finds that their theory

4    is not legally irrelevant, so is relevant somehow to the

5    Court's immunities determination, and the Court finds, after

6    again hearing the full presentations from all of the parties

7    at the April 30th hearing, that it would be aided in some way

8    by discovery into specific allegations that it finds that OIEG

9    has made that warrant further discovery, then the Court could

10   order such discovery, but the finding of relevance alone would

11   not then lead to discovery.  It's the law under the FSIA is

12   that to be entitled to jurisdictional discovery, the discovery

13   certainly needs to be relevant but it needs to be essential

14   or crucial to the Court's immunity determination.

15             So in an effort --

16             THE COURT:  Yes, I've not -- it's probably clear

17   at this point I've not dug into the briefs for next week

18   just yet.

19             So is one possible outcome, though, based on

20   the presentation next week -- I know you would oppose this

21   on the merits, but is a possible outcome that I accept the

22   relevance of plaintiff's theory and I accept that they made

23   out the -- met whatever evidentiary burden they have?  And

24   in that world, would you assume that this discovery would

25   become irrelevant?

```
 1            MS. MOSSE:  If the Court can make a
 2   determination, one way or the other, in the absence of
 3   discovery, then the discovery does become irrelevant, but
 4   what the FSIA prevents is any discovery in advance of a
 5   definitive determination by the Court as to the legal
 6   relevance of the allegations of the Maduro regime's actions
 7   outside of the United States.  No discovery can happen
 8   unless and until the Court definitively rules on that issue
 9   because it would be an infringement of PDVSA's sovereign
10   immunity to be subjected to the burden of discovery in
11   advance of that conclusive determination.
12            THE COURT:  All right.  Now, if I heard you
13   correctly, in your prior answer you mentioned that I will be
14   hearing from Mr. Medina.  Do you anticipate him testifying at
15   this hearing?
16            MS. MOSSE:  We have been informed by counsel for
17   OIEG that they intend to call him for cross-examination on
18   his declaration.
19            THE COURT:  And do you have a position on that?
20            MS. MOSSE:  We would make him available for
21   cross-examination on his declaration.
22            THE COURT:  So if that is going to happen next
23   week, why not make him available for a deposition in advance
24   of that?
25            MS. MOSSE:  Well, first of all, Your Honor, we
```

1    did offer Mr. Medina to be available for a deposition

2    limited to the scope of his declaration in lieu of the need

3    to cross-examine him at the hearing and that proposal was

4    turned down.

5            But certainly there is no need to have a

6    deposition of Mr. Medina on his declaration one or two days

7    in advance of cross-examination from Mr. Medina on his

8    declaration.

9            And any testimony from Mr. Medina beyond scope of

10   his declaration would be prohibited by the FSIA in advance of

11   as I said, this Court's conclusive determination as to the

12   relevance of OIEG's proffered theory of jurisdiction.

13           THE COURT:  In the ordinary course, I'm sure you

14   know, we do have depositions before live testimony in front

15   of a fact-finder.  I'm having trouble with the notion that it

16   would serve no purpose.  Wouldn't it serve a purpose of the

17   plaintiff not being surprised by what he is going to say and

18   being able to more effectively prepare a cross-examination and

19   aid the Court?

20           MS. MOSSE:  Your Honor, he has submitted a

21   declaration and that will serve as his direct examination so

22   there should be no surprise to plaintiff as to what he is

23   going to say.  If they want to examine him on his declaration

24   on cross at the hearing, that's fine.

25           THE COURT:  I want to, I want to understand

1    also this line you are taking that all discovery beyond his

2    declaration, I take it is your view, is actually barred by

3    your presumptive immunity.

4              That sounded like I thought OIEG was accusing

5    you of taking such a broad position, but then I saw in your

6    reply brief you said you weren't.  So maybe I misunderstand.

