# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OI EUROPEAN GROUP B.V.,

        Plaintiff,

    v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

C.A. No. 19-mc-290 (LPS)

---

**PLAINTIFF'S POST-HEARING BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS***

Dated: May 25, 2021

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Sabin Willett
Jonathan Albano
Christopher L. Carter
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

SEQUOR LAW, P.A.

Edward H. Davis, Jr.
Fernando J. Menendez
Cristina Vicens Beard
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com
cvicens@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ................................................................................................................................ 1

   I.    May 11, 2021 Questions ..................................................................................................... 1

      A.   Do the OFAC Regulations Preclude the Creation of Contingent Interests in Blocked Property? ........................................................................................................................... 1

      B.   Does the Requested Relief (i.e., an Order Authorizing the Eventual Issuance and Service of a Writ of Attachment) Create a Contingent Interest in Blocked Property? ........... 2

      C.   Do the Sanctions Prohibit the Court from Issuing Findings of Fact, Which May Support the Issuance and Service of a Writ, Provided that the Court Does not Order the Issuance and Service of a Writ? ........................................................................................... 3

      D.   What, if any, Legal Doctrine (e.g., Bar on Advisory Opinions) Would Prohibit the Court From the Course of Action Described in (C) Above? ................................................. 5

      E.   If the Court Were to Enter an Order Denying the Motions for a Writ of Attachment Based on OFAC Regulations, What (if any) Challenges Would be Raised to the Validity or Constitutionality of the Regulations? ........................................................................................ 8

   II.   Acts of the Unrecognized Maduro Regime within Venezuela's Borders Are Properly Considered in the Court's Alter Ego Analysis ...................................................................... 10

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
  961 F.2d 32 (2d Cir. 1992)...................................................................................7

*Banque de France v. Equitable Trust Co.*,
  33 F.2d 202 (S.D.N.Y.1929)...............................................................................13

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*,
  293 F. Supp. 892 (S.D.N.Y. 1968), *aff'd as modified sub nom. Carl Zeiss
  Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*,
  403 U.S. 905 (1971).............................................................................................13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  2021 WL 129803 (D. Del. Jan. 14, 2021).........................................................4, 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018)......................................................................2

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981)...........................................................................................8, 9

*The Denny*, 127 F.2d 404 (3d Cir. 1942)...................................................................11, 12

*The Denny*, 40 F. Supp. 92 (D. N.J. 1941)......................................................................12

*Friends of Marolt Park v. United States Dep't of Transp.*,
  382 F.3d 1088 (10th Cir. 2004) ...........................................................................7

*Guaranty Trust Co. of New York v. United States*,
  304 U.S. 126 (1938)............................................................................................14

*In re Indianapolis Downs, LLC*,
  486 B.R. 286 (Bankr. D. Del. 2013) .....................................................................6

*Jiménez v. Palacios*,
  No. 2019-0490, 2019 WL 3526479 (Del. Ch. August 2, 2019) ...........................15

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
  188 F.2d 1000 (D.C. Cir. 1951)..........................................................................14

*LNC Invest., Inv. v. Democratic Repub. of Congo*,
  69 F. Supp. 2d 607 (D. Del. 1999)....................................................................2, 3

*The Maret*, 145 F.2d 431 (3d Cir. 1944).................................................................13, 14

*Miller v. French*,
   530 U.S. 327 (2000).................................................................................9

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
   733 F. Supp. 800 (D. Del. 1990)..........................................................2

*Nat'l Union Fire Ins. Co. of Pitt. v. Republic of China*,
   254 F.2d 177 (4th Cir. 1958) ..............................................................14

*PSC, Inc. v. Londergan*,
   1985 WL 189266 (Del. Super. Ct. 1985).............................................3

*Russian Reinsurance Co. v. Stoddard*,
   240 N.Y. 149, 147 N.E. 703 (1925).....................................................12

*Salimoff v. Standard Oil Co.*,
   262 N.Y. 220, 186 N.E. 679 (1933).............................................11, 14

*Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*,
   2007 WL 9702242 (S.D. Fla. Sep. 19, 2007) .....................................7

*Sokoloff v. The Nat'l City Bank of N.Y.*,
   239 N.Y. 158, 145 N.E. 917 (1924).....................................................13

