**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 19-mc-290 (LPS) |

**PLAINTIFF'S POST-HEARING REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS***

Dated: June 1, 2021

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Sabin Willett
Jonathan Albano
Christopher L. Carter
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

SEQUOR LAW, P.A.

Edward H. Davis, Jr.
Fernando J. Menendez
Cristina Vicens Beard
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com
cvicens@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ......................................................................................................... ii
ARGUMENT .................................................................................................................................. 1
    I.    OFAC Regulations Do Not Preclude the Relief Requested by OIEG. ............................... 1
        A.    Scope of the OFAC Regulations ..................................................................................... 1
        B.    The Requested Relief Presents Multiple Issues for this Court to Determine That are Ripe For Adjudication Today .................................................................................... 5
    II.    Applicable Law/Analysis Relevant to the Requested Relief ............................................. 7
CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Casa Express Corp., as Trustee of Casa Express Trust v. Bolivarian Republic of Venezuela*,
  492 F. Supp. 3d 222 (S.D.N.Y. 2020) ........................................................................................4

*Comet Enter. Ltd. v. Air-A-Plane Corp.*,
  128 F.3d 855 (4th Cir. 1997) .....................................................................................................2

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex I*"),
  333 F. Supp. 3d 380 (D. Del. 2018) ................................................................................2, 7, 10

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
  2019 WL 6785504 (D. Del. Dec. 12, 2019) ..............................................................................2

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) .......................................................................................................... passim

*Dean Witter Reynolds, Inc. v. Fernandez*,
  741 F.2d 355 (11th Cir. 1984) ...................................................................................................2

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) .................................................................................................10

*EM Ltd. v. Banco Central De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015) .......................................................................................................10

*Enwonwu v. Gonzales*,
  438 F.3d 22 (1st Cir. 2006) .......................................................................................................7

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba* ("*Bancec*"),
  462 U.S. 611 (1983) ......................................................................................................8, 9, 10

*Huminski v. Connecticut*,
  2015 WL 1825966 (D. Conn. Apr. 22, 2015) ...........................................................................7

*Koch Minerals Sàrl, et. al. v. Bolivarian Republic of Venezuela*,
  2020 WL 7646764 (D.D.C. Dec. 23, 2020) ..............................................................................3

*Lyon v. Singer*,
  339 U.S. 841 (1950) ..................................................................................................................4

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
  733 F. Supp. 800 (D. Del. 1990) ...............................................................................................6

*National Airmotive Corp. v. Government and State of Iran*,
    499 F. Supp. 401 (D.D.C. 1980) ................................................................................2

*Republic of Panama v. Lexdale, Inc.*,
    804 F. Supp. 1521 (S.D. Fla. 1992) ...........................................................................6

*Rubin v. Islamic Republic of Iran*,
    637 F.3d 783 (7th Cir. 2011) .....................................................................................9

*Sherwin-Williams Co. v. Cty. of Del.*,
    968 F.3d 264 (3d Cir. 2020) .......................................................................................6

*Tagle v. Regan*,
    643 F.2d 1058 (5th Cir. 1981) ...................................................................................4

*United States v. Amirnazmi*,
    645 F.3d 564 (3d Cir. 2011) .......................................................................................1

*Wayne Land and Mineral Group, LLC v. Delaware River Basis Commission*,
    894 F.3d 509 (3d Cir. 2018) .......................................................................................5

*Wilmington Trust Co. v. Barron*,
    470 A.2d 257 (Del. 1983) ..........................................................................................9

*Yung v. Garland*,
    2021 WL 1027486 (D. Del. Mar. 16, 2021) ..............................................................6

*Zittman v. McGrath*,
    341 U.S. 446 (1951) ...................................................................................................4

## Statutes

8 Del. C. § 324(a) ................................................................................................................9

10 Del. C. § 5031 ................................................................................................................9

10 Del. C. § 5081 ................................................................................................................2

50 U.S.C. § 1702(a)(1)(B) ..................................................................................................1

## Other Authorities

Fed. R. Civ. P. 69 ................................................................................................................8

Plaintiff and judgment creditor OI European Group B.V. ("OIEG") submits this post-hearing reply brief in accordance with this Court's May 11, 2021 order, D.I. 94, to respond to (1) PDVSA's post-hearing brief, D.I. 95, and (2) Venezuela's post-hearing brief. D.I. 98.

