# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| OI EUROPEAN GROUP B.V., | : |
| *Plaintiff*, | : C.A. No. 1:19-mc-00290-LPS |
| v. | : |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| *Defendant*. | : |

**RESPONSE OF INTERVENOR PETRÓLEOS DE VENEZUELA, S.A. TO PROPOSED FINDINGS OF FACT OF PLAINTIFF OI EUROPEAN GROUP B.V.**

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

November 17, 2022

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorneys for Intervenor*
*Petróleos de Venezuela, S.A.*

Intervenor PDVSA[1] submits this Response to Plaintiff's Proposed Findings of Fact ("OIEG Proposal"). PDVSA hereby incorporates by reference the reservation of rights in PDVSA's Proposed Findings of Fact ("PDVSA Proposal"), including PDVSA's reservations concerning the burden of proof and its immunities under the FSIA. D.I. 22. PDVSA objects to certain of OIEG's proposed findings of fact on the grounds that they are not statements of fact and are, instead, legal conclusions. Any failure to address any allegations in the OIEG Proposal shall not be construed as an admission of any such allegations, but only that the allegation is irrelevant to any issue before this Court. Notwithstanding the foregoing reservations and objections, PDVSA responds to the OIEG Proposal as follows:

1. OIEG continues to rely on actions taken by the Maduro regime and its agents with respect to PDVSA before and after the United States recognized the Interim Government in January 2019. *See* OIEG Proposed Findings ¶¶ 11-14, 16, 19, 20, 28-29, 31, 34-43, 45, 48-62, 69. However, none of those proposed findings of fact are relevant to assessing the Republic's relationship with PDVSA during the pertinent time period.

2. The pre-recognition actions of the illegitimate Maduro regime are irrelevant because they do not prove the existence of an alter ego relationship at the pertinent time, *i.e.*, the time between the filing of the Attachment Motion and the issuance and service of any writ. *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021). The relationship between the Republic and PDVSA has materially changed since the United States recognized the Interim Government—an event that occurred well before OIEG filed its Attachment Motion in November 2019. Since January 2019, the Interim Government has been the only government with the power to exercise the Republic's

---

[1] Unless otherwise defined herein, capitalized terms are defined in the PDVSA Proposal.

shareholder rights over PDVSA including the appointment of the *ad hoc* Board, which in turn is the only entity with the power to exercise PDVSA's shareholder rights over PDVH. *Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *21-22, *33 (Del. Ch. Aug. 2, 2019), *aff'd* 237 A.3d 68 (Del. 2020); PDVSA Br. 9-10, D.I. 65.

3.  The post-recognition actions of the illegitimate Maduro regime are irrelevant because it no longer has any interest in or exercises any control over the "relevant portion of PDVSA, which is the property in the U.S." Mem. Order 14, D.I. 26; *see also* PDVSA Br. 10-11, D.I. 65. OIEG has not established any facts linking the Maduro regime to the PDVSA *ad hoc* Board or PDVSA's U.S. Subsidiaries. Moreover, as a matter of law, the actions of the illegitimate Maduro regime in Venezuela or elsewhere cannot be recognized as actions of the Republic for purposes of deciding ownership of property located in the U.S., including the PDVH shares, because that would contravene the United States' recognition of the Interim Government and derecognition of the Maduro regime.[2] *See United States v. Pink*, 315 U.S. 203, 229 (1942); *United States v. Belmont*, 301 U.S. 324, 328-30 (1937); *see also Nat'l Union Fire Ins. Co. v. Republic of China*, 254 F.2d 177, 186 (4th Cir. 1958); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944); PDVSA Op. Br. 12-20, D.I. 65. In short, as demonstrated in PDVSA's prior submissions, the only relevant relationship for purposes of ascertaining ownership of the PDVH shares at this time is the one that exists between the Interim Government and the *ad hoc* Board, the only entity that holds title to the PDVH shares. *See* PDVSA Br. at 10-20, D.I. 65.

4.  OIEG alleges that the Interim Government has "intensified" the Republic's control over PDVSA based on the legal framework enacted by the Interim Government, including the

---

[2] Any contrary views by foreign nations or international bodies have no bearing on the legal effects of the United States' recognition of the Interim Government as a matter of U.S. law. *See* OIEG Proposal ¶¶ 17-18, 21.

