# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 19-mc-290 (LPS) |

## OI EUROPEAN GROUP B.V.'S OPPOSITION TO MOTION FOR STAY PENDING APPEAL

Dated: April 18, 2023

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Jonathan M. Albano
Christopher L. Carter
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

SEQUOR LAW, P.A.

Edward H. Davis, Jr.
Fernando J. Menendez
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i
INTRODUCTION ..................................................................................................................... 1
NATURE AND STATE OF THE PROCEEDINGS ................................................................. 1
ARGUMENT ............................................................................................................................. 3
    I.    This Court Has Not Been Divested of Jurisdiction to Enforce the Order ........................... 3
    II.    The Third Circuit's Four-Factor Test Balances Against Granting a Stay ......................... 5
        A.    PDVSA Has Not Demonstrated a Likelihood of Success on the Merits ........................ 5
        B.    PDVSA Has Failed to Show that it Will Suffer Irreparable Harm ................................ 7
        C.    Issuance of a Stay Will Substantially Injure OIEG ......................................................... 9
        D.    Public Interest Weighs Against Granting a Stay .......................................................... 12
    III.    PDVSA Must Post a Full Bond in Order to Obtain a Stay ............................................... 12
CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   2013 WL 5937342 (M.D. Pa. Nov. 4, 2013) ...........................................................................12

*Azima v. Rak Inv. Auth.*,
   2018 WL 7982473 (D.D.C. Nov. 5, 2018) ................................................................................4

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   810 F. Supp. 2d 90 (D.D.C. 2011) .......................................................................................5, 8

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
   705 F. Supp. 188 (S.D.N.Y. 1989) ...........................................................................................8

*Cottilion v. United Ref. Co.*,
   2014 WL 7344005 (W.D. Pa. Dec. 23, 2014) ........................................................................12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018) ..................................................................................1, 10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   2018 WL 4026738 (D. Del. Aug. 23, 2018) ...................................................................1, 2, 3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) ............................................................................................ passim

*District Title v. Warren*,
   2015 WL 12964656 (D.D.C. Jan. 9, 2015) ..............................................................................6

*Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*,
   834 F. Supp. 167 (E.D. Va. 1993) ............................................................................................4

*Enron Nigeria Power Holding, Ltd. v. Federal Rep. of Nigeria*,
   70 F. Supp. 3d 457 (D.D.C. 2014) ...........................................................................................9

*Fed. Election Comm'n v. O'Donnell*,
   2017 WL 2200911 (D. Del. May 19, 2017) ...........................................................................13

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
   12 F.3d 1270 (3d Cir. 1993) .....................................................................................................9

*Gates v. Texaco, Inc.*,
   2008 WL 1952162 (Del. Super. Ct. May 2, 2008) .................................................................14

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ............................................................................................................5

*In re Color Spot Holdings*,
    2018 WL 3996938 (D. Del. Aug. 21, 2018) ........................................................................7

*In re Commonwealth Renewable Energy, Inc.*,
    2016 WL 1238199 (Bankr. W.D. Pa. Feb. 10, 2016) ..........................................................6

*In re Culp*,
    550 B.R. 683 (D. Del. 2015) ................................................................................................7

*In re Diet Drugs*
    582 F.3d 524 (3d Cir. 2009) ..............................................................................................13

*In re Karaha Bodas Co., L.L.C.*,
    2002 WL 1401693 (D. Del. June 27, 2002) ......................................................................14

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) ......................................................................................5, 7, 8

*In re Swift Energy Co.*,
    2016 WL 3566962 (D. Del. June 29, 2016) ........................................................................5

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ..........................................................................................13, 14

*Montalvo v. Larchmont Farms, Inc.*,
    2011 WL 6303247 (D.N.J. Dec. 15, 2011) ........................................................................13

*Owens Corning Fiberglas Corp. v. Carter*,
    630 A.2d 647 (Del. 1993) ..................................................................................................14

*Princz v. Fed. Republic of German*,
    998 F.2d 1 (D.C. Cir. 1993) .................................................................................................4

