**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V.,<br><br>  Plaintiff,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Case No. 19-mc-290-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Case No. 20-mc-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD.,<br><br>  Plaintiffs,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Case No. 21-mc-46-LPS |
| RUSORO MINING LIMITED,<br><br>  Plaintiff,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Case No. 21-mc-481-LPS |

| | |
|---|---|
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL,<br><br>   Plaintiffs,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 22-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>   Plaintiff,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 22-mc-453-LPS |

**PDVSA'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER RECOGNIZING THAT THE COURT HAS BEEN DIVESTED OF JURISDICTION OR <u>ALTERNATIVELY FOR AN UNCONDITIONAL  STAY PENDING APPEAL</u>**

  Plaintiffs' oppositions to PDVSA's motion for recognition of the divestiture rule or, alternatively, for an unconditional stay, ignore or downplay the critical basis for halting all further proceedings in the district court pending PDVSA's appeals: if this Court were to proceed with any part of the action *against PDVSA* or its property, the "legal and practical value" of PDVSA's independent sovereign immunity defense would be "destroy[ed.]" *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281-82 (3rd Cir. 1993). None of the cases cited by Plaintiffs involve a situation in which a district court was allowed to force the sovereign defendant to continue defending the action while an appeal of a denial of its sovereign immunity was pending. While this Court believed it could do so in the *Crystallex* case, no other court has followed that approach and the Third Circuit effectively overruled that decision by *sua sponte*

2

staying all district court proceedings unconditionally pending PDVSA's appeal and mandamus petition.

Furthermore, none of the arguments raised by Plaintiffs weighs against granting an unconditional stay. This Court does not have to rule that it is more likely than not that its decision will be reversed by the Third Circuit, only that PDVSA's appeals raise serious, novel issues on which the Third Circuit could reasonably disagree. And the balancing of harms clearly weighs in favor of PDVSA considering the certain irreparable injury to its sovereign immunity and the potential for the irrecoverable loss of its controlling interest in the PDVH shares, as compared to the speculative harm to Plaintiffs who have no right to the PDVH shares unless and until OFAC grants the requisite approval. Lastly, not only is the notion that PDVSA could be required to post a bond in these circumstances wrong as a matter of law, but also Plaintiffs ignore the simple fact that PDVSA could not do so because the OFAC sanctions clearly prohibit it.

**I.     Plaintiffs Ignore the Foundational Basis for Application of the Divestiture Rule**

Plaintiffs make three main arguments against the application of the divestiture rule. None are persuasive and all neglect key case law.

First, Plaintiffs argue that the divestiture rule was already rejected by this Court in *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, C.A. No. 17-mc-151-LPS, 2018 U.S. Dist. LEXIS 144118 (D. Del. Aug. 23, 2018).  While this Court did find there that it could issue and enforce a writ of attachment despite PDVSA's pending appeal from the denial of its sovereign immunity, that view was incorrect. As PDVSA noted in its Motion, the primary cases on which the Court relied (and Plaintiffs now rely), such as *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987), did not involve appeals from a denial of sovereign immunity. A denial of sovereign immunity is a unique situation requiring special considerations. Sovereign immunity is a threshold issue that must be conclusively decided "as near to the outset of the case

3

as is reasonably possible" in order to preserve the benefits of any sovereign immunity to which the sovereign defendant is presumptively entitled. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017); *Process & Indus. Devel. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 581, 584 (D.C. Cir. 2020) ("*P&ID*").

None of the Plaintiffs can refute the Third Circuit's admonition in *Federal Insurance* that, if a case could proceed in the district court against a corporate instrumentality of a foreign state after a denial of its sovereign immunity without first obtaining appellate review, the "legal and practical value" of the sovereign immunity defense would be "destroy[ed.]" 12 F.3d at 1281-82. Nor have they distinguished the Second Circuit's holding that a corporate instrumentality of a foreign state is entitled to immediate review a denial of its sovereign immunity based on an alter ego determination because "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine to subject [an instrumentality of a foreign state] to further burdensome litigation" before "conclusively" determining its sovereign immunity. *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 87, 88 n.38 & n.45 (2d Cir. 2015).