7              Can you help me with that?

8              MS. MOSSE:  Sure.  Our position is that any

9    testimony from Mr. Medina should be limited to his

10   declaration and that, for the reasons I have stated that

11   testimony from Mr. Medina which appears to be largely what

12   OIEG seeks to elicit concerning the relationship between the

13   Maduro regime and the actions of the Maduro regime outside

14   of the United States, we submit is legally irrelevant to the

15   Court's immunity determination and therefore not within the

16   proper scope of discovery.  And certainly he, Mr. Medina

17   should not be questioned about it before this Court has

18   definitively ruled as to the viability of that theory.

19             As to any questions of Mr. Medina that go to the

20   relationship between the interim government and the PDVSA ad

21   hoc board, OIEG could inquire into those areas to the extent

22   that they're addressed in the Medina declaration.  And I think

23   they are largely addressed in Mr. Medina's declaration, if not

24   completely addressed in Mr. Medina's declaration.

25             Because the allegations that OIEG has made

1    concerning what PDVSA submits is the only relevant legal

2    theory of jurisdiction are fully addressed in his declaration,

3    his examination should be limited to that declaration.

4              THE COURT:  In the reply brief, what I'm

5    referring to is the first paragraph:  "OIEG creates a

6    strawman, wrongly asserting that PDVSA seeks to avoid

7    alter-ego discovery on the faulty premise that such

8    discovery is now proper unless and until jurisdiction has

9    been established."

10             You call that a strawman, but it sounds like the

11   very argument you are making now.  So what am I missing?

12             MS. MOSSE:  Your Honor, there is the distinction

13   between establishing jurisdiction and establishing the

14   viability of this theory of jurisdiction that calls actions

15   of the Maduro regime outside of the United States relevant.

16             So what we're saying is not that there can be

17   no discovery, period, until this Court rules that it has

18   jurisdiction over PDVSA.  What we are saying is there can

19   be no discovery until this Court rules that the theory that

20   OIEG has put forward as to Maduro's actions outside of the

21   United States, until the Court has ruled that that is a viable

22   legal theory that could serve as the basis for jurisdiction

23   over PDVSA, there can be no discovery before that.

24             THE COURT:  All right.  Then why am I

25   considering Mr. Medina at all?  Why shouldn't I just strike

1    his declaration, make the legal determination that you are

2    asking me to make, and then we'll revisit discovery at that

3    point, depending on where we are?

4              MS. MOSSE:  There is no basis, Your Honor, for

5    striking Mr. Medina's declaration.  He specifically

6    addresses the allegations that OIEG has made concerning the

7    relationship between the interim government and the PDVSA ad

8    hoc board.  And OIEG will have an opportunity to examine

9    Mr. Medina on his declaration which address this allegation.

10             THE COURT:  All right.  Thank you.  We'll come

11   back to you, but let me turn it over to OIEG and see what

12   they have to say.

13             Go ahead, please.

14             Whoever is there for OIEG, you might be on mute.

15             MR. MENENDEZ:  Your Honor, this is Fernando

16   Menendez on behalf of OIEG.  I apologize.  We were muted on

17   the Zoom line.  I apologize, Your Honor.

18             THE COURT:  Go right ahead.  Fine, go ahead.

19             MR. MENENDEZ:  Your Honor, did you want our full

20   position or with respect to the April 30th hearing date, to

21   clarify?

22             THE COURT:  I'll not sure what you mean.  I'm

23   trying to resolve the motion --

24             MR. MENENDEZ:  Right.

25             THE COURT:  -- that you are here for.

1          MR. MENENDEZ:  Yes.  Okay.

2          Your Honor, in that regard, our position I think

3     is relatively simple.

4          Although the parties clearly have very diverging

5     views on what the appropriate scope of discovery is, we

6     respectfully submit that ours is the one that is consistent

7     with settled law.  I don't think that you have seen any

8     disagreement in the briefs as to what the applicable standard

9     is.  And that is, there is broad authority that both, both

10    sides have cited permitting jurisdictional discovery where

11    plaintiff has presented specific non-conclusory allegations

12    of fact to support his claim.