*Sokolow v. Palestine Liberation Org.*,
   583 F. Supp. 2d 451 (S.D.N.Y. 2008)..................................................15

*In re Stanley's Asphalt Paving, Inc.*,
   353 B.R. 63 (Del. Bankr. 2006)............................................................3

*Travelers Inc. Co. v. Obusek*,
   72 F.3d 1148 (3d Cir. 1995).................................................................7

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011) ....................................................6

*U.S. v. Security Trust & Sav. Bank of San Diego*,
   340 U.S. 47 (1950)...............................................................................3

*United States v. Belmont*,
   301 U.S. 324 (1937).............................................................................14

*United States v. Pink*,
   315 U.S. 203 (1942).............................................................................15

*Upright v. Mercury Business Machines Co.*,
   13 App. Div. 2d 36, 213 N.Y.S.2d 417 (1961) ...................................12

*Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*,
   894 F.3d 509 (3d Cir. 2018) ................................................................................................6, 8

*Wilmington Trust, National Assoc. v. Estate of McClendon*,
   287 F.Supp.3d 353 (S.D.N.Y. 2018) ........................................................................................7

*Wulfsohn v. Russian Socialist Federated Soviet Republic*,
   234 N.Y. 372, 138 N.E. 24 (1923) ..........................................................................................12

**Statutes**

10 Del. C. § 5081 .........................................................................................................................3

**Other Authorities**

31 C.F.R. § 591.202 ......................................................................................................................1

31 C.F.R. § 591.407 ......................................................................................................................1

Plaintiff and judgment creditor OI European Group B.V. ("OIEG") submits this post-hearing brief in accordance with this Court's May 11, 2021 order, D.I. 94, to address (1) questions posed in the Court's docket order, and (2) the ability of this Court to take into account the Maduro regime's *de facto* control of Venezuela in its alter ego analysis.

## ARGUMENT

### I.   May 11, 2021 Questions

#### A.   *Do the OFAC Regulations Preclude the Creation of Contingent Interests in Blocked Property?*

A grant of judicial relief that falls short of conferring a property interest in blocked property is not precluded by the OFAC regulations.  Thus an order that OIEG may proceed to establish a property interest upon the grant of an OFAC license is not precluded, and, as we show below, would be the appropriate predicate for OFAC review of a license application.

OFAC regulations currently prohibit unlicensed "enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process *purporting to transfer or otherwise alter or affect property or interests in [blocked] property*."  31 C.F.R. § 591.407 (emphasis added).  A *transfer* involving any property or interest in blocked property "is null and void," 31 C.F.R. § 591.202(a), and "[u]nless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201."  31 C.F.R. § 591.202(e).  As OFAC has explained:

> This includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property.  While terminology may vary in different jurisdictions and proceedings, a specific license from OFAC would be required for measures such as: - Taking Possession (Actual or Constructive) – Seizing – Levying Upon – Attaching – Encumbering – Pledging – Conveying – Selling (Final or Contingent) – Freezing – Assuming or Maintaining Custody – Sequestering.

1

OFAC Publication of Venezuela Sanctions Related FAQs, No. 808 (Dec. 9, 2019), available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs/808.  These sanctions do not limit parties from proceeding with litigation until the point where a court determines that a new property right may be conferred upon the grant of such a license.  *See id.* ("A specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program . . . .").  This is consistent with the limits of executive power to enact sanctions in the first place.  *See*, *e.g.*, *Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809-812 (D. Del. 1990) ("[B]locking regulations bar[ ] only judicial acts that would effect a transfer of foreign property or property interests. . . .  [T]he President's statutory authority is limited to regulating those judicial processes that would effect a transfer of foreign property or property interests.").  It is also consistent with OFAC's procedures – in reviewing license applications, OFAC relies upon, and is guided by, judgments and court orders entered by United States courts especially when the issues at hand involve complex state and federal laws.  *See* Declaration of John E. Smith ("<u>Smith</u> <u>Declaration</u>") ¶ 34.

### B. *Does the Requested Relief (i.e., an Order Authorizing the Eventual Issuance and Service of a Writ of Attachment) Create a Contingent Interest in Blocked Property?*

The requested relief is not precluded by the OFAC regulations.  Delaware law determines the point in the execution process when property changes hands (and thus the point where OFAC sanctions are triggered).  *See LNC Invest., Inv. v. Democratic Repub. of Congo*, 69 F. Supp. 2d 607, 610-13 (D. Del. 1999) (describing Delaware *fi. fa.* execution procedures as applicable in federal court).