**ARGUMENT**

**I.   OFAC Regulations Do Not Preclude the Relief Requested by OIEG.**

PDVSA's responses to this Court's questions presented on May 11, 2021, fall into two categories: (A) the scope of the OFAC regulations, and (B) the effect of OIEG's requested relief. Each is addressed below.

*A. Scope of the OFAC Regulations*

The OFAC regulations program currently in place was promulgated under the International Emergency Economic Powers Act ("IEEPA"), which authorizes the President, upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any acquisition . . . use, transfer, . . . or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(B).[1]   "The terms of the IEEPA [ ] do not authorize the President to suspend claims in American courts." *Dames & Moore v. Regan*, 453 U.S. 654, 675 (1981).[2]

---

[1] In 2015, President Obama declared a national emergency related to the ongoing crisis in Venezuela. *See* Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015).

[2] PDVSA's broad interpretation of *Dames & Moore* and its assertion that the Supreme Court there "*stated* that the President has the authority *under the IEEPA* to *prohibit* and nullify attachments and suspend remedies available with respect to blocked property" is misleading and inappropriate. D.I. 95 at 4.  The limited ruling in *Dames & Moore* was that (1) OFAC could *nullify* attachments that had earlier been *conditionally* approved by OFAC, and (2) the IEEPA alone does not permit OFAC to suspend the pursuit of claims in U.S. courts. *See id.*; *see also id.* at 660-61 (resolution of the issue on review was limited to the "narrowest possible ground capable of deciding the case . . . .  We attempt to lay down no general 'guidelines' covering other situations not involved here, and attempt to confine the opinion only to the very questions necessary to decision of the case."); *United States v. Amirnazmi*, 645 F.3d 564, 575 (3d Cir. 2011) (citing *Dames & Moore* for the proposition that the "Supreme Court has upheld Congress's delegation to the President of civil authority to *nullify certain* attachments and transfers of assets under IEEPA") (emphasis added).

1

The "claims" here are that PDVSA is the alter ego of Venezuela and that the property at issue is not immune from attachment under the FSIA. Determination of these claims does not implicate OFAC sanctions.[3] OIEG has carefully crafted its requested relief to expressly stop short of doing so – (1) no property interest would be granted, *see* 10 Del. C. § 5081 ("[a]n execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed"), and (2) issuance and service of the requested writ *would be conditioned on OFAC's approval*.

Contrary to PDVSA's contentions, *Dames & Moore* is not determinative here on the scope of OFAC regulations or on whether they limit this Court's ability to determine legal rights before a property interest in blocked property is created.[4] The issues in *Dames & Moore* "involve[d]

---

[3] PDVSA's assertion that the alter ego finding itself would alter property rights and trigger OFAC sanctions is incorrect. *See* D.I. 95 at 8 ("if the Court were to conclude that PDVSA is presently the alter ego of Venezuela, that determination would have the effect of altering or affecting rights, remedies, powers, privileges, or interests in the PDVH shares – namely those of PDVSA vis-à-vis the Republic (which would be deemed to have a direct rather than an indirect interest in those shares), of OIEG, Huntington Ingalls *and any other creditors of the Republic pursuing alter ego claims against PDVSA . . .*") (emphasis added). An alter ego finding does not *change ownership of* the property; it simply recognizes the true state of affairs. Nor would it inure to the benefit of *any other creditors* – if that were true, the *Crystallex* decision would have negated the need for an alter ego finding here. *Compare Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex I*"), 333 F. Supp. 3d 380, 399 (D. Del. 2018) ("Crystallex has proven, by a preponderance of the evidence, that Venezuela extensively controls PDVSA, and has, thus, proven that PDVSA is Venezuela's alter ego.") *with Crystallex Int'l Corp. v. PDV Holding Inc.*, 2019 WL 6785504, at *8 (D. Del. Dec. 12, 2019) ("Since collateral estoppel does not apply, any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date."). It follows that an alter ego finding here would do no more than provide *OIEG* with the right to attach the property upon OFAC issuing an appropriate license or eliminating the current sanctions.