Transition Statute, Presidential Decree No. 3 and the resolution passed by the Venezuelan National Assembly in April 2019 (the "April 2019 Resolution" and collectively, the "Regulations"),. OIEG Proposal ¶ 70. To support that allegation, OIEG asserts the following:

   a. Pursuant to the Transition Statute, "Guaidó appointed five individuals as the *ad hoc* Managing Board of PDVSA 'for the purpose of carrying out all necessary actions to appoint a Board of Directors' for PDV Holding." *Id*. ¶ 33.

   b. A corporate reorganizations of PDVSA's U.S. subsidiaries was "done at the direction of Mr. Guaidó." *Id.* ¶ 34.

   c. "Soon after enactment of the Transition Statute, it became clear that the *ad hoc* board would prove unable to diminish the state's extensive control over PDVSA." *Id.* ¶ 37.

   d. "[T]he business of PDV Holding, Inc. and its subsidiaries shall follow commercial efficiency principles, subject only to the control and accountability processes exercised by the National Assembly, and other applicable control mechanisms." *Id.* ¶ 47.

   e. "[T]he Interim Government (rather than PDVSA itself) 'removed' the boards of PDVSA's U.S. subsidiaries and reappointed new boards." *Id.* ¶ 47.

The Regulations are designed to ensure that the Interim Government is able to exercise its rights as PDVSA's legitimate shareholder and to prevent the illegitimate Maduro regime from asserting any purported shareholder rights or otherwise interfering with PDVSA's *ad hoc* Board or its U.S. Subsidiaries. Brewer-Carías Decl. ¶¶ 28-43. The Regulations also reflect the exercise of ordinary and legitimate regulatory power. In fact, the U.S. Government has enacted similar regulations through the OFAC sanctions program that prohibit U.S. persons from dealing with the Maduro regime. Nothing in the Regulations shows that the Interim Government exercises day-to-day control over the operations of PDVSA *ad hoc* Board or the U.S. Subsidiaries.

   5. Contrary to OIEG's assertions, the Regulations show that the Interim Government has taken steps to restore PDVSA's independence from the Republic:

   a. The Regulations provide for PDVSA's *ad hoc* Board and its U.S. Subsidiaries to operate autonomously and free from political interference from the Interim Government. Brewer-Carías Decl. ¶¶ 34-35, 40-42.

      b.      The Regulations require PDVSA's *ad hoc* Board and its U.S. Subsidiaries to follow to make their own independent business decisions based on commercial efficiency criteria. Brewer-Carías Decl. ¶ 35, 40-42.

      c.      While this Court previously found that the prior Chávez and Maduro regimes used Venezuela's Ministry of Hydrocarbons to control PDVSA's operations, *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez. ("Crystallex I"),* 333 F. Supp. 3d 380, 408 (D. Del. 2018), the Regulations have stripped the Ministry of Hydrocarbons of its rights and powers. Brewer-Carías Decl. ¶¶ 37-39.

6.     OIEG alleges that the Interim Government appointed the members of PDVSA's *ad hoc* Board. OIEG Proposal ¶ 33. But that does not demonstrate any failure to observe corporate formalities or any control over PDVSA's day to day operations. The Interim Government is PDVSA's sole legitimate shareholder and therefore, like any corporate shareholder, it has the right to appoint the corporation's directors. Furthermore, it is undisputed that PDVSA's *ad hoc* Board is composed of international petroleum industry professionals and there are no government officials on the *ad hoc* Board. Medina Decl. ¶¶ 5, 11(e); Pacheco Decl. ¶ 12(e). The PDVSA *ad hoc* Board is thus significantly more independent from the Republic than the boards appointed by the Chávez and Maduro regimes. *See Crystallex I,* 333 F. Supp. 3d at 402.

7.     OIEG alleges t the Interim Government has removed and appointed the directors of PDVSA's U.S. Subsidiaries. OIEG Proposal ¶ 47. However, the unrebutted evidence establishes that, since February 2019, PDVSA's *ad hoc* Board has exercised PDVSA's shareholder rights to appoint PDVH's directors, PDVH's directors have, in turn, exercised PDVH's shareholder rights to appoint CITGO Holding's directors, and CITGO Holding's directors have, in turn, exercised CITGO Holding's shareholder rights to appoint CITGO Petroleum's directors. Medina Decl. ¶ 4(d); *Jiménez,* 2019 Del. Ch. LEXIS 288, at *13.

8.     OIEG alleges that the Interim Government has used monies directly from PDVSA's subsidiaries "to fund itself." OIEG Proposal ¶ 44. OIEG relies on unsourced and unsubstantiated hearsay accusations in media reports. Furthermore, Mr. Medina's unrebutted testimony is that the

Interim Government, PDVSA and PDVSA's U.S. Subsidiaries have their own separate sources of funding, and that the Interim Government does not draw funds directly from PDVSA or its U.S. Subsidiaries. Medina Decl. ¶ 19.