*Rep. of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ................................................................................................5

*Ryan v. Asbestos Workers Union Local 42 Pension Fund*,
    2002 WL 87480 (D. Del. Jan. 22, 2002) ............................................................................14

*Tucker Anthony Realty Corp. v. Schelsinger*,
    888 F.2d 969 (2d Cir. 1989) ................................................................................................8

*United States v. Moats*,
    961 F.2d 1198 (5th Cir. 1992) .............................................................................................9

*United States v. Panhandle E. Corp.*,
    696 F. Supp. 983 (D. Del. 1988) ................................................................................... 13

*Wells Fargo Bank, N.A. v. CCC Atl., LLC*,
    2013 WL 595625 (D.N.J. Feb. 15, 2013) ........................................................................ 6

*Zimmerman v. Crothall*,
    2014 WL 257461 (Del. Ch. Jan. 23, 2014) ................................................................... 14

**Other Authorities**

Fed R. Civ. P. 62 ............................................................................................................. 5, 13

Fed R. Civ. P. 62(d) ........................................................................................................... 3, 4

Fed R. Civ. P. 69 ................................................................................................................. 14

## INTRODUCTION

Plaintiff, judgment creditor and conditional writ holder OI European Group B.V. ("OIEG"), submits this opposition to *Petroleos de Venezuela, S.A's Motion for an Order Recognizing that the Court has been Divested of Jurisdiction or Alternatively for an Unconditional Stay Pending Appeal* (the "Motion") [D.I. 136] filed by Petróleos de Venezuela S.A. ("PDVSA") – alter ego of Defendant and judgment debtor Bolivarian Republic of Venezuela ("Venezuela").

## NATURE AND STATE OF THE PROCEEDINGS

In 2019, the United States District Court for the District of Columbia (the "DC Court") recognized, as a U.S. judgment, OIEG's ICSID award against Venezuela – an award that was issued in 2015 as a result of Venezuela's expropriation of two of OIEG's glass container factories in 2010. After Venezuela failed to satisfy the U.S. judgment, the DC Court authorized OIEG to seek enforcement remedies. OIEG promptly registered the judgment in this Court and, resting on collateral estoppel principles, moved for an attachment of the PDVH shares, in light of this Court's August 9, 2018 determination in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386 (D. Del. 2018) ("Crystallex I"), *aff'd*, 932 F.3d 126 (3d Cir. 2019) ("Crystallex III"),[1] that PDVSA was an alter ego of Venezuela. That relief having been denied, OIEG renewed its motion in 2021, resting on a renewed factual record.

OIEG filed its renewed attachment motion in February 2021. D.I. 48. Over the course of two years, OIEG, PDVSA and Venezuela have submitted several rounds of briefing and declarations and have appeared for argument and status conferences before this Court on multiple occasions. Following this extensive litigation, on March 23, 2023, the Court issued its Order

---

[1] On August 23, 2018, the Court directed the issuance and service of Crystallex's writ on the shares. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018) ("Crystallex II").

1

granting the relief that OIEG had requested – a determination that PDVSA is Venezuela's alter ego and conditional approval of a writ of attachment on PDVSA's shares of PDVH – along with a 58-page Opinion detailing the reasoning underlying the Order. D.I. 131 (the "Opinion"), 132 (the "Order"). By the Order, the Court completed its adjudication of the attachment motion – all that remains for the Court to do is (1) receive evidence that shows satisfaction of the condition precedent for service of the writ (*i.e.*, evidence of an OFAC license that permits such service), and (2) approve a sale of the PDVH shares that contemplates proceeds being used to satisfy the OIEG judgment. The Court need not make any further merits determinations.

Just as in *Crystallex II*, "notwithstanding PDVSA's filing of a Notice of Appeal, the Court retains authority to enforce its" order approving a writ, with issuance and service deferred pending further order of the Court, and, "[u]nless PDVSA files a Rule 62[] motion for a stay *and posts a supersedeas bond*, the Court remains free to issue further orders as needed to enforce the" order approving a writ, with issuance and service deferred pending further order of the Court. *Crystallex II*, 2018 WL 4026738, at *1.