That is why courts have consistently held that an appeal from the denial of sovereign immunity divests the district court of jurisdiction to proceed with *any part* of the action against the sovereign defendant whose sovereign immunity has been denied. *See, e.g., Azima v. Rak Inv. Auth.*, No. 16-cv-1948, 2018 U.S. Dist. LEXIS 225192, at *5-7 (D.D.C. Nov. 5, 2018) (K.B. Jackson, J.). No court has adopted this Court's contrary view in *Crystallex*. Furthermore, in *Crystallex*, the Third Circuit *sua sponte* unconditionally stayed "all proceedings" in the district court on PDVSA's mandamus petition to enforce the divestiture rule, preventing this Court from proceeding further with the enforcement of the writ pending PDVSA's appeal—having the same practical effect as the application of the divestiture rule. *In re Petróleos de Venezuela*, *S.A.*, No.

4

18-2889, 2018 U.S. App. LEXIS 37167, at *2 (3d Cir. Nov. 23, 2018). Contrary to Plaintiffs' suggestion, the Third Circuit did not reject PDVSA's arguments on divestiture. The Third Circuit denied PDVSA's mandamus petition after it affirmed the district court's jurisdiction to issue the writ of attachment, thus mooting the divestiture issue. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 133 n.1 (3d Cir. 2019). In addition, the present situation differs from that in *Crystallex*. There, Crystallex was granted an unconditional writ of attachment. By contrast, here, the Plaintiffs only have a decision that the Court will issue a writ of attachment in the future if certain conditions occur, so there is no writ to enforce yet, at least not until and unless OFAC issues a license or lifts the sanctions.

Second, Plaintiffs argue that the cases cited by PDVSA in its Motion are inapposite as they involve cases where the merits proceedings had not yet taken place.[1] But Plaintiffs do not cite any support for such a distinction, and in any event, PDVSA is appealing the denial of *its* sovereign immunity and the piercing of its corporate separateness, among other issues related to the conditional grant of writs of attachment, the merits of which are being litigated for the first time here, not the merits of the underlying judgment against *Venezuela* or the determination that *Venezuela* is liable to Plaintiffs. While *Venezuela* has had its opportunity to appeal the denial of its sovereign immunity, *PDVSA* as a presumptively separate corporate entity has not. *See EM Ltd.*, 800 F.3d at 87, 88 n.38 & n.45. Again, the denial of PDVSA's sovereign immunity is a threshold issue that must be assessed before any further litigation can proceed against *PDVSA* or its property. *See id*. Sovereign immunity is "not just a defense to liability on the merits," but rather "an immunity from trial and the attendant burdens of litigation" as "those burdens may compromise [the sovereign defendant] just as clearly as would an ultimate determination of

---

[1] *OIEG*, 1:19-mc-00290-LPS, D.I. 140, at 4; *Huntington Ingalls*, 1:20-mc-00257-LPS, D.I. 87, at 4; *Koch*, 1:22-mc-00156-LPS, D.I. 27, at 4; *ACL*, 1:21-mc-00046-LPS, D.I. 64, at 4.

liability." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) (citing to *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)). For that reason, courts "must resolve colorable assertions of immunity before the foreign sovereign may be required to address the merits at all." *P&ID*, 962 F.3d at 586. In *P&ID*, the D.C. Circuit explained that the "merits" is not limited to the liability determination, and can relate to any part of the litigation including, for instance, the merits of a petition to confirm an arbitral award even though the liability determination has already been made in the underlying arbitral proceedings. 962 F.3d at 586; *see also Blue Ridge Invs., L.L.C v. Republic of Arg.*, 735 F.3d 72, 80-81 (2nd Cir. 2013).

  Here, Plaintiffs are still seeking further relief against PDVSA and its property that Plaintiffs may not be entitled to if the Third Circuit reverses this Court's alter-ego decision. For instance, they seek to have their judgments added as "Additional Judgments" under the Sales Procedure Order in *Crystallex*, even though they have not attached, and cannot attach, the PDVH shares. Thus, if the Court allows these issues to be litigated pending appeal, PDVSA will face the costs and burdens attendant to litigation that it is entitled to avoid if the Third Circuit determines that it is a separate entity entitled to its own sovereign immunity from all of these actions. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). The focus on "trial" is semantics—while this case may not be headed into a traditional "trial," litigation is far from over. If a sovereign defendant is shielded from "trial" by an appeal from a denial of its sovereign immunity, it is *a fortiori* shielded from proceedings to execute on its property pending the same appeal.