13         In that regard, we provided a wide range of

14    non-conclusory allegations that are supported by declarations

15    and hundreds of pages of related exhibits to support the

16    claim that PDVSA, which is the state-owned entity based in

17    Venezuela, is the alter-ego of the Venezuelan state which is

18    our debtor and is going to remain our debtor regardless of

19    what government happens to be in power.

20         So in that regard, we would submit that PDVSA's

21    authority challenging the jurisdiction or ability to take

22    discovery are really for the most part irrelevant other than

23    stating the legal standard.  None of them come within a

24    country mile of the facts that we have in this case.  Many

25    do not deal at all with alter-ego liability.  Most contain

1     or refer to complaints where there are threadbare conclusory

2     allegations that an alter-ego relationship exists but there

3     is not a single document filed in support.

4               None involved instances where, where as I

5     noted before, you have hundreds of pages of materials before

6     the Court to support the allegations made.  None involve

7     instances where plaintiff alleged that circumstances

8     supporting a prior alter-ego finding persisted, and none

9     involved claims against an entity that had already been

10    found to be an alter-ego.

11              So based on the standard we think we easily meet

12    the requirement for jurisdictional discovery.

13              Now --

14              THE COURT:  All right.  All right.  Let me

15    interrupt you.

16              Even though I guess this was implied in the

17    status letter you all submitted about what the hearing is

18    going to look like next week, I'm surprised to hear that

19    you are going to get the chance to cross-examine Mr. Medina

20    at the hearing next week.  That seems to leave an awfully

21    narrow dispute for me, if any, for today which is simply

22    whether you can depose him before you cross-examine him.

23              Is that your understanding of the dispute at

24    this point?

25              MR. MENENDEZ:  The dispute is not only, Your

1    Honor, we would say the ability to depose him but the scope of

2    what we can depose him on.  The proposal that has been made

3    by PDVSA is improper we believe under the circumstances.  The

4    law as noted before is having made specific non-conclusory

5    allegations which we have more than done with respect to PDVSA

6    and the control exerted over that entity, and we believe that

7    we have the ability based on that to seek discovery that goes

8    to those issues.

9         Now, notably in the response, we do not have

10   identification of what specific points they contend are out

11   of bounds or do not relate specifically to the jurisdictional

12   issue or the control issue which we have discussed in detail

13   and that we have support for.

14        So we believe that that blanket objection to the

15   ability to obtain any information is improper as we clearly

16   meet the applicable test for requesting that information.

17        So that we believe that would be the issue:

18   their effort to micromanage the scope and extent of the

19   information we can obtain.

20        THE COURT:  All right.  So how prejudicial

21   would it be and how would it be prejudicial if, and when,

22   after everything, I just say, look, I'll see you all on

23   Friday.  I'm not ruling on the motion for a protective order

24   or to quash, you know, Mr. Menendez -- I'm sorry, you are

25   Mr. Menendez.  My apologies.  Mr. Medina will be on the

1    stand.  You will cross him.  They'll object if they want to.

2    I'll rule on those objections.  And we'll figure out if you

3    get a deposition of him and take discovery either at that

4    hearing or after it on, you know, a much fuller record at

5    that point.  Why not proceed that way?

6              MR. MENENDEZ:  Well, Your Honor, to the extent

7    that we're proceeding on all of the issues on the 30th,

8    we believe that a big portion of our claim under *Bancec*,

9    generally, would go to a lot of the issues that are not

10   discussed in the declaration.

11             So as Your Honor noted previously, it's ordinary

12   course to have the opportunity to depose a witness prior

13   to his taking the stand to the extent that he is providing

14   relevant testimony.

15             The testimony here is very narrowly tailored

16   and crafted to specifically only support the points that

17   PDVSA wishes to make before this Court, including blanket

18   assertions that the board exercises control over PDVSA's

19   assets outside of Venezuela.  We have not had the

20   opportunity to test.