When the debtor's property is in the possession or control of another, "the appropriate form for attachment is a writ of attachment *fieri facias*."  *Id.* at 611-12 (citing *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 262 (Del. 1983)); *see also Crystallex Int'l Corp. v. Bolivarian Republic of*

*Venezuela*, 333 F. Supp. 3d 380, 387-88 (D. Del. 2018).  After the clerk signs the writ with the seal of the Court, the writ is issued and delivered to the U.S. Marshals to levy on the debtor's property in the hands of the garnishee.  *See LNC Invest., Inc.*, 69 F. Supp. 2d at 610-13.  The writ commands a sheriff (or, in the federal system, the U.S. Marshals' Service) to serve the writ to attach the property in question.  The lien itself is only created and binding after service of the writ. *In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Del. Bankr. 2006) ("The lien created [by section 5081] is effective only upon actual levy by the sheriff and remains valid for three years") (collecting cases); 10 Del. C. § 5081 ("An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed.  An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant with the bailiwick . . . .").

OIEG requests that this Court authorize the issuance of a writ, with service not to be made until and unless OFAC grants a license or lifts the current sanctions, or alternatively declare OIEG's right to the issuance of a writ upon the grant of a license.  OIEG would obtain no property interest until an actual writ were *served*.  *See*, *e.g.*, *PSC, Inc. v. Londergan*, 1985 WL 189266 (Del. Super. Ct. 1985) (first-in-time but undelivered garnishment created no lien on property); *see* 10 Del. C. § 5081.  The Court itself would not be creating a property right; that could be obtained only through service of the process that becomes (i) appropriate under Delaware law after a favorable judgment, *see U.S. v. Security Trust & Sav. Bank of San Diego*, 340 U.S. 47, 50 (1950) (describing *lis pendens* as notice that a right to perfect a lien exists), and (ii) authorized by OFAC.

### C.   Do the Sanctions Prohibit the Court from Issuing Findings of Fact, Which May Support the Issuance and Service of a Writ, Provided that the Court Does not Order the Issuance and Service of a Writ?

No.  *See* OFAC Publication of Venezuela Sanctions Related FAQs, No. 808 (Dec. 9, 2019), available  at  https://home.treasury.gov/policy-issues/financial-sanctions/faqs/808  ("A  specific license from OFAC is not ordinarily required . . . for a U.S. court, or its personnel, to hear [U.S.

3

legal proceedings against a blocked person or entity].").  In fact, OFAC prefers to review license applications in front of it with the issues narrowed to the extent possible, including through court findings and orders.  *See* Smith Declaration ¶ 25 ("in practice, OFAC does not typically issue a specific license or make a licensing determination on a request for a specific license until all of the pertinent facts are sufficiently narrowed for decision-making").  The current OFAC regulations do not prohibit *courts* from determining legal rights, *see* Smith Declaration ¶ 34; rather, they constrain litigants from taking certain next steps to enforce those legal rights, and render null and void orders that purport to grant property interests absent a license.  Here, the OFAC sanctions prohibit (without a license) any transfer or encumbrance of PDVSA property, including through a lien or an attachment.  They do not prohibit this Court from determining rights whose enforcement is contingent on OFAC itself.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *16 (D. Del. Jan. 14, 2021) ("The government has not taken the position that the Court 'is blocked from moving forward' . . . .'").

The request here is more modest than those recently addressed in the *Crystallex* matter.  While Crystallex obtained and served a writ before the relevant sanctions were in place, sanctions were subsequently issued that preclude the actual foreclosure sale.  There, this Court held that it was not barred from proceeding with preliminary steps such as establishing auction procedures.  Here, OIEG only asks that the Court proceed with the preliminary step of determining its legal entitlement to alter ego relief, a determination that would not mature into a property interest in blocked property *until OFAC itself* authorizes the same.  In *Crystallex*, after the United States stated its position with respect to current OFAC sanctions, this Court determined that:

> All parties agree that, under current law and policy, a sale of PDVH shares cannot
> be completed without a specific license.  But all the preparatory steps that can be
> taken without such a license can, and should, be taken.  The alternative would be
> to make Crystallex wait for an indefinite additional period, which cannot be

> justified given the decade and resources that Crystallex has already spent trying to collect on its judgment and given its uninterrupted string of litigation victories. At this point, the Court agrees with Crystallex that '[t]here is no just reason not to advance this litigation to the furthest point that OFAC's sanctions regime permits.'