[4] Furthermore, a determination that OFAC could prevent *the Court* from doing so would implicate fundamental separation of powers issues whereby the Executive Branch cannot bar an Article III court from issuing orders within its jurisdiction on ripe issues. *See, e.g., Comet Enter. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 859 (4th Cir. 1997) ("[A] license requirement, promulgated by an executive agency, that limits federal court jurisdiction would raise serious constitutional concerns. A court is always well advised to construe regulations in a manner that avoids such serious constitutional questions.") (internal citations omitted); *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 n.16 (11th Cir. 1984) ("Simply because Congress empowers the Executive to forbid certain transfers or property and he acts thereon does not imply that the jurisdiction of the federal courts is dependent upon the issuance of a license by the Treasury Department."); *National Airmotive Corp. v. Government and State of Iran*, 499 F. Supp. 401, 405 (D.D.C. 1980) ("[I]t has rarely, if ever, been suggested that an Executive agency may, by regulation, bar

2

various Executive Orders and regulations by which the President *nullified* attachments and liens on Iranian assets in the United States, *directed that these assets be transferred to Iran*, and *suspended claims against Iran that may be presented to an International Claims Tribunal*." *Id.* at 660 (emphasis added). The only similarity to the present situation is that various Executive Orders and regulations are involved – in this case, however, there is no lien to be unwound or nullified and there is no alternative forum being established for OIEG to pursue its claims and enforcement efforts.

As courts have recognized, OFAC sanctions are not implicated until steps are taken to "reach into PDVSA's pockets." *See Koch Minerals Sàrl, et. al. v. Bolivarian Republic of Venezuela*, 2020 WL 7646764, at *16 (D.D.C. Dec. 23, 2020) ("Codifying the ICSID award does not reach into PDVSA's pockets" and is therefore not barred by OFAC regulations.). Similarly, because the *courts* do not themselves create property interests (rather, they enter orders determining rights with respect to property), OFAC has never opined that the *court* is prevented from taking steps to determine legal rights and obligations of creditors and sanctioned entities. *See*, *e.g.*, Sep. 17, 2020 Transcript, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-mc-151 (D. Del.) [D.I. 226] at 105 (DOJ lawyer stating that "the Court can do whatever it wants").

Even if one assumes that the Executive Branch and Congress *could* prohibit a court from hearing disputes properly before it, "if those branches of government determine that preventing litigation against [Venezuela], or requiring creditors to participate in a restructuring or centralized claims process, is appropriate, they have the tools to do so. But so far, the political branches have

---

the courts from operating with respect to particular subject matters. The constitutional difficulties that would be raised by an attempt to impose such a bar are too numerous to catalogue or explore here.").

3

not determined that United States interests require such a step." *Casa Express Corp., as Trustee of Casa Express Trust v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 228-29 (S.D.N.Y. 2020). As in *Casa Express*, so too here, "United States policy towards [Venezuela], as expressed in the regulations adopted by the Executive Branch, does not prevent litigation of existing claims." *Id*. at 228; *see also* Smith Declaration ¶ 32 ("even if OFAC might view the actions of a court in proceedings involving blocked property to theoretically constitute a prohibited dealing in such property, the existing regulations and guidance can be read to authorize (or, at least not prohibit) the judicial activities, including, for example, as activities ordinarily incident and necessary to generally or specially licensed transactions").

Courts are able to enter orders and determine legal rights even where OFAC sanctions are present, and OFAC sanctions do not bite so long as such relief does not transfer title to a blocked property *or* "[a]s long as enforcement of these claims is conditioned upon obtaining a license."[5] *Tagle v. Regan*, 643 F.2d 1058, 1067 (5th Cir. 1981); *see also Zittman v. McGrath*, 341 U.S. 446, 464 (1951) (reversing lower courts' invalidation of attachment proceeding involving blocked assets because "[t]his result . . . in no way impairs federal control over alien property, since the petitioners admit that they cannot secure payment from the attached frozen funds without a license"); *Lyon v. Singer*, 339 U.S. 841, 842 (1950) ("Since the New York court conditioned enforcement of the claims upon licensing by [OFAC's predecessor agency], federal control over alien property remains undiminished.").[6]

---

[5] Conditional or contingent *rights to an attachment* do not create a precluded future or contingent *property* interest – the right to an attachment does not create a property interest any more than the issuance of a judgment. Under Delaware law, an attachment (like a judgment) is the culmination of the Court's determination of the parties' respective rights. A property right under Delaware law does not exist until further steps are taken. *See* D.I. 96 at 2-3.