9. OIEG relies on the Interim Government's expressed desire for a global restructuring of Venezuela's and PDVSA's debts to suggest that the Interim Government does not distinguish between the assets and liabilities of PDVSA and those of the Republic. OIEG Proposal ¶ 45. Those statements say nothing about how such a restructuring will be accomplished but only that eligible claims shall have a right to "renegotiation on equal terms" and that "no different treatment shall be accorded" to eligible claims based on the origin of the claim, the domicile of the claimholder or the identity of the public sector obligor. D.I. 50-1 at ECF 80. Furthermore, Mr. Medina's unrebutted testimony is that the desire for an orderly global restructuring stems from the reality that creditors of the Republic, such as OIEG, are seeking to blur the lines between PDVSA and the Republic by seeking to attach PDVSA's assets to satisfy the Republic's obligations. Medina Decl. ¶ 15. In any event, no such restructuring has occurred.

10. OIEG asserts that the *ad hoc* Board has referred to PDVSA's assets as Venezuelan assets on Twitter and its website. OIEG Proposal ¶ 46. However, such soundbites do not demonstrate any failure to observe corporate formalities or otherwise demonstrate that the Interim Government exercises day-to-day control over PDVSA or its U.S. Subsidiaries. Those soundbites reflect communications to the Venezuelan people who view PDVSA and its direct and indirect U.S. Subsidiaries as important to the Venezuelan oil industry and that any loss of these companies would have an indirect negative impact on the Republic as the ultimate parent. Medina Decl. ¶ 14; Medina Test., Hrg. Tr. 109:6-18.

11. OIEG asserts that the National Assembly declared invalid certain bonds that were issued by PDVSA under the leadership appointed by the Maduro regime. OIEG Proposal ¶ 46. The National Assembly determined that the bonds constituted national public interest contracts because they were secured by a pledge of 50.1% of the shares of CITGO Holding, and the National Assembly issued a resolution in September 2016 refusing to approve the pledge of the CITGO Holding shares. *Huntington Ingalls*, 20-mc-257, D.I. 4-1 at ECF 143, 147-49. Mr. Medina testified that the PDVSA *ad hoc* Board independently decided that PDVSA should make payments on the bonds in May 2019. Mr. Medina further testified that, in view of the September 2016 resolution and its role in approving national interest contracts, the National Assembly originally opposed making the payments, and that PDVSA convinced the National Assembly that the payments had to be made in order for PDVSA to be able to negotiate with the bondholders. Medina Test., Hr. Tr. 96:8-99:24. While the National Assembly issued a resolution in October 2019 declaring the bonds invalid, that resolution does not instruct PDVSA to stop paying the bonds. *Huntington Ingalls*, 20-mc-257, D.I. 4-1 at ECF 147-49. PDVSA's *ad hoc* Board ultimately brought a lawsuit to invalidate the bonds after negotiations with the bondholders were unsuccessful. *Id.* at ECF 129-85. However, as Mr. Medina testified, PDVSA's *ad hoc* Board made its own independent determination with respect to the bond payments and was able to move forward with its decision to make bond payments even where the Interim Government disagreed with that decision. Medina Test., Hr. Tr. 96:8-99:24.

12. While OIEG asserts that the OFAC sanctions define "Government of Venezuela" to include PDVSA, those sanctions do not demonstrate that the U.S. Government views PDVSA and the Republic as one and the same. OIEG Proposal ¶¶ 63, 65. To the contrary, OFAC recognized the distinction between the Republic and PDVSA by blocking the assets of PDVSA

and the Republic under separate executive orders issued at different times. *See* Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019); Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018). Furthermore, the U.S. Government has expressly stated that it does not believe that an alter ego relationship exists in light of the changes made by the Interim Government. Meehan Decl., Ex. 8, at 8.

|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|---|---|
|  | */s/ Samuel T. Hirzel, II* |
| OF COUNSEL: | Samuel T. Hirzel, II (#4415) |
|  | 300 Delaware Avenue, Suite 200 |
| Joseph D. Pizzurro | Wilmington, DE 19801 |
| Kevin A. Meehan | (302) 472-7300 |
| Juan O. Perla | SHirzel@hegh.law |
| CURTIS, MALLET-PREVOST, |  |
| COLT & MOSLE LLP | *Attorneys for Intervenor Petróleos de Venezuela, S.A.* |
| 101 Park Avenue |  |
| New York, NY 10178 |  |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |

Dated: November 17, 2022

44867469v6