PDVSA seeks a stay of this Court's Order – but it offers no form of security pending the appeal, and no evidence that irreparable harm will occur to it pending the resolution of the appeal. The PDVH shares are currently subject to the Sale Procedures Order (defined below) in the *Crystallex* proceeding – a stay in this case will not change that fact. PDVSA's interests are currently protected without a stay: the issuance and service of OIEG's writ of attachment is conditioned upon OFAC licensing being obtained (or the applicable sanctions being removed), *see* Order at 1-2, and any subsequent enforcement and realization on the PDVH shares remains subject to entry of an order approving a sale by this Court. *See Crystallex II*, 2018 WL 4026738, at *3

2

("[T]he sale of PDVH's shares will not begin until this Court separately issues an order of sale."). OIEG, however, stands to be irreparably harmed by a stay.

## ARGUMENT

This Court retains jurisdiction to enforce its Order and it has not been divested of jurisdiction to issue further orders as needed. Furthermore, PDVSA has not carried its burden to meet the Third Circuit's test for determining if the "extraordinary remedy" of a stay of execution should be issued without a bond. The merits, balance of harms, and public interest all weigh in favor of denying the Motion. Given the current facts and circumstances, and the risk and harm posed to OIEG by any stay, there is no need or basis for a stay at this time.

### I. This Court Has Not Been Divested of Jurisdiction to Enforce the Order

As this Court determined in August 2018 in the *Crystallex* attachment proceeding, "notwithstanding PDVSA's filing of a Notice of Appeal, the Court retains authority to enforce its [order authorizing and approving the eventual issuance and service of a writ on alter ego principles]." *Crystallex II*, 2018 WL 4026738, at *1. This Court retains jurisdiction over its Order, and is free to issue "further orders as needed" "[u]nless PDVSA files a Rule 62(d) motion for a stay and posts a supersedeas bond." *Id*. As this Court further explained:

> While PDVSA is correct that the Court no longer retains jurisdiction over the issues on appeal . . . – those issues being the Court's conclusions that PDVSA's sovereign immunities under the Foreign Sovereign Immunities Act ('FSIA') do not preclude the attachment and execution sought by Crystallex – the Court retains authority to enforce the judgment that is currently on appeal.
>
> "[T]he mere pendency of an appeal does not, in itself, disturb the finality of a judgment. The district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th cit. 1987) (internal citation, quotation marks, and alteration omitted); *see also Lauber v. Belford High Sch.*, 2012 WL 12994877, at *2 n.4 (E.D. Mich. Aug. 31, 2021) (citing "well established rule that district courts retain jurisdiction, even after a notice of appeal is

3

> filed, to enforce an order already issued prior to the filing of the notice of appeal"); 20 Moore's Federal Practice § 303.32(2)(b)(vi) ("Until the district court's judgment is superseded or stayed, the judgment is fully in effect and the district court retains the authority to enforce the judgment."). "If an appeal from an order or judgment divested the district court of jurisdiction to enforce that order or judgment, there would be no point to Rule 62(d) of the Federal Rules of Civil Procedure, which provides for a stay of an appealed order or judgment with the posting of a supersedeas bond."[2] *In re Gushlak*, 2012 WL 2564523, at *4 (E.D.N.Y. July 2, 2012); *see also Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979) ("Since Braddick failed to ask the district court for a stay pending appeal and to post supersedeas bond as required by F.R.C.P. 62(d), the district court retained power to enforce its order by civil contempt proceedings."); 11 Fed. Prac. & Proc. Civ. § 2905 (3d ed.) ("In the absence of a stay obtained in accordance with Rule 62(d), the pendency of an appeal does not prevent the judgment creditor from acting to enforce the judgment.").

*Id.* at *1-2. Thus, this Court retains jurisdiction to enforce the order authorizing the eventual issuance and service of a writ of attachment. *See id*. at *3. Absent a stay pending appeal (after the posting of a bond), there is no procedural bar to this Court taking steps to enforce the Order.