  Lastly, Plaintiffs argue that a court retains jurisdiction to enforce its order even in the context of a pending appeal from the denial of sovereign immunity '[u]nless PDVSA files a Rule 62(d) motion for a stay and posts a supersedeas bond.'" *OIEG*, 1:19-mc-00290-LPS, D.I. 140, at

6

3; *see also Huntington Ingalls*, 1:20-mc-00257-LPS, D.I. 87, at 3-4 (similar); *Koch* 1:22-mc-00156-LPS, D.I. 27, at 3-4 (similar); *ACL*, 1:21-mc-00046-LPS, D.I. 64, at 4 (similar); *Gold Reserve*, 1:22-mc-00453-LPS, D.I. 33, at 3 (similar); *Rusoro*, 1:21-mc-00481-LPS, D.I. 52, at 1 (similar). However, none of the cases to which the Plaintiffs cite in support of this proposition deal with foreign sovereigns appealing from the denial of sovereign immunity. They are therefore inapposite.

Rusoro argues that the ordinary stay rule "holds true even where, as here, the appellant is a sovereign" and argues that "courts have repeatedly held that judgments against foreign sovereigns may be enforced during the pendency of an appeal." D.I. 52, at 2. While Rusoro cites to cases involving foreign sovereigns, the cases are procedurally distinct from the present case. In *Saint Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, No. 20-129 (RC), 2021 U.S. Dist. LEXIS 251637 (D.D.C. July 13, 2021), Venezuela was appealing from a final judgment confirming an arbitral award on service of process grounds, not a denial of sovereign immunity. In *Owens v. Republic of Sudan*, 141 F. Supp. 3d 1 (D.D.C. 2015), Sudan moved to vacate a default judgment and argued that the Court should not grant an attachment under section 1610(c) of the FSIA. The case did not involve an appeal from a denial of sovereign immunity. In *Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82 (D.D.C. 2013), Ecuador did not raise the divestiture rule and the court did not have occasion to address it. *See Chevron v. Republic of Ecuador*, 1:12-cv-1247, D.I. 32-47; *see also Goldman v. Citigroup Global Mkts., Inc.*, 834 F.3d 242, 251 (3d Cir. 2016) (stating that a "drive-by jurisdictional ruling, in which jurisdiction has been assumed by the parties, and assumed without discussion by the court, does not create binding precedent" (alteration in original) (quotation marks omitted)). The cases on which Rusoro relies are thus unavailing.

**II.     Alternatively, PDVSA Has Met the Third Circuit's Test for an Unconditional Stay**

PDVSA has met its burden under Third Circuit precedent for an unconditional stay pending appeal: (1) PDVSA's likelihood of success is "significantly better than negligible"; (2) PDVSA will be irreparably harmed absent a stay; (3) Plaintiffs have not shown they will be "substantially injured" by a stay at this time; and (4) public interests favor supporting the Executive Branch's foreign policy over proceeding with enforcement of writs that may never be approved by OFAC.

     A.     <u>PDVSA Has Met the Likelihood of Success Threshold</u>

Plaintiffs do not deny that the relevant standard on likelihood of success was set forth in the Third Circuit's decision in *Revel*, which only requires a movant to show that its chances of winning on the merits are "significantly better than negligible." *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 571 (3d Cir. 2015). The movant is not required to show that the chances of winning are greater than 50 percent. *Id.* In other words, the chances of prevailing on appeal "need not be more likely than not." *Id.* at 569. Thus, to meet this standard, PDVSA need not convince this Court that its decision was wrong; it is enough to show that its appeals raise "serious questions going to the merits." *Id.* at 570 (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). PDVSA's motion easily clears this bar.

This case presents not only serious questions, but indeed questions of first impression. No court has been called upon to revisit a set of facts on an alter ego analysis where there has been a complete change of the political and corporate structure governing the particular entity in question, and no court has previously ruled on the relationship between the Interim Government and PDVSA. While Plaintiffs may want to treat this matter as a standard appeal, the novelty of this case cannot go ignored. In fact, courts have found that novelty and complexity of an

8

argument could justify a stay pending appeal. *See United States v. Safehouse*, 468 F. Supp. 3d 687, 692 (E.D. Pa. 2020) (granting the motion to stay because, though the court stood by its decision, the appeal addressed complex, difficult, and altogether "novel" issues that could be decided differently by the Third Circuit); *see also Adams v. Carney*, No. 17-181-MPT, 2018 U.S. Dist. LEXIS 105529, at *8-9 (D. Del. June 25, 2018) (finding likelihood of success where an appeal raised questions of first impression and there was a reasonable chance the Third Circuit "may agree" with the appellant, even though the district court had "already agreed" with the opposing party).