21             So it would be difficult not to turn the hearing

22   into a deposition, in and of itself, and we think that it

23   would be a better use of judicial resources and the parties

24   time to handle these issues ahead of time so that we can

25   present the narrowly tailored case to Your Honor and not

1    waste time with material that may be irrelevant.

2               THE COURT:  Well, you are not going to waste

3    time.  I have given you the time limits that you have asked

4    for, so that's going to be your time limit.

5               What about the alternative where if you say now

6    your cross will be limited to the declaration but after the

7    hearing, after I have read all the briefing, you made your

8    presentation, if I think that I need more in the record,

9    we'll revisit this question of whether you should now get

10   the deposition and, you know, presumably if we have to,

11   we'll follow-up with a supplemental hearing?  Why is that

12   not the way to proceed?

13              MR. MENENDEZ:  Your Honor, I believe if we had a

14   full opportunity to not compromise any of our positions with

15   respect to our argument regarding the status of PDVSA as an

16   alter-ego based on issues related to Maduro and those rights

17   were fully preserved, I, I don't believe that we would be

18   opposed to that particular provision of the proceeding in

19   that manner so long as all of those rights were completely

20   preserved and our ability to test the existing submissions

21   made by Mr. Medina.  We also have the opportunity to do that.

22              THE COURT:  So what would be your preference

23   between those couple of options we just discussed?

24              You all show up next Friday.  You know, the

25   video.  And you try to do the cross you want to do.  We have

```
 1    objections.  We figure it out there.

 2              Or we just say in advance the cross is limited

 3    to the declaration but without prejudice to you renewing an

 4    effort to take discovery after the hearing if I, you know,

 5    if you can persuade me that it is relevant and you have

 6    met your burden on jurisdictional discovery and all that.

 7              Between those two options, do you have a

 8    preference?

 9              MR. MENENDEZ:  Your Honor, may I have a moment?

10              THE COURT:  Absolutely.  And if you want to say

11    "I'd like time to think about this beyond this call," that

12    is fine, too.  I can do that.

13              MR. MENENDEZ:  Okay.

14              (Pause.)

15              MR. MENENDEZ:  Your Honor, under the

16    circumstances, I think that we would prefer to proceed

17    with -- well, we would not want to proceed other than with

18    the opportunity to depose Mr. Medina ahead of the hearing.

19              THE COURT:  All right.  So if I'm going to take

20    this motion under advisement and say no matter what, you are

21    not getting a deposition before next Friday, if I were to

22    say that, then what?  Then what is your position?

23              MR. MENENDEZ:  Then, Your Honor, we would, we

24    would -- the position Your Honor articulated earlier where

25    we would preserve and have all rights reserved with respect
```

1   to issues going beyond the four corners of the declaration

2   itself would be acceptable.

3           THE COURT:  All right.  Let me ask you a few

4   other questions, Mr. Menendez.

5           In the papers, you say you are trying to depose

6   Mr. Medina in his personal capacity.  Does that mean

7   something other than just it's not a 30(b)(6) deposition?

8           MR. MENENDEZ:  No, Your Honor.  It simply means

9   it's not a 30(b)(6) deposition.

10           THE COURT:  Okay.  Because the topics you want

11   to explore, they all relate to his role with PDVSA; right?

12           MR. MENENDEZ:  They all relate to his role with

13   PDVSA, Your Honor.

14           THE COURT:  Okay.  And in terms of standing,

15   therefore, how is it that I could find PDVSA doesn't have

16   standing?  I mean you are asking him to testify about a

17   bunch of information that either belonged to or implicates

18   PDVSA?

19           MR. MENENDEZ:  Well, Your Honor, on the issue

20   of PDVSA having standing, we would note that there are two

21   different issues.

22           If there is a bar on jurisdictional discovery

23   generally, which we submit there should not be under

24   circumstances because we believe that we meet the standard.

25   If Your Honor were to find that there is a basis for limiting

1    jurisdictional discovery, it would very well potentially be

2    appropriate to stay that discovery under that ruling.