*Id.*

As the former director of OFAC outlines, OFAC is "far more likely" to consider OIEG's application seeking a license to levy on the PDVH shares *after* OIEG obtains a court order that determines its entitlement to such relief. *See* Smith Declaration ¶ 25. Until this Court enters an order declaring that PDVSA remains the alter ego of Venezuela *and* that the shares of PDVH are attachable under the FSIA, OFAC's review will be delayed given the complex legal issues involved. *See* Smith Declaration ¶ 25 ("Often, when any party to litigation requests a specific license from OFAC to enforce a judicial order or other decision that will have the effect of altering or affecting blocked property, OFAC will require evidence of such final decision or order before authorizing the transaction(s) at issue."). OIEG's claim against Venezuela is even older than Crystallex's. It should not be required to await OFAC licensing when there are steps that not only can, but would have to be taken before OFAC would address a concrete request for a license. *See* Smith Declaration ¶ 28. OIEG's OFAC application was filed in March 2019, and the only OIEG-related fact that is not yet known to OFAC is whether or not OIEG is legally entitled to enforce its judgment against the PDVH shares. *See* Smith Declaration ¶ 29 ("[W]here key facts and outcomes are still being disputed before a court . . . OFAC may decide to simply hold an application, consider at great length the foreign policy and other issues at play, and wait for an applicant to provide the final details of the transactions being requested.").

### D. What, if any, Legal Doctrine (e.g., Bar on Advisory Opinions) Would Prohibit the Court From the Course of Action Described in (C) Above?

No legal doctrine that would prevent the requested relief. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention

until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*, 894 F.3d 509, 522 (3d Cir. 2018) (*citing Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). In the context of a declaratory judgment, ripeness is guided by three main considerations: "the adversity of the parties' interests, the conclusiveness of the judgment, and the practical utility of that judgment." *Id*.

*First*, this case is an ancillary enforcement proceeding in connection with a valid final judgment. The adversity of the parties' interests was established in the district court for the District of Columbia. Today, the dispute is whether certain property in Delaware may properly be considered property of the judgment debtor and thus available (subject to FSIA and OFAC limitations) for attachment by OIEG in connection with the enforcement of its judgment. That the ultimate service of a writ and levy remain subject to government approval does not make the legal question any less ripe. The bankruptcy court in this district regularly confirms plans of reorganization or all-asset sales in final orders that remain subject to government approval or licensing. *See, e.g., In re Indianapolis Downs, LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013) (approving plan and sale even though "[i]f the necessary [government] approvals are not obtained, [the] transaction will fail and the Plan will likewise fail"); *In re Tribune Co*., 464 B.R. 126, 185 (Bankr. D. Del. 2011) (approving plan that requires FCC approval prior to effectiveness).

*Second*, "[a] claim is fit for adjudication if a 'declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts.'" *Wayne Land*, 894 F.3d at 523 (citation omitted). This case is not premised on hypotheticals – the relevant judgment, alter ego facts, and property subject to attachment exist today, regardless of how long OFAC will continue to temporarily block enforcement. OFAC licensing would not

6

*create* the property targeted by the attachment, but merely remove the temporary barrier from that enforcement.  *Compare Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*, 2007 WL 9702242, at *2 (S.D. Fla. Sep. 19, 2007) ("[T]he practical likelihood that the contingencies will occur . . . should be decisive in determining whether an actual controversy exists."); *with Friends of Marolt Park v. United States Dep't of Transp.*, 382 F.3d 1088, 1094 (10th Cir. 2004) (ruling that a challenge to a proposed highway was not ripe, stating that "there is nothing concrete about a highway that may never be built").  Here, two distinct questions are ripe for adjudication: (1) during the pertinent time, has PDVSA been the alter ego of Venezuela such that its shares may be deemed property of Venezuela for attachment purposes, and (2) are the shares of PDVH immune from attachment under the FSIA?  Neither question raises OFAC concerns, and both questions (if answered in favor of OIEG) provide OIEG with the *right* to satisfy its judgment from such shares, subject to OFAC licensing (or the lifting of the current OFAC sanctions).