[6] PDVSA's assertion that "OIEG is asking for the *retroactive* recognition of priority upon the issuance of an OFAC license" is incorrect. D.I. 95 at 6. OIEG does not ask for retroactive recognition of anything –

### B. The Requested Relief Presents Multiple Issues for this Court to Determine That are Ripe For Adjudication Today

As detailed in OIEG's post-hearing brief, D.I. 96, OIEG's requested relief falls short of creating a property interest in blocked property, but has significant repercussions for OIEG, PDVSA and Venezuela and is ripe for adjudication. PDVSA implicitly concedes the point when it says:

> Findings of fact tending to establish the alter ego status of PDVSA – whether the Court reaches the ultimate legal conclusion now or later – would have the same effect directly or indirectly by giving the plaintiffs an advantage in establishing their supposed right to reach the PDVH shares.

D.I. 95 at 8. If granting the requested relief would give OIEG "an advantage in establishing [its] supposed right to reach the PDVH shares" today, then the Court must be resolving a concrete controversy that is ripe for adjudication. *See Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*, 894 F.3d 509, 522 (3d Cir. 2018) (ripeness is guided by three main considerations: "the adversity of the parties' interests, the conclusiveness of the judgment, and the practical utility of that judgment."). The findings would resolve the adversity of the parties' interests regarding the alter ego (and FSIA) issues at the pertinent time[7] and would "give[] [OIEG] an advantage in establishing [its] supposed right to reach the PDVH shares."

PDVSA relies heavily on *Dames & Moore* to assert that OFAC can prohibit this Court from taking certain actions. We addressed the OFAC-specific issues above, but turn now to what

---

OIEG requests automatic issuance and service of the writ upon OFAC licensing or approval. Only after issuance and service would OIEG's priority be established. *See* D.I. 96 at 2-3.

[7] If an OFAC license is not granted until a significant time has passed following an order granting the conditional issuance and service of the writ, PDVSA and Venezuela are well within their rights to move for reconsideration of this Court's decision on the motion in the event that circumstances have materially changed and would warrant such a review.

5

*Dames & Moore* expressly permitted: conditional attachments. *See* 453 U.S. at 656 ("Petitioner's interest in its attachments was conditional . . . .").

The licenses involved in *Dames & Moore* were expressly conditional under the Iran sanctions in place at the time – "all licenses 'may be amended, modified, or revoked at any time.' § 535.805. As such, the attachments obtained by petitioner were specifically made subordinate to further actions which the President might take under the IEEPA. Petitioner was on notice of the contingent nature of its interest in the frozen assets." *Id*. at 673. In other words, when OFAC originally licensed the issuance and service of the pre-judgment attachments at issue in *Dames & Moore*, it did so with the express caveat that they were contingent on OFAC keeping the license in place and could be modified or nullified at any time. *See Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 810 (D. Del. 1990). It follows that if the President (through implementation of OFAC regulations) had the power to make a district court's attachments conditional, then a district court must be able to enter orders subject to those conditions.

PDVSA's "instructive" ripeness cases also do not prevent the relief being sought here. In *Sherwin-Williams Co. v. Cty. of Del.*, the claims at issue were not ripe because "they require speculation about whether the [defendant] will sue and what claims it would raise." 968 F.3d 264, 271-72 (3d Cir. 2020) (plaintiff "will suffer no harm if the [defendant] decides not to sue"); *see also Yung v. Garland*, 2021 WL 1027486, at *5 (D. Del. Mar. 16, 2021) ("What Plaintiff appears to seek is declaratory and injunctive relief granting him immunity from criminal prosecution."); *Republic of Panama v. Lexdale, Inc.*, 804 F. Supp. 1521, 1524 (S.D. Fla. 1992) ("Any injury that [plaintiff] might suffer as a result of [defendant's] pursuit of its assets to satisfy the judgment against [a potential alter ego third party] is purely speculative at this time" because OFAC had not yet issued such a license *and* because plaintiff had not yet even threatened or commenced such an

alter ego suit.).  Here, in contrast, OIEG is seeking to satisfy its judgment against specific property of Venezuela's alter ego – there is nothing speculative about its extant claims.  Additionally, OFAC has not purported to strip this Court of jurisdiction to hear the disputes at issue, nor is there any other venue that could properly hear OIEG's pending motion.[8]