PDVSA's cited cases do not counsel otherwise – each of the cases cited by PDVSA in support of its position that this Court has been divested of jurisdiction pending appeal involved circumstances where the merits proceedings had not yet taken place. *See Princz v. Fed. Republic of German*, 998 F.2d 1, 1 (D.C. Cir. 1993) ("the district court may not proceed to trial until the appeal is resolved"); *Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 174 (E.D. Va. 1993) (denying motion to proceed to trial pending appeal); *Azima v. Rak Inv. Auth.*, 2018 WL 7982473, at *3 (D.D.C. Nov. 5, 2018) (denying motion to compel discovery regarding sovereign's potential liability and merits issues). Here, there is no further merits determination to be made, thus the Court has not been divested of jurisdiction to enforce its Order.

---

[2] Rule 62(d) provides: "If an appeal is taken, the appellant may obtain a stay by supersedeas bond. . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond."

4

## II. The Third Circuit's Four-Factor Test Balances Against Granting a Stay

Parties appealing district court decisions may obtain a stay of enforcement by posting a bond or other security, *see* Fed R. Civ. P. 62, but no such security has been offered here. Nonetheless, PDVSA asks this Court for the "extraordinary remedy" of an unbonded stay of execution of the conditional writ granted to OIEG. Because "[a] stay pending appeal is an extraordinary remedy . . . [it] is an exercise of judicial discretion," and not a "matter of right." *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 96 (D.D.C. 2011); *see also In re Swift Energy Co.*, 2016 WL 3566962, at *4 (D. Del. June 29, 2016). In determining whether to exercise that discretion, courts in the Third Circuit consider:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Rep. of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)). A movant *must* satisfy the first two factors. *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (further inquiry is "unnecessary" "if the movant does not make the requisite showings on either of the[] first two factors"). Where, as here, "the merits, balance of harms, and public interest favor the stay opponent—a stay should be denied." *Id.* at 569.

### A. PDVSA Has Not Demonstrated a Likelihood of Success on the Merits

To obtain a stay pending appeal, PDVSA must demonstrate that its appeal has a "strong . . . likelihood of success," meaning that it can "win on the merits" or, "*at a minimum*," has raised "serious questions going to the merits." *Id.* at 570-71 (emphasis added). Here, however, PDVSA "reasserts arguments that th[is] Court has already rejected" and attempts to manufacture "serious

5

questions" by looking to the Court's application of settled law to the particular facts before it. *District Title v. Warren*, 2015 WL 12964656, at *4 (D.D.C. Jan. 9, 2015).

PDVSA has not established that it is likely to succeed on the merits. PDVSA offers no serious (or new) basis for challenging this Court's factual findings – which are based on largely undisputed evidence and which will be reviewed on an "abuse of discretion" standard.[3] Furthermore, this Court's determination that no independent basis of subject matter jurisdiction over PDVSA is required was well reasoned and is consistent in all respects with *Crystallex I*, which was subsequently affirmed by the Third Circuit. *See Crystallex III*. PDVSA cannot establish a likelihood of success by simply rearguing rejected jurisdictional arguments. *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 2013 WL 595625, at *2 (D.N.J. Feb. 15, 2013) (rejecting request for stay pending appeal where the stay motion "reassert[ed]" movants' jurisdictional arguments, which the court "already addressed . . . and rejected" "as explained in [a] prior opinion"); *see also In re Commonwealth Renewable Energy, Inc.*, 2016 WL 1238199, at *2, 4-5 (Bankr. W.D. Pa. Feb. 10, 2016) (likelihood of success not established where, among other things, the court "provided an extensive analysis of the caselaw," had a "rational basis for its conclusions," and movant "fail[ed] to identify any legal error with respect to [those] conclusions").