This point is further highlighted by the fact that Plaintiffs did not provide a single case where novel issues were being appealed and the stay was denied, much less any case requiring the type of unique and complex alter ego and changed circumstances analysis required of the Court here. Many of the facts upon which this Court relied in its determination that PDVSA is an alter ego of the Interim Government are indicators of an ordinary relationship between shareholders and a corporation, as the Court itself acknowledged. And many of the other facts relied upon by the Court were exercises of normal governmental regulatory authority, implemented as a result of extraordinary circumstances to protect PDVSA assets in the United States from the illegitimate Maduro regime and to restore, not undermine, PDVSA's independence. As such, these facts cannot, as a matter of law, be used to support an alter ego determination under *Bancec*. *See GSS Group Ltd. v. Nat'l Port Authority of Liberia*, 822 F.3d 598, 606 (D.C. Cir. 2016).

Given the complexity of this matter, the unprecedented analysis required, and the serious questions raised, PDVSA's likelihood of success on appeal is significantly better than negligible.

B.     PDVSA Will Suffer Irreparable Harm Absent Stay

The law is clear that an improper denial of sovereign immunity is an irreparable harm in and of itself. As the Fifth Circuit noted in *United States v. Moats*, "sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself. Regardless of what the plaintiff seeks from the foreign defendant, *the risk of harm from having to defend the lawsuit remains constant and is an irreparable loss*." 961 F.2d 1198, 1203 (5th Cir. 1992) (emphasis added). Similarly, in *P&ID*, the D.C. Circuit noted that, "[w]here immunity exists, it affords a complete protection 'from suit,'… not just from whatever burdens we may decide are too many." 962 F.3d at 586 (citing to *Helmerich & Payne*, 581 U.S. at 174); *see also Fed. Ins.*, 12 F.3d at 1281-82. It is not only about the amount of inconvenience or burden, but also about the infringement on the sovereign immunity in and of itself. OIEG's reliance on *Enron Nigeria Power Holding, Ltd. v. Federal Rep. of Nigeria*, 70 F. Supp. 3d 457 (D.D.C. 2014), to dispute that notion is misplaced. *Enron* did not involve an appeal from a denial of sovereign immunity, but from a decision granting leave to re-serve a foreign state. 70 F. Supp. 3d at 459. Thus, the irreversible deprivation of the foreign state's immunity from suit was not at issue.[2]

Additionally, Plaintiffs argue that any harm from a potential sale is speculative, as no OFAC license has been granted yet, and that in any case, there is supposedly only money at risk. *OIEG*, 1:19-mc-00290-LPS, D.I. 140, at 7-8; *Huntington Ingalls*, 1:20-mc-00257-LPS, D.I. 87, at 10-11; *Koch*, 1:22-mc-00156-LPS, D.I. 27, at 11; *ACL*, 1:21-mc-00046-LPS, D.I. 64, at 8;

---

[2] Rusoro's reliance on *Kurd v. Republic of Turkey*, No. 18-1117 (CKK), 2022 U.S. Dist. LEXIS 170932 (D.D.C. Sept. 21, 2022), and *W. Flagler Assocs. v. Haaland*, 2021 U.S. Dist. LEXIS 259571 (D.D.C. Nov. 24, 2021), is also misplaced. In *Kurd*, the district court denied the Republic of Turkey's motion to stay pending a petition for a writ of *certiorari*, *i.e.*, after the D.C. Circuit had affirmed the denial of Turkey's sovereign immunity. That is different from requiring a sovereign defendant to continue litigating while its appeal as of right is still pending. *W. Flagler* is further afield, as it did not involve foreign sovereign immunity.

10

*Gold Reserve*, 1:22-mc-00453-LPS, D.I. 33, at 6; *Rusoro*, 1:21-mc-00481-LPS, D.I. 52, at 9-10. The first argument is internally inconsistent as Plaintiffs go on to argue that they will suffer irreparable harm if the sale is not permitted to proceed, even though none of them have an OFAC license. They cannot have it both ways. Either that injury is speculative, or it is not. Furthermore, there is more than money at risk. PDVSA's ownership or, at a minimum, controlling interest in PDVH and its indirect ownership in CITGO is also potentially at risk. If these plaintiffs' judgments are added under the Sales Procedures Order in *Crystallex*, it could force the marketing and sale of a greater number of shares than would otherwise be necessary to satisfy only Crystallex's judgment. The loss of any controlling interest could not be easily unwound and would constitute an irreparable injury. *See Solar Cells, Inc. v. True North Partners, LLC*, 2002 Del. Ch. LEXIS 38, No. Civ. A. 19477, 2002 Del. Ch. LEXIS 38, at *25 (Del. Ch. Apr. 25, 2002); *Di Nardo v. Renzi*, Civil Action No. 8977, 1987 Del. Ch. LEXIS 422, at *8-11 (Del. Ch. April 24, 1987).