3              Now, with respect to the very narrow case law on

4    the ability to prevent a subpoena of a third party, we think

5    that they do not meet the burden, which is again it requires

6    a claim of some personal right or privilege.

7              The cases that have been cited in support of

8    that proposition simply do not support the wide relief that

9    they're seeking.  The *Jones v Crisis Intervention* case, the

10   Court denied standing to object to a subpoena.

11             The *Princeton* case which PDVSA cites involved

12   very specific privileges.  It involved a subpoena directed

13   at an attorney which involves attorney-client privilege,

14   and it involves requests for documents involving business

15   relationships.

16             Now, when they discuss it, they say it deals

17   with business transactions.  That is not what that case

18   says.  It says business relationships.

19             THE COURT:  All right.  All right.  I don't need

20   you to go through that case.  Thank you.

21             MR. MENENDEZ:  Yes.

22             THE COURT:  Can you help me understand why it

23   took so long for you to seek this discovery?  It was well

24   after the briefing schedule was entered when it seemed that

25   you didn't need discovery.

1          MR. MENENDEZ:  Your Honor, we had reached out

2     to PDVSA and to the Republic well prior to the issuance of

3     the subpoenas to request, as we noted in our filing, the

4     opportunity and our intention to serve subpoenas.

5          Once we were advised that PDVSA was going to

6     appear, and we previously advised them by letter and asked

7     them if they would be willing to accept subpoenas to the

8     various individuals, once we were informed that they intended

9     to appear in the case, we thought it was proper to allow that

10    appearance to take place before we circulated the documents.

11         And, again, I realize they raised objections

12    to this, but they have not submitted that they intend to

13    present anything other than the information from their

14    declarant.  So really the informational deficit is on the

15    plaintiff's side, not the defendant's side, and they --

16    other than any burden that they claim in showing up for a

17    deposition, we don't believe that they're prejudiced, and

18    we don't believe that there is anything that did not give

19    them appropriate time, warning, notice, et cetera.  If

20    anything, we've tried to accommodate them at every turn and

21    made ourselves available based on their schedule.

22         THE COURT:  They object that the subpoena is

23    duplicative of the PDVSA notice and also that the subpoena

24    is overbroad and unduly burdensome.  I'm not sure that you

25    even responded to that in your briefing.

1             Do you have a response?

2             MR. MENENDEZ:  Yes, Your Honor.  The specific

3    request that had been made in both the 30(b)(6) notice and

4    the subpoena to Mr. Medina, who again is the chairman of the

5    PDVSA board, are directly tied to topics and specific

6    allegations contained in the writ.

7             And I doubt that it's worth the Court's time

8    at this point, but essentially request by request, it's

9    tied not only to an allegation but to a specific exhibit

10   contained in either Mr. Carter's or Ms. Miranda's

11   declaration in this case.

12            So we do not agree with their position that it's

13   overly broad and the allegations specifically tie directly

14   to issues and findings that this Court has found relevant in

15   the past in the *Bancec* analysis.

16            THE COURT:  And how about duplicative?

17            MR. MENENDEZ:  Your Honor, the requests are the

18   same requests both to Mr. Medina in his individual capacity

19   and his corporate representative.

20            But we would submit that that argument has more

21   traction if one party is responding.  To the extent that

22   both sides are saying we don't get the information, it's

23   cold comfort to say you don't get to ask for it twice.

24            We'd be happy if it is provided by PDVSA.  We'd

25   be happy to get it provided from Mr. Medina.  We don't need

1     it from both of them.

2              But that argument I think to quote PDVSA is a

3     bit of a strawman where they're refusing to provide anything

4     on behalf of either side.

5              THE COURT:  All right.  And then could you

6     prevail on the motions that are being argued next week

7     without this discovery?  I mean I might find that you're

8     right on the law.  I guess I'm just trying to wonder, I'm

9     wondering and again I haven't read next week's brief yet,

10    but maybe this is all irrelevant in the sense of we don't

11    need to fight about it because maybe you are going to win

12    on other grounds anyway.  Is that possible?