The fact that "liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action."  *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)).  "[A] touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequences remains a mere possibility, or even probability of some contingency that may or may not come to pass."  *Wilmington Trust, National Assoc. v. Estate of McClendon*, 287 F.Supp.3d 353, 365 (S.D.N.Y. 2018) (breach of contract claim was ripe even though separate litigation was pending regarding the validity of the underlying contract itself).  Here, the merits have already been established – OIEG has an enforceable judgment in hand and is now seeking a judicial determination as to the legal status of the assets at issue.  *See Travelers Inc. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir.

1995) ("The declaratory judgment must also be conclusive.  That is, the legal status of the parties must be changed or clarified by the declaration.").

*Third*, "a ruling on [plaintiff's] request for declaratory relief would have particular utility." *Wayne Land*, 894 F.3d at 524.  "[U]tility exists when the judgment would 'materially affect the parties and serve to clarify legal relationships so that plaintiffs can make responsible decisions about the future." *Id*. at 524.  Here, OIEG will benefit by having a court order in hand that will aid OFAC's review of its license application.  OFAC is "far more likely" to make a determination on a pending license application where the legal issues are narrowed.  *See* Smith Declaration ¶ 25; ¶ 34 ("[O]nce a court is able to [issue an order or decision that determines the rights of a judgment creditor], I believe OFAC is better positioned and armed with the facts needed to engage in the policy conversations and other adjudicative steps necessary to reach a final determination . . . .").

## E. If the Court Were to Enter an Order Denying the Motions for a Writ of Attachment Based on OFAC Regulations, What (if any) Challenges Would be Raised to the Validity or Constitutionality of the Regulations?

It is difficult to answer this question without reference to a specific order.  OIEG's position is that (1) an order denying relief based on existing sanctions would be error, for the reasons discussed above, and (2) OFAC sanctions cannot, and do not, prevent this Court from exercising its ancillary jurisdiction to decide issues as part of a judgment creditor's effort to proceed toward a remedy on its U.S. judgment.

If the Court read sanctions to purport to prevent the exercise of that jurisdiction, OIEG would argue that such a reading violated the separation of powers and was unenforceable.  The Executive Branch has authority, pursuant to the International Emergency Economic Powers Act (IEEPA), to implement sanctions and regulations that nullify or void remedies granted by United States courts, *see Dames & Moore v. Regan*, 453 U.S. 654, 675 (1981), but its authority "cannot be read to authorize the suspension of the claims" or to divest the federal court of jurisdiction. *Id*.

8

"While the boundaries between the three branches are not 'hermetically' sealed, the Constitution prohibits one branch from encroaching on the central prerogatives of another." *Miller v. French*, 530 U.S. 327, 341 (2000) (citations omitted). "Article III 'gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy.'" *Id.* at 342 (citation omitted). Here, while OFAC has implemented sanctions that prevent the creation or *transfer* of property interests in blocked property, it has not (and constitutionally could not) suspend this Court's ability to determine the parties' rights – including whether or not shares of PDVH are to be considered property of PDVSA or Venezuela. That a litigant may temporarily be barred from proceeding to enforcement does not deprive this Court of the ability to decide that OIEG is entitled to a writ of attachment that will issue and be served once permitted by OFAC. Smith Declaration ¶ 34 ("OFAC's regulations, guidance, and precedents do not prohibit a court from exercising its constitutionally assigned role to issue an order or decision that determines the rights of a judgment creditor without effectuating any steps toward enforcement of that order.").

While an Executive Branch attempt to divest this Court of the ability to give a remedy in this case (as opposed to temporarily blocking a prevailing litigant from taking certain steps to execute upon that remedy), would contravene the separation of powers, it is important to note that OFAC has not argued that the Court is barred from deciding matters related to the parties' rights to remedies  *See* Sep. 17, 2020 Transcript, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-mc-151 (D. Del.) [D.I. 226] at 105:1-11; *see also* Smith Declaration ¶ 32 ("even if OFAC might view the actions of a court in proceedings involving blocked property to theoretically constitute a prohibited dealing in such property, the existing regulations and guidance

can be read to authorize (or, at least not prohibit) the judicial activities, including, for example, as activities ordinarily incident and necessary to generally or specially licensed transactions").