This Court has jurisdiction over the pending motion.  *See Crystallex I*, 333 F. Supp. 3d at 394.  A determination that PDVSA is the alter ego of Venezuela and that PDVSA's assets are therefore subject to attachment under the FSIA would not be an advisory opinion.  The subsequent issuance and service of a writ (following OFAC licensing or other approval) would, *at that time*, create a property interest on OIEG's behalf (and PDVSA or Venezuela could potentially move to reconsider the earlier decision if the circumstances then warrant it).  But OFAC's determination would not alter the facts – there is property in Delaware that OIEG seeks to attach in order to satisfy its judgment against Venezuela.  Even if OFAC were to reject OIEG's license application, this Court's findings specific to OIEG would remain in place while OIEG re-applied for a license or waited until the sanctions (which are temporary) are lifted.

## II. Applicable Law/Analysis Relevant to the Requested Relief

Venezuela argues that the attachment motion fails because "the Maduro regime exercises no ownership control whatsoever over the property OIEG wants to attach (the PDVH shares) or over the entity that owns and controls that property (PDVSA, as controlled by the ad hoc Board)."  This argument misses the mark because alter ego analysis is not performed on an asset-by asset

---

[8] *See Enwonwu v. Gonzales*, 438 F.3d 22, 27 (1st Cir. 2006) (district court's determination treated as an advisory opinion because the court lacked jurisdiction over the claims at issue); *see also Huminski v. Connecticut*, 2015 WL 1825966, at *2 (D. Conn. Apr. 22, 2015) (rejecting motion for reconsideration and request for "findings of fact" where court previously determined that it had no jurisdiction over the claims at issue in the first place).

basis but, rather, focuses on the conduct of the dominating entity over another; attachment analysis, in contrast, necessarily focuses on the asset at issue.[9]

Venezuela's conflation of numerous legal issues necessitates a recital of the applicable law for each piece of the requested relief:[10] OIEG seeks to enforce its federal judgment (implicating Fed. R. Civ. P. 69) by attaching the judgment debtor's property in the hands of a third party (implicating Delaware garnishment law); the judgment debtor is a foreign sovereign (implicating FSIA issues) and the property is titled to its foreign instrumentality that is the alter ego of the foreign sovereign (triggering the *Bancec*[11] analysis); both the foreign sovereign and its instrumentality are subject to OFAC sanctions.

*First*, Rule 69 governs post judgment relief by importing state execution process. It provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. *The procedure on execution* – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1) (emphasis added). State law governs the *procedure* applicable here (and the *types* of property that are subject to the proceeding).

---

[9] If actual control over the *asset* subject to attachment were required, no creditor would ever be able to attach any of PDVSA's assets *outside* of the United States because, under PDVSA's and Venezuela's position, they are not under the "control" of the ad hoc board. But attachment analysis looks to *title* of the asset, not control of the asset.

[10] Venezuela's confusion begins here: "OIEG has expressly framed this case as a garnishment proceeding seeking an attachment of specific property – the PDVH shares – *on the theory that those shares are actually the Republic's property in the hands of a nominal third party*." D.I. 98 at 2 (emphasis added). Not so – OIEG's theory is that because the shares are *titled* to Venezuela's alter ego (PDVSA, the nominal party), OIEG can use this garnishment proceeding to attach those assets that are in the hands of a third party (PDVH) as assets of Venezuela.

[11] *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba* ("Bancec"), 462 U.S. 611 (1983).

8

*Second*, Delaware garnishment procedural law governs the attachment of a debtor's shares in a Delaware corporation (under 10 Del. C. § 5031 and 8 Del. C. § 324(a)). The substantive law governing a garnishment proceeding depends on the nature of the property at issue. Where federal property rights are implicated (as in the case of sovereign debtors), federal law governs whether or not the property in the hands of the garnishee is property of the debtor. *See Wilmington Trust Co. v. Barron*, 470 A.2d 257, 264 (Del. 1983) ("If the employee has no claim against his employer for the sums withheld pursuant to federal [(FICA)] and state [(income)] law, clearly the lenders have no greater claim to such funds under an attachment fi. fa.").[12] For garnishment purposes, the fact that the ad hoc board purports to have *control* of the underlying asset is immaterial. The shares of PDVH are titled to PDVSA but are in the hands of PDVH – thus they are subject to garnishment procedural law.