As noted, the Third Circuit has already affirmed this Court's earlier decision regarding the extensive control that a recognized government had over its sovereign instrumentality, *see*

---

[3] PDVSA highlights only one instance where it challenges the Court's findings – it asserts that this Court erred in not finding that "PDVSA's funds were not used by the Interim Government and that PDVSA instead loaned the Republic funds to pay for some legal fees in the interest of protecting PDVSA's assets in U.S. courts." Motion at 9. However, the Court appropriately weighed, and discounted, OIEG's (and others') evidence and even PDVSA's own witness acknowledged Venezuela's use of PDVSA's funds while failing to substantiate PDVSA counsel's insistence that the funds were "loaned" and actually collectable: "the ad hoc board specifically authorized *the use of those funds to pay a limited amount of the legal expenses of Venezuela* in defending PDVSA's assets in the United States against those attachment claims, *subject to an understanding* that PDVSA would be reimbursed."). *See* D.I. 68 at ¶ 17.

6

*Crystallex III*, and but for the passage of time (and a newly recognized government of a long-recognized sovereign) there have been no changes that conceivably could affect analysis. This Court weighed PDVSA's evidence regarding changed circumstances, which this Court carefully considered and nonetheless held supported the same alter ego conclusion from *Crystallex I* and *III*. That the Court reached the same legal conclusion based on an updated record is not sufficient in and of itself to demonstrate a likelihood of success on appeal – indeed, PDVSA is likely to lose for all the reasons in this Court's Opinion. In short, there are no issues raised here that would present serious questions going to the merits of this Court's recognition of the alter ego relationship between PDVSA and Venezuela.

### B. *PDVSA Has Failed to Show that it Will Suffer Irreparable Harm*

PDVSA has failed to show that it "will suffer irreparable harm." Such a showing must present "harm that cannot be prevented or fully rectified" "by a legal or equitable remedy" in the context of a stay pending execution. *Revel*, 802 F.3d at 568; *In re Color Spot Holdings*, 2018 WL 3996938, at *8 (D. Del. Aug. 21, 2018) (citation omitted). Satisfaction of this factor requires evidence establishing that the harm is "likely," meaning "more apt to occur than not." *In re Culp*, 550 B.R. 683, 696 (D. Del. 2015) (*quoting Revel*, 802 F.3d at 569). "[S]peculative and purely economic harm . . . [are] insufficient to warrant a stay pending appeal." *Color Spot Holdings*, 2018 WL 3996938, at *3. Instead, "the applicant must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay].'" *Revel*, 802 F.3d at 569 (emphasis and alterations in original).

*First*, there is no guarantee that (1) the sale process contemplated by the Sale Procedures Order will go forward in the near future (or at all), or (2) that OFAC will grant the necessary licenses that are a pre-requisite to the service of OIEG's writ or to this Court authorizing the sale of the PDVH shares. Even if the marketing process were to commence in the next month or two,

the Sale Procedures Order contemplates a hearing to approve such a sale "approximately 270 calendar days after the Launch date," Sale Procedures Order at 10 – a *potential* sale of the PDVH shares at issue, which remains contingent on OFAC licensing, and cannot occur for *at least* more than nine (9) months from today is not indicative of irreparable harm. *See Tucker Anthony Realty Corp. v. Schelsinger*, 888 F.2d 969, 975 (2d Cir. 1989) (A stay movant "must demonstrate an [irreparable harm] that is neither remote nor speculative, but actual and *imminent*.") (emphasis added).

*Second*, even if the sale process does go forward during the appeal, the likely consequence of this Court's unstayed decision is the satisfaction of a judgment (if the writ of attachment is served), which, if found to be improper, is "compensable in money." *Revel*, 802 F.3d at 572. The requirement to pay money is not "irreparable harm" as a matter of law. *See Baker*, 810 F. Supp. 2d 90 ("economic loss does not, in itself, constitute irreparable harm" and "[f]or an injury to be 'irreparable,' legal remedies after the fact must be inadequate to restore the party seeking a stay to the status quo ante"); *Citibank, N.A. v. Nyland (CF8) Ltd.*, 705 F. Supp. 188 (S.D.N.Y. 1989) (no "irreparable injury" where movant could recover the value of the property sold at court ordered sale if he won on appeal). The same holds true if this Court were to determine that OIEG's judgment should be deemed an "Additional Judgment" under the Sale Procedures Order – if OFAC permits the *Crystallex* sale to go forward but *does not* authorize the service of OIEG's writ of attachment, then the proceeds of a sale would not be used to satisfy OIEG's judgment. That "risk" creates no irreparable harm for PDVSA. When the PDVH share sale process goes forward, a willing buyer will be bidding up to a capped dollar amount (*i.e.*, the aggregate amount of judgments subject to the sale process) for a variable amount of PDVH shares. At the end of the day, only so many shares necessary to satisfy *attached* judgments can be sold, so PDVSA's alleged harm is