      C.     <u>Plaintiffs Have Not Shown They Would Be Irreparably or Substantially Harmed</u>

Plaintiffs have not and cannot show that they are likely to suffer any harm if a stay is granted. To the extent the Court's orders regarding any future contingent entitlement to a writ of attachment create any right or interest in the PDVH shares of any kind, it would violate the OFAC regulations and be void *ab initio*. Thus, in the absence of obtaining a license from OFAC, any harm to the Plaintiffs at this point is pure conjecture. Under Third Circuit precedent, where the movant shows its injury is "virtually guaranteed" and the opponent's alleged harm is "at best speculative," the balance-of-harms tilts in the movant's favor. *Revel*, 802 F.3d at 572-73. Plaintiffs only allege injuries that might occur after OFAC licenses are granted. As Northop and Koch both stated in their replies, it is "speculative at best that OFAC will grant licenses for both the final sale of the Crystallex action proceedings as well as the conditional writs before

PDVSA's appeal is decided." *Koch*, 1:22-mc-00156-LPS, D.I. 27, at 12; *Northrop*,1:20-mc-00257, D.I. 87, at 12. However, as explained above, the denial of a stay would, at the very least, irreparably injure PDVSA by infringing on its sovereign immunity and so the balance-of-harms weigh in PDVSA's favor.

### D. Public Policy Favors a Stay

Only Rusoro cites case law finding that the ability to enforce judgments may be in the public's interest. *See* Rusoro, D.I. 52 at 18. However, these cases are inapposite as they did not require the court to balance the enforcement of judgments against a sovereign defendant's entitlement to sovereign immunity or the potential interference with the U.S. government's foreign policy. It is clear that where a court is dealing with a sovereign defendant, there is a strong public interest in not interfering with the prerogatives entrusted exclusively to the Executive Branch, such as the power to recognize foreign governments, which is what is at stake in these cases. *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076 (2015) (stating that "[o]nly the Executive Branch can recognize a foreign government"); U.S. Statement of Interest, at 4 ("The efforts by creditors to enforce judgments against Venezuela by taking immediate steps toward a conditional sale of PdVSA's U.S.-based assets, including PDVH and CITGO, are detrimental to U.S. policy and the interim government's priorities."), Meehan Decl., Ex. 8, *OIEG*, No. 1:19-mc-00290, D.I. 67-1. None of the Plaintiffs cite cases in which these foreign relations interests where weighed against other interests.

### III. A Bond Should Not And Cannot Be Required

Plaintiffs have not cited a single case in which a court has required a sovereign defendant to post a bond pending an appeal of a denial of sovereign immunity, and PDVSA is aware of none. Furthermore, Plaintiffs simply ignore that the current OFAC sanctions make it impossible for PDVSA to do so. In addition to generally blocking PDVSA's property, OFAC sanctions

specifically prohibit any U.S. person or anyone within the United States from engaging in any financing transactions involving "new debt" of PDVSA "with a maturity of greater than 90 days." E.O. 13808 § 1(a)(i), 82 Fed. Reg. 166 (Aug. 29, 2017). According to OFAC, that includes any "bonds, loans, extensions of credit, loan guarantees, letters of credit, drafts, bankers acceptances, discount notes or bills, or commercial paper." U.S. Dept. of Treasury, OFAC, Other Sanctions Programs: *Venezuela Sanctions*, FAQ No. 511, https://ofac.treasury.gov/faqs/511. No bank or bonding company would or could take that risk. *See* 31 U.S.C. § 9304 (bond surety must be a U.S. person); Fed. R. App. P. 8(b) (bond surety must submit to jurisdiction of U.S. court).[3]

## **CONCLUSION**

In sum, this Court should enter an order recognizing that it has been divested of jurisdiction, or, alternatively an unconditional stay pending PDVSA's appeals.

Respectfully submitted,

HEYMAN ENERIO GATTUSO & HIRZEL LLP

OF COUNSEL:

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
Juan O. Perla (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorneys for Petróleos de Venezuela, S.A.*

April 21, 2023

---

[3] While ACL argues that, if PDVSA cannot post a bond, it should be required to provide another form of security, it gives no indication as to what type of security could be provided without running afoul of OFAC sanctions. Additionally, neither case cited by ACL for this proposition deals with a sovereign defendant whose property is blocked by OFAC.

13