13             MR. MENENDEZ:  Your Honor, we obviously believe

14    that we have very strong grounds for the issuance of a writ

15    this case.

16             In fairness, at the time of our submission, we

17    weren't aware of the declaration that was going to be put in.

18    The declaration seeks to take aim at certain representations

19    and either deny them on blanket terms, and we have not had an

20    opportunity to test that.  That can obviously have an impact

21    on anyone's case.  We feel very strongly about our position.

22    We believe that we should have the opportunity to test those

23    representations in greater detail but we feel strongly about

24    our case but would want, particularly if we don't have the

25    opportunity to depose Mr. Medina prior to the hearing, to

1    reserve on all of those arguments and have an opportunity to

2    go back to the Court, because again we believe that we have

3    made -- we have gone well beyond the threshold required by

4    courts for the taking of jurisdictional discovery, and that

5    all of the questions that we've asked are not only proper but

6    go directly to the issues that are relevant for this Court's

7    decision.

8                    THE COURT:  All right.  Thank you very much.

9                    Ms. Mosse, we'll turn it back to you to add

10   whatever you like.

11                   MS. MOSSE:  Thank you, Your Honor.  Just a few

12   things.

13                   When Mr. Menendez refers to the wealth of

14   specific non-conclusory allegations that he claims that

15   OIEG has made, those are with respect to the Maduro regime

16   actions outside of the United States which PDVSA submits

17   are irrelevant as a matter of law and therefore it doesn't

18   matter whether there are a thousand of those declarations.

19   They simply cannot serve as the basis for jurisdictional

20   discovery or for Court's jurisdictions over PDVSA and,

21   therefore, the cases that he is referring to and the fact

22   that there is no dispute as to the applicable standard,

23   that is all true, but those cases all make clear that the

24   discovery has to be essential to the Court's immunity

25   determination, and that was announced by the Third Circuit

1    in *Federal Insurance vs. Rubin*.  And this discovery is

2    simply not essential to the Court's immunity determination.

3                    Just -- I'm sorry.

4                    (Pause.)

5                    MR. MENENDEZ:  Your Honor, may I respond briefly?

6                    THE COURT:  I will give you a chance, but I

7    don't think Ms. Mosse is done yet.

8                    Go ahead, Ms. Mosse.

9                    MS. MOSSE:  Thank you, Your Honor.

10                   I just wanted to respond to the idea that OIEG

11   reached out to PDVSA far in advance with respect to its

12   discovery requests.

13                   To be clear on timing, the schedule set by this

14   Court was set on January 29th, 2021 in response to a joint

15   status report submitted three days earlier in which OIEG

16   requested expedited consideration of its attachment motion

17   based on representations that the factual record which had

18   been put, you know, together without discovery was largely

19   undisputed, would need to be supplemented, and that the sole

20   legal issue before the Court was the significance of the

21   United States recognition of interim President Guaidó, and

22   Court set its discovery schedule on January 29 -- I'm sorry,

23   the hearing schedule on January 29.  And then PDVSA moved to

24   intervene in March, and OIEG reached out to it in March, and

25   its discovery requests were served in March.

```
 1              And so it's the notion that somehow OIEG reached

 2    out to PDVSA far in advance is really a nonstarter because

 3    this schedule culminating in the April 30th hearing was set

 4    by the Court far in advance of any overture by OIEG to PDVSA.

 5              THE COURT:  All right.  And does PDVSA, excuse

 6    me, have an objection at this point to proceeding in the

 7    manner that I discussed with Mr. Menendez where, as you have

 8    already agreed, Mr. Medina is going to take the stand?

 9              I take it maybe his declaration will just be

10    treated as his direct, but in any event, you intend for

11    him to be there only to talk about the issues in the

12    declaration.  The cross will be limited to the issues in

13    the declaration, but the plaintiff would have all rights

14    to ask me, at and after the hearing next week, to revisit

15    this issue of whether they can get a deposition of him and

16    potentially a supplemental hearing.

17              Does PDVSA have an objection to that approach?

18              MS. MOSSE:  I think PDVSA would have no

19    objection to that approach but it would reserve all of its

20    rights that arose as a result of any rulings made by the

21    Court at that hearing, at or after the hearing.

22              THE COURT:  Right.  Okay.

23              Anything else, Ms. Mosse?

24              MS. MOSSE:  No, Your Honor.  Thank you.

25              THE COURT:  Okay.  Mr. Menendez?
```