## II.    Acts of the Unrecognized Maduro Regime within Venezuela's Borders Are Properly Considered in the Court's Alter Ego Analysis

OIEG's motion concerns two entities and an asset.  Venezuela, a sovereign state, and PDVSA, an oil company centered in Venezuela, are the entities.   The PDVH shares are the asset. The threshold alter ego question concerns only the entities.  Is a vast, Caracas-centered oil company indistinguishable from the Venezuelan state itself?  Only after the alter ego test is considered and decided does analysis turn to the whether the asset in question is subject to attachment under the FSIA.[1]

In applying the alter ego test, the Court must consider whether one entity controls the other. That requires examining the entities where they exist: in the territory of Venezuela.  Thus, the alter ego question requires an analysis of the domestic facts.  Venezuela is domestic by definition, while PDVSA undoubtedly has its headquarters and the bulk of its assets, employees, and presence in Venezuela.

"[C]ourts in the United States ordinarily give effect to acts of … a regime not recognized as the government of a state, if those acts apply to territory under control of that regime and relate to domestic matters only."  *Restatement (Third) Foreign Relations*, § 205(3) (1987).  *See also id.* § 202, cmt. c (nonrecognition "does not prevent states from recognizing the validity of that entity's actions affecting private rights").  As the Reporters' Notes to § 205 explain:

---

[1] Assertions that ownership of PDVSA and/or PDVSA's shares of PDVH have somehow changed since the United States' recognition of Mr. Guaidó are simply misguided.  As was true in August 2018, PDVSA is 100% owned by Venezuela, and 100% of the shares of PDVH are listed as being held in the name of PDVSA.  Similarly, it is *Venezuela* (not any official of Venezuela) that has ownership rights and interests in PDVSA, just as it is *PDVSA* (not any board of directors) that has ownership rights and interest in the PDVH shares.

> *[An] unrecognized regime is not an absolute nullity*. The courts have differentiated between **[1]** *acts of unrecognized governments "dealing solely with private, local and domestic matters,"* to which they give effect, and **[2]** *acts "with respect to matters extending beyond the borders" of the unrecognized entity to which they refuse effect*.

*Id.* § 205, Reporters' Note 3 (emphasis added) (citation omitted).

PDVSA ignores the principled—and in this case, critical—distinction recognized by the *Restatement* and case law between, on the one hand, acts of unrecognized governments dealing with domestic affairs and, on the other, acts of unrecognized governments with respect to matters outside of their borders.  In *Salimoff v. Standard Oil Co.*, 262 N.Y. 220, 186 N.E. 679 (1933), for example, the New York Court of Appeals held that a nationalization decree of the unrecognized Soviet Union was effective to pass title to oil located in Russian territory.  Because the nationalization decree effected domestic property located within Russia, the court held that legal title passed to the entity that later sold the oil to an overseas buyer.  *Id.* at 228.  In words that resonate here, the court explained:

> We all know that [Soviet Russia] is a government.  The State Department knows it, the courts, the nations, and the man on the street. . . . To refuse to recognize that Soviet Russia is a government regulating the internal affairs of the country is to give fictions an air of reality which they do not deserve.

*Id.* at 227.[2]

The Third Circuit Court of Appeals relied on *Salimoff* in *The Denny*, 127 F.2d 404 (3d Cir. 1942).  The plaintiff in *The Denny* filed suit based on powers of attorney acknowledged and authenticated by officials of the Lithuanian Soviet Government.  *Id.* at 408.  At the time, the United

---

[2] When *Salimoff* was decided, the United States recognized the Provisional Government of Russia and not the Soviet regime.  *Id.* at 224.  The State Department acknowledged that the Soviet regime was in control of the former Russian Empire and that the refusal of the United States to recognize the Soviet regime was "not based on the ground that the regime does not exercise control and authority" in Russia.  *Id.*  Much the same could be said here, where the sanctions imposed by the United States on Venezuela and PDVSA similarly acknowledge that the Maduro Regime "is exercising control and power in the territory[.]"  *See id.*

States did not recognize the Lithuanian Soviet Government, but rather, the Republic of Lithuania. *Id.* at 407 n.6; *see also The Denny*, 40 F. Supp. 92, 96 (D. N.J. 1941).  The Republic of Lithuania's consul argued that giving legal effect to the powers of attorney would impermissibly give effect to the acts of an unrecognized government.  *The Denny,* 127 F.2d at 407 & n.6.  Citing *Salimoff*, the Third Circuit held otherwise:

> We may not ignore the fact that the Soviet Socialist government did actually exercise governmental authority in Lithuania at the time the decrees in question were made and the powers of attorney were given, but must treat its acts within its own territory as valid and binding upon its nationals domiciled therein.