*Third*, because the titled owner of the property (PDVSA) and the judgment debtor (Venezuela) are foreign sovereigns/instrumentalities, FSIA determines whether the entities or property are immune. *See Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 793 (7th Cir. 2011) ("The [FSIA] contains two primary forms of immunity[:] . . . Section 1604 provides jurisdictional immunity from suit . . . [while] Section 1609 . . . codifies the related common-law principle that a foreign state's property in the United States is immune from attachment and execution . . . .").

*Fourth*, because OIEG's motion depends on an alter ego relationship between a foreign sovereign-debtor and its instrumentality, the *Bancec* test governs. *See id.*, 462 U.S. at 623;

---

[12] Venezuela confuses additional issues when it states that "in a garnishment proceeding that relies on an alter ego theory, the relevant relationship for alter ego purposes is that between the judgment debtor and the entity in whose 'hands' the property resides." D.I. 98 at 3. In a garnishment proceeding, the relationship between the judgment debtor (Venezuela) and the entity in whose "hands" the property resides (PDVH) is immaterial. The entire premise of a garnishment proceeding is to attach the debtor's assets that are currently in the hands of a *third party*, such as debtor funds in a bank account. If the property were "in the hands" of the judgment debtor or its alter ego, a garnishment proceeding would not be the proper procedure.

*Crystallex I*, 333 F. Supp. 3d at 396; *EM Ltd. v. Banco Central De La Republica Argentina*, 800 F.3d 78, 89 (2d Cir. 2015) ("The controlling case for when an instrumentality of a foreign sovereign state becomes the 'alter ego' of that state" is *Bancec*.); *see also Doe v. Holy See*, 557 F.3d 1066, 1080 (9th Cir. 2009).  Here, it is *Venezuela's* control of *PDVSA* that is at issue, not the ad hoc board's control of the PDVH shares.  Furthermore, boards of directors are not appointed to direct assets.  They sit as fiduciaries of entities.  Venezuela's argument conflates a board of directors with the entity it directs.  Neither the ad hoc board nor the Maduro board is PDVSA.  Neither board owns PDVSA's assets.  The Court is not asked to say that either board is an alter ego of the sovereign.  While the influence of the sovereign over board members who control the instrumentality in its principal place of business is relevant to the *Bancec* test, no case has ever suggested that a judgment creditor may satisfy its judgment from the *board* of the judgment debtor's alter ego.

*Finally*, the Court looks to OFAC sanctions and regulations to determine if and when a writ of attachment can be issued and served on the garnishee holding blocked property.

In sum, to determine whether PDVSA is the alter ego of Venezuela, the Court must apply *Bancec* analysis and take into account Venezuela's extensive control of PDVSA at home and abroad.  Such an analysis requires this Court to take into account actions of both the *de jure* and the *de facto* government with respect to PDVSA's Caracas-based global enterprise, as OIEG has previously addressed.  Only after this Court determines that PDVSA (the entity) continues to be an alter ego of Venezuela (the country) does this Court then turn to the specific asset at issue and whether it can be attached.

10

## CONCLUSION

For the reasons set forth above and the record established at the April 30, 2021, hearing, the Court should grant OIEG's motion and deny the intervenor's motion to dismiss.

Dated: June 1, 2021                                             Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Sabin Willett (*pro hac vice*)
Jonathan M. Albano (*pro hac vice*)
Christopher L. Carter (*pro hac vice*)
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
sabin.willett@morganlewis.com
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

**SEQUOR LAW, P.A.**
Edward H. Davis, Jr. (*pro hac vice*)
Fernando J. Menendez (*pro hac vice*) Cristina Vicens Beard (*pro hac vice*) 1111 Brickell Avenue, Suite 1250 Miami, FL 33131
Telephone: 305-372-8282 Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com
cvicens@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*