8

illusory because there will be no excess proceeds over the amount of attached judgments that can be satisfied by the sale (and, in fact, if OIEG obtains an OFAC license in time to realize a portion of the proceeds of the sale, PDVSA and Venezuela will benefit in having one sale process that addresses multiple judgment creditors – which is exactly why the Sale Procedures Order contemplates "Additional Judgments" in the first place).

*Finally*, an alleged deprivation of sovereign immunity is insufficient to establish irreparable harm. *See*, *e.g.*, *Enron Nigeria Power Holding, Ltd. v. Federal Rep. of Nigeria*, 70 F. Supp. 3d 457, 459 (D.D.C. 2014). Foreign sovereign immunity exists to provide relief "from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself," thus preventing the harm incurred defending a lawsuit. *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992). In this proceeding, the Court has already made its merits determinations and issued its final order granting OIEG's motion for a writ of attachment (with issuance and service of such writ subject to certain conditions precedent). No future proceedings in this case that implicate sovereign immunity are necessary. *See Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281-82 (3d Cir. 1993) (explaining that "[a]t the post-trial stage . . . the [sovereign entities] will have been [already] forced to endure the very burden they are arguing they should not be subjected to in the first place"). And again, the Third Circuit has already held that PVSDA is not entitled to sovereign immunity in *Crystallex III*, and that same holding still applies for all the reasons this Court's explained in its Opinion. The denial of sovereign immunity may be sufficient to justify the appeal in the first instance, but it does not reach the level of "irreparable harm" necessary to warrant a stay pending appeal without the posting of a bond.

### C. Issuance of a Stay Will Substantially Injure OIEG

During the years-long process OIEG has undertaken to enforce its award against Venezuela, a similarly situated creditor (Crystallex) has been before this Court seeking to

9

implement a sales process for the very same asset that is the subject of this proceeding (PDVSA's shares of PDVH).  This Court has permitted Crystallex to take steps to enforce its judgment and attachment, and a sale process is on the verge of commencing in earnest.  If enforcement of this Court's Order is stayed, there is a significant risk that the sale process could go forward *without* OIEG's judgment being satisfied – a result that would not only significantly injure OIEG in the short term, but would also likely eliminate OIEG's ability to satisfy its judgment on the asset in the future as well.

In August 2018, this Court granted Crystallex's writ of attachment based on PDVSA being the alter ego of Venezuela.  *See Crystallex I*.  That decision was affirmed by the Third Circuit in 2019.  *See Crystallex III*.  In January 2021, this Court granted Crystallex's motion for an order of sale of the PDVH shares, and subsequently entered a "Sale Procedures Order" in October 2022 that governed the marketing and sale process of the PDVH shares that would be undertaken to satisfy the Crystallex judgment and potentially other creditors' judgments as well.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 1:17-mc-151-LPS (D. Del. Oct. 11, 2022), D.I. 481 (the "<u>Sale Procedures Order</u>").  The Sale Procedures Order provides that "Additional Judgments" can be added to the Sale Procedures Order (and thus "considered by the Special Master for purposes of the Sale Transaction") so long as such judgments are added on or before the "Additional Judgment Deadline."  *See* Sale Procedures Order at 25.  The Additional Judgment Deadline is set to expire "ten calendar days" after the Court permits the Special Master to launch the marketing process contemplated by the Sale Procedures Order.  *See id*.