1            MR. MENENDEZ:   Thank you, Your Honor.   I wanted

2    to briefly point out that PDVSA has repeatedly stated that

3    OIEG's jurisdictional theory is flawed in that it would

4    result in discovery that would be futile.

5            I'd simply like to point out that again other

6    then cases applying general standards, they have not cited a

7    single decision in this court supporting that theory or that

8    conclusion which actually goes directly contrary to *Bancec*

9    and related decisions in that, aside from, instead of

10   applying a non-mechanical rule, it is the most mechanical

11   rule that can be conceived of, which is elevating form over

12   substance and deciding that this Court's ability to consider

13   facts that go to the operation and control over a state

14   instrumentality is somehow limited without providing the

15   jurisprudence it says.

16            THE COURT:   Okay.   Thank you.

17            Ms. Mosse, anything else?

18            MS. MOSSE:   Your Honor, I would just say, I

19   mean we fully address in PDVSA's cross motion to dismiss the

20   attachment motion exactly why this discovery sought would be

21   futile and why allegations to the Maduro regime's actions

22   outside of the United States are legally irrelevant.

23            THE COURT:   Okay.   Well, thank you.   Thank you

24   both for the argument.   It will come as no surprise what I'm

25   going to do.

1          I'm not today ruling on the motion of PDVSA.

2    I will take the motion under advisement, keep it under

3    advisement at least until the hearing next Friday and

4    potentially beyond that.

5          This is with the understanding and I think at

6    this point the contingent agreement of the parties to this

7    call that Mr. Medina will be called to testify at the

8    hearing next week.  He will testify on those topics and only

9    on those topics that are the subject of his declaration and

10   he will be cross-examined only on those topics.

11         This is without prejudice to either side and

12   preserving and reserving to both sides all rights, including

13   on PDVSA's side, to continue to oppose a deposition of Mr.

14   Medina and continuing to oppose other discovery, but also

15   without prejudice to OIEG's pending notice to PDVSA and

16   subpoena and its ability and right to seek that and other

17   potential discovery after the hearing next week.

18         I think this is the right course of action

19   because, among other things, the dispute has come up fairly

20   late.  The discovery request was arguably late in the

21   circumstances here.  But in any event, the dispute has only

22   crystallized and gotten briefed and made it to this stage

23   today barely over a week before the hearing.  It's unclear

24   to me whether there is even time for the deposition to go

25   forward without significant prejudice.  But even assuming

1    there is, I think this is the better course of action in

2    part given the timing to revisit this issue at and after

3    next week's hearing.

4              Further support for that course of action I

5    think is it may turn out, it may turn out, depending on how

6    I see the legal disputes that are the subject next week,

7    that this whole discovery dispute issue could turn out to

8    be irrelevant.  And anyway, at minimum, I will be in a far

9    better position to assess whether this discovery is

10   warranted and whether, for example, it's essential to take

11   it once we are at and after next week's hearing.

12             So that is my decision.  Essentially, it is a

13   nondecision with respect to the motion.

14             Any questions about that, Ms. Mosse?

15             MS. MOSSE:  No, Your Honor.  Thank you.

16             THE COURT:  And Mr. Menendez?

17             MR. MENENDEZ:  No, Your Honor.  Thank you.

18             THE COURT:  Okay.  Thank you all.  I'll see you

19   next Friday.  Everybody, stay safe.  Bye-bye.

20             (Telephone conference ends at 3:48 p.m.)

21

22        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

23

24                       /s/ Brian P. Gaffigan
                         Official Court Reporter
25                        U.S. District Court