*Id.* at 410; *see also id.* at n.11.

The distinction between acts of an unrecognized government within its own territory and acts undertaken abroad is well recognized.  In *Wulfsohn v. Russian Socialist Federated Soviet Republic*, 234 N.Y. 372, 138 N.E. 24 (1923), the court held that the unrecognized Soviet Union was immune from suit for confiscating private property located within its territorial jurisdiction. *See id.* at 375 ("Whether or not a government exists clothed with the power to enforce its authority within its own territory, obeyed by the people over whom it rules, capable of performing the duties and fulfilling the obligations of an independent power, able to enforce its claims by military force, is a fact not a theory.").  In *Russian Reinsurance Co. v. Stoddard*, 240 N.Y. 149, 147 N.E. 703 (1925), an insurance company, incorporated under the Tsarist government, sued to recover funds deposited in a United States bank.  The bank defended on the grounds that Soviet decrees had dissolved the insurance company.  The court gave effect to the domestic Russian decree, stating that "both justice and common sense require us to give effect to the conditions existing in Russia, though the conditions are created by a force which we are not ready to acknowledge as entitled to recognition as a state or government."  *Id.* at 169, 147 N.E. at 709; *see also Upright v. Mercury Business Machines Co.*, 13 App. Div. 2d 36, 213 N.Y.S.2d 417 (1961) ("The acts of such a *de*

12

*facto* government may affect private rights and obligations arising either as a result of activity in, or with persons or corporations within, the territory controlled by such *de facto* government.").[3]

PDVSA ignores the distinction between the domestic and foreign acts of an unrecognized government, but its authorities do not.  A prime example is *The Maret*, 145 F.2d 431 (3d Cir. 1944).  A vessel was requisitioned by the United States War Shipping Administration, resulting in litigation over compensation from a federal fund.  *Id.* at 436-37.  At port in the Virgin Islands, the ship's captain received notice that the vessel (owned by Estonian citizens) had been nationalized by the unrecognized Soviet Socialist Republic of Estonia, which later filed a claim for compensation from the U.S. government.  *Id.* at 433, 434, 437.  The Third Circuit framed the issue as "adjudicating interests in *property within the jurisdiction of the United States*, interests now claimed by an agency of the unrecognized government but which belonged formerly to other persons, persons now subject to the decrees of the unrecognized government."  *Id.* at 440 (emphasis added).  In reaching its holding, the court returned to the extra-territorial action taken by the unrecognized government:

> When the fact of nonrecognition of a foreign sovereign and nonrecognition of its decrees by our Executive is demonstrated as in the case at bar, the courts of this country may not examine the effect of decrees of the unrecognized foreign

---

[3] *See also Sokoloff v. The Nat'l City Bank of N.Y.*, 239 N.Y. 158, 166, 145 N.E. 917, 919 (1924) ("a body or group which has vindicated by the course of events its pretensions to sovereign power, but which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done"); *Banque de France v. Equitable Trust Co.*, 33 F.2d 202, 206 (S.D.N.Y.1929) ("Justice requires that effect should be given by our courts, even though we do not recognize the Russian Government, to those acts in Russia upon which the rights of our citizens depend, provided that in doing so our judicial department does not encroach upon or interfere with the political branch of our government.");  *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 293 F. Supp. 892, 900 (S.D.N.Y. 1968) ("Normally the acts of an unrecognized regime which pertain to its purely local, private, and domestic affairs will be given effect[.]") (citations omitted), *aff'd as modified sub nom. Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 699 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971).

> sovereign and *determine rights in property, subject to the jurisdiction of the examining court*, upon the basis of those decrees.