If a stay is granted and OIEG's judgment is not included as an "Additional Judgment" by the Additional Judgment Deadline, OIEG would be at risk of the *Crystallex* sale process going forward without the possibility of sale proceeds being used to satisfy the OIEG award.  The effects

could be catastrophic – (1) if a majority of the PDVH shares are sold to a new buyer before the writ is served, there is a significant risk that PDVSA would attempt to revisit this Court's Opinion and Order in light of any new majority ownership and control over PDVH (especially in light of this Court's ruling on the "pertinent time" for the alter ego analysis), *see* Opinion at 50 ("It follows that this Court is only able to grant relief sought by the judgment creditors so long as Venezuela has property in this District.  Since the focus is on the property, and not the party, what matters is the location and ownership status of the property, characteristics that can change at any time."), (2) a stay of this proceeding could prevent service of OIEG's writ, thereby potentially permitting other judgment creditors to establish a higher priority attachment and leapfrog OIEG's years-long enforcement efforts, and (3) the years-long process of crafting a sale procedures order and marketing the PDVH shares could be wasted on satisfying one judgment creditor (Crystallex) while leaving the rest behind without any prospect of recovery.  A buyer is unlikely to purchase a minority interest in PDVH that results in sharing or relinquishing control rights to a sovereign that is subject to U.S. sanctions and faces further political uncertainty.  Put simply, a potential buyer is likely to make an opening bid of 100% of the shares for the aggregate amount of outstanding judgments – such a bidding structure may benefit Crystallex, but it will significantly limit the ability to maximize the sale price and value of the shares being sold if no other "Additional Judgments" are part of that sale process.

      A stay that prevents OIEG's judgment from becoming an "Additional Judgment" and left out from potentially being satisfied from the sale proceeds would cause irreparable harm to OIEG – its years-long alter ego briefing would be for naught, and it would likely be required to start its enforcement efforts anew with no readily identifiable assets present.

### D. *Public Interest Weighs Against Granting a Stay*

Public interest weighs in favor of enforcement of judgments – here, OIEG seeks only to collect on its years-old judgment against Venezuela. *See*, *e.g.*, *Cottilion v. United Ref. Co.*, 2014 WL 7344005, at *4 (W.D. Pa. Dec. 23, 2014) (denying motion to stay, citing non-moving party's assertion that "there is a public interest in favor of . . . enforcement of judgments"); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2013 WL 5937342, at *16 (M.D. Pa. Nov. 4, 2013) (denying motion to stay in part because "the request for a stay is offensive to the . . . public interest in enforcing judgments").

By staying enforcement of its Order and refusing to recognize the OIEG judgment as an "Additional Judgment," the parties would be left with a sale process that leaves multiple creditors unsatisfied from the sale proceeds and the years-long litigation efforts would be wasted. Judicial economy and public interest weigh in favor of permitting a judgment creditor to continue to enforce its rights, especially where (as here) such enforcement efforts are known to be subject to OFAC licensing and a sale process that has many months remaining before sale proceeds would be realized and/or distributed. With no imminent harm present with respect to PDVSA, public interest weighs heavily in favor of a creditor seeking to enforce its judgment – should circumstances change dramatically, the parties can address whether a stay is warranted at that time.

### III. PDVSA Must Post a Full Bond in Order to Obtain a Stay

Even if PDVSA could satisfy the stay factors discussed above, there is no reason to permit a stay without requiring PDVSA to post a bond or other form of security. Given that OIEG's judgment is valid, has been outstanding for almost four years now (and longer as an ICSID award),

12

and that this Court's Opinion is consistent in all respects with its prior rulings in the *Crystallex* proceedings, OIEG's interests should be protected by a bond if a stay were to be granted.