*Id.* at 442 (emphasis added).  The concurring opinion similarly concluded that "in the absence of recognition of the foreign government, it seems not improper, in a litigated matter, to deny effect to an act of that government which purports to change the ownership of a chattel many hundreds of miles away from its borders."  *Id.* at 445 (Goodrich, J., concurring).

Any doubt about the Third Circuit's adherence to the distinction between domestic and foreign acts of an unrecognized government was resolved by the court's citations to both *The Denny* (a case it had decided just two years earlier) and *Salimoff*.  "The question presented by the facts of the case at bar," the court stated, "are different in essential respects from those which were before the courts in [those] cases[.]"  *Id.* at 439 (*citing to The Denny*, 127 F. 2d 404; *Salimoff*, 262 N.Y. 220, 186 N.E. 679).  What made those cases "different in essential respects" from *The Maret*?  As here, those cases concerned "acts of [an] unrecognized government dealing solely with private, local and domestic matters, to which [courts] give effect," and not, as in *The Maret*, "acts with respect to matters extending beyond the borders of the unrecognized entity, to which they refuse effect."  *Restatement (Third) of Foreign Relations*, § 205, Reporters' Note 3.  *See also Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1001-1002 (D.C. Cir. 1951) (refusing to give effect to confiscation order of ships in New York harbor); *Nat'l Union Fire Ins. Co. of Pitt. v. Republic of China*, 254 F.2d 177, 186-88 (4th Cir. 1958) (refusing to give effect to transfer of ships commandeered at sea).[4]

---

[4] Other cases cited by PDVSA are unremarkable.  *See United States v. Belmont*, 301 U.S. 324, 330 (1937) (recognition of Soviet government retroactively validated acts of that government from the commencement of its existence); *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 137-38 (1938) ("rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it … and [a] suit on its behalf may be maintained in our courts only by the that government which has been recognized by the political department of

Cases like *The Maret* involve disputes between competing governments over sovereign property located abroad.  This case does not.  This case does not present a dispute as to whether the Guaidó or the Maduro government may assert, on Venezuela's behalf "title" to the PDVH shares.  It is rather a dispute about whether PDVSA – which conclusively owns those shares – is functionally indistinguishable from the Venezuelan state.  Once that alter ego status is established, the case turns to the very different question under the FSIA whether a state asset is subject to attachment.  Overwhelming evidence at the April hearing proved that PDVSA remains dominated by Venezuela outside of the United States, and to the limited extent of its U.S. presence, by the Guaidó government.  Well-recognized principles of international law establish that the Court is permitted to consider the domestic acts of the unrecognized regime in determining whether PDVSA remains an alter ego of the Venezuelan state.  Because those acts show that PDVSA is an alter ego of Venezuela, it follows under the FSIA that certain commercial assets here (specifically, the shares of PDVH) are subject to attachment by a judgment creditor of Venezuela.  Thus, the Court should authorize the issuance of a writ, with service not to be made until and unless OFAC grants a license or lifts the current sanctions.

---

our own government"); *United States v. Pink*, 315 U.S. 203, 231-32 (1942) (state law does not override international agreement made with a recognized foreign government); *Jiménez v. Palacios*, No. 2019-0490, 2019 WL 3526479 at *10, *13 (Del. Ch. August 2, 2019) (only a recognized government has standing to appear in U.S. courts, which assume the validity of official foreign acts performed by recognized sovereigns within territorial limits); *Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451, 457 (S.D.N.Y. 2008) (Palestine does not meet the definition of a "State" under United States and international law or FSIA); *see generally Restatement (Third) of Foreign Relations*, § 202 ("Recognition or Acceptance of States") and *id.* § 203, ("Recognition or Acceptance of Governments").

## CONCLUSION

For the reasons set forth above and the record established at the April 30, 2021, hearing,

the Court should grant OIEG's motion and deny the intervenor's motion to dismiss.

Dated: May 25, 2021

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Sabin Willett (*pro hac vice*)
Jonathan M. Albano (*pro hac vice*)
Christopher L. Carter (*pro hac vice*)
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

SEQUOR LAW, P.A.

Edward H. Davis, Jr. (*pro hac vice*)
Fernando J. Menendez (*pro hac vice*)
Cristina Vicens Beard (*pro hac vice*)
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282 Facsimile:
305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com
cvicens@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*