The bond or other security requirement contained in Federal Rule of Civil Procedure 62 "secure[s] the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *In re W.R. Grace & Co.*, 475 B.R. 34, 209 (D. Del. 2012) (citation omitted), *aff'd* 729 F.3d 332 (3d Cir. 2013) (subsequent affirmations omitted). The bond requirement may only be waived in "exceptional circumstances" and "when there are other means to secure the judgment creditor's interests," such that the court is "convinced that the judgment is adequately secured." *Montalvo v. Larchmont Farms, Inc.*, 2011 WL 6303247, at *2 (D.N.J. Dec. 15, 2011); *Fed. Election Comm'n v. O'Donnell*, 2017 WL 2200911, at *2 (D. Del. May 19, 2017) (denying motion for stay without bond because defendants failed to show that judgment was adequately secured and had not "address[ed] the [plaintiff's] concerns about the security of the judgment") (quoting *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009)). To "depart[] from the ordinary requirement of a bond or other security," "[a] high priority . . . should be to ensure the collectability of plaintiff's judgment," and "[e]rror, if at all, should be on the side of *protecting plaintiff's stake*." *United States v. Panhandle E. Corp.*, 696 F. Supp. 983 (D. Del. 1988) (emphasis added) (rejecting proposed alternative arrangement to secure payment of the judgment pending appeal). However, PDVSA has failed to propose a plan that would provide alternative means of securing the judgment. *See Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2002 WL 87480, at *1 (D. Del. Jan. 22, 2002) ("The power to reduce or waive the supersedeas bond requirement may be exercised only in extraordinary circumstances, and only where alternative means of securing the judgment are available. It is the appellant's

13

burden to demonstrate objectively that posting a full bond is impossible or impractical.  Likewise, it is the appellant's duty to propose a plan that will provide adequate security for the appellee.").

Delaware law also provides that stays of execution may be granted only where the judgment debtor provides "'sufficient security'" which is "at a minimum, the full amount of the money judgment." *Gates v. Texaco, Inc.*, 2008 WL 1952162, at *1 (Del. Super. Ct. May 2, 2008); *see also In re Karaha Bodas Co., L.L.C.*, 2002 WL 1401693, at *1 (D. Del. June 27, 2002), *order clarified*, 2002 WL 1585913 (D. Del. July 18, 2002) ("agree[ing]" that "the court should apply Delaware law to the question of whether [the judgment debtor] must post a bond pending the removal of the stay order"); *Owens Corning Fiberglas Corp. v. Carter*, 630 A.2d 647, 648 (Del. 1993) (affirming denial of stay unless appellant "paid the full amount of the judgment plus legal interest" into the court).  In general, courts considering enforcement procedures under Delaware law "do[] not have the discretion to waive the requirement of the supersedeas bond." *Gates*, 2008 WL 1952162, at *1; *see also Zimmerman v. Crothall*, 2014 WL 257461, at *2 n.14 (Del. Ch. Jan. 23, 2014) ("Delaware courts have held that, pursuant to article IV, § 24 of the Constitution and the applicable Supreme Court Rules, trial courts are without authority to waive the supersedeas bond requirement.").

PDVSA has not sufficiently demonstrated "why th[is] court should deviate from the ordinary full security requirement." *In re W.R. Grace & Co.*, 475 B.R. at 209.  PDVSA argues without support that it is "wrong as a matter of law" that it could be required to post a bond.  Motion at 11.  OIEG is unaware of, and PDVSA did not cite to, any case law which stands for the proposition that it is "wrong as a matter of law" that a sovereign or its instrumentality could be required to post a bond pending appeal.  *See* Motion at 11.  PDVSA is appealing issues that this Court has previously decided and that the Third Circuit has affirmed.  In those prior decisions, the

creditor (Crystallex) was partially protected by its writ of attachment – but even that was not sufficient in this Court's decision to deny PDVSA's request for a stay pending appeal without a bond. Here, OIEG holds only a *contingent* writ of attachment, which has yet to be served and perfected – thus, OIEG has no security and PDVSA has not demonstrated a reason for why OIEG's proceeding should be stayed without a bond being provided.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion.

Dated: April 18, 2023

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

**SEQUOR LAW, P.A.**

By: */s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Jonathan M. Albano (*pro hac vice*)
Christopher L. Carter (*pro hac vice*)
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

Edward H. Davis, Jr. (*pro hac vice*)
Fernando J. Menendez (*pro hac vice*)
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

15