**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br><br> Defendant. | Case No. 19-mc-290 (LPS) |

**OI EUROPEAN GROUP B.V.'S OPENING BRIEF REGARDING ADDITIONAL**
**JUDGMENTS AND SALE PROCEDURES ORDER**

Dated: May 24, 2023

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Jonathan M. Albano
Christopher L. Carter
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

SEQUOR LAW, P.A.
Edward H. Davis, Jr.
Fernando J. Menendez
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.    OIEG's judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* action. ................................................................. 4

    II.    Following the lifting of the Temporary Stay, the Court should issue full, unconditional orders of attachment (including by converting conditional grants) to OIEG and other creditors and direct service of those writs. .............................................................................................. 6

        A.    The Court should issue a full, unconditional order of attachment (including by converting the conditional grant) for OIEG. ........................................................................ 6

        B.    The Court should direct service of OIEG's order of attachment. .................................. 7

    III.    Following the lifting of the Temporary Stay, the Court should implement a procedure (by Court order) to establish the priority of any judgments that are made Additional Judgments based on (a) the timing of a judgment creditor's motion for attachment or, alternatively, (b) the date the Court approved each conditional (or unconditional) writ of attachment. ................... 10

        A.    This Court has authority to implement procedures to establish priority. ..................... 10

        B.    This Court should implement procedures to establish priority that take into account legal and equitable considerations. .................................................................................. 12

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*U.S. v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ............................................................11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2018 WL 4026738 (D. Del. Aug. 23, 2018) ...........................................................................2

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2021 WL 129803 (D. Del. Jan. 14, 2021).............................................................................4, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018)......................................................................................2, 8

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    2022 WL 611563 (D. Del. Mar. 2, 2022) ...............................................................................14

*In re Stanley's Asphalt Paving, Inc.*,
    353 B.R. 63 (Bankr. D. Del. 2006) .........................................................................................10

*United States v. Stauffer Chem. Co.*,
    464 U.S. 165 (1984).................................................................................................................13

**State Cases**

*McAllister v. Kallop*,
    1995 WL 462210 (Del. Ch. July 28, 1995).............................................................................11

*Newell v. Morgan*,
    2 Del. 225 (Del. 1837) .............................................................................................................11

*PSC, Inv. v. Londergan*,
    1985 WL 189266 (Del. Super. Ct. Sep. 11, 1985)..................................................................11

*Shupe v. Lott*,
    1986 WL 4260 (Del. Super. Ct. Mar. 31, 1986) .....................................................................10

*Stockley v. Horsey*,
    9 Del. 603 (Del. 1874) .............................................................................................................11

**State Statutes**

6 *Del. C.* § 8-112.............................................................................................................................9

8 *Del. C.* § 168 ...............................................................................................................................9

8 *Del. C.* § 169 ............................................................................................................................8

8 *Del. C.* § 324 ....................................................................................................................8, 9, 11

10 *Del. C.* § 5031 ........................................................................................................................8

10 *Del. C.* § 5081 ......................................................................................................................10

10 *Del. C.* § 5082 .................................................................................................................10, 14

Plaintiff, judgment creditor and conditional writ holder OI European Group B.V. ("OIEG"), submits this opening brief in connection with the Memorandum Order (D.I. 151) (the "May 10 Scheduling Order") inviting briefing on the following issues: (a) which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order[1] entered in the *Crystallex* action, (b) should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors and, if yes, should the Court direct service of any such orders of attachment, and (c) how should the Court determine the priority of any judgments that are made Additional Judgments?

## PRELIMINARY STATEMENT

Petróleos de Venezuela S.A.'s ("PDVSA") shares of PDV Holding, Inc. (the "PDVH Shares") are soon to be part of a marketing process and sold to the highest and best bidder – once that sale has occurred, the Bolivarian Republic of Venezuela ("Venezuela") will likely have minimal remaining assets in the United States.  A sale process that only includes Crystallex's judgment would leave significant judgments unsatisfied and be contrary to public policy, judicial administration and, most significantly, the Sale Procedures Order itself.

OIEG's judgment should be included in the Crystallex sale (as an "Additional Judgment") and its writ of attachment issued and served (and perfected) as soon as possible.  Additionally, this Court has the power and authority to implement procedures that ensure that OIEG (and others) benefit from the orderly sale process taking place and that those creditors' legal and equitable rights are preserved – the Court should stay implementation of any service and priority procedures

---

[1] Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela ("Crystallex")*, Case No. 17-mc-151 (LPS), D.I. 481 (the "Sale Procedures Order").

(and further sale process activities) until the Temporary Stay (defined below) is lifted to ensure that creditors' equitable rights are preserved.

Following the lifting of the Temporary Stay, the Court should implement a procedure to establish judgment attachment perfection (and priority) as the date (1) a judgment creditor first moved for an attachment and/or when it could have obtained a writ of attachment from this Court, or, alternatively, (2) the date a judgment creditor obtained approval of a conditional (or unconditional) writ of attachment for a judgment creditor.  For OIEG, perfection and priority would thus be established as (1) November 4, 2019 or February 19, 2021 (or, no later than March 2, 2022), or, alternatively, (2) March 23, 2023.

## BACKGROUND

In 2019, the United States District Court for the District of Columbia (the "DC Court") recognized, as a U.S. judgment, OIEG's ICSID award against Venezuela – an award that was issued in 2015 as a result of Venezuela's expropriation of two of OIEG's glass container factories in 2010.  OIEG promptly registered its judgment with this Court and, resting on collateral estoppel principles, moved for an attachment of the PDVH Shares relying on this Court's August 9, 2018, determination in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386 (D. Del. 2018) ("*Crystallex I*"), *aff'd*, 932 F.3d 126 (3d Cir. 2019) *("Crystallex III")*.[2]  That relief having been denied, OIEG renewed its motion in February 2021, resting on an updated factual record and the same legal principles from *Crystallex I*.  D.I. 48.

On October 7, 2022, the Sale Procedures Order was entered "directing the Special Master to . . . devise a plan . . . for the sale of [the PDVH Shares] as necessary to satisfy the outstanding

---

[2] On August 23, 2018, the Court directed the issuance and service of Crystallex's writ on the shares.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018) *("Crystallex II")*.

judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court and/or devise such other transactions as would satisfy such outstanding judgment(s) while maximizing the sale price of assets to be sold . . . ."  Sale Procedures Order at p. 2.

On March 23, 2023, the Court issued its Order granting OIEG's attachment motion – a determination that PDVSA remains Venezuela's alter ego and conditional approval of a writ of attachment on the PDVH Shares – along with a 58-page Opinion detailing the reasoning underlying the Order.  D.I. 131 (the "Opinion"), 132 (the "Conditional Writ Order").[3]  By the Conditional Writ Order, the Court completed its adjudication of the attachment motion – all that remains is for the Court to receive evidence that shows satisfaction of the condition precedent for issuance and service of the writ (*i.e.*, an OFAC license).

On April 28, 2023, the Special Master filed the Supplemental Report.  *See Crystallex*, D.I. 553.  In the Supplemental Report, the Special Master advised the Court that (1) "I recommend preparations for the launch of the Marketing Process begin without any further delay beyond consideration by the Court of this Supplemental Report and any Launch Date Objections," and (2) "I recommend the Launch Date occur on the earlier of (i) September 5, 2023, and (ii) the date on which the Special Master, in his sole discretion, believes he and his Advisors are sufficiently prepared to launch the Marketing Process."  *Id*. at ¶ 7.  The proposed illustrative pertinent dates are: (1) "As soon as practicable after June 5, 2023," as the Preparation Launch Date, (2) September 5, 2023 (or earlier, in the Special Master's sole discretion) as the Launch Date, and (3) June 1, 2024 as the date for the hearing on the sale of the PDVH Shares.  *Id*. at ¶ 7.

---

[3] The Opinion and Conditional Writ Order are currently subject to appeals filed by PDVSA, *see* D.I. 135, and Venezuela.  *See* D.I. 142.  On May 5, 2023, the Third Circuit entered a temporary administrative stay, *see* D.I. 148 (the "Temporary Stay"), and subsequently entered an expedited schedule with merits briefing and oral argument to be completed by June 1.

Following the Preparation Launch Date, the "Special Master [is] directed to prepare for the Marketing Process." Sale Procedures Order at ¶ 4. Additionally, "[b]y no later than ten calendar days after the Launch Date (the 'Additional Judgment Deadline'), the Court will decide in accordance with applicable law which, if any, additional judgments (the 'Additional Judgments,' and with the Crystallex Judgment, the 'Attached Judgments') are to be considered by the Special Master for purposes of the Sale Transaction." *Id*. at ¶ 30.

On May 4, 2023, this Court entered an order docketing OFAC License No. VENEZUELA-EO13884-202301057131-1. D.I. 147, at pp. 7-8 (the "OFAC License"). The OFAC License authorizes the Clerk of the Court and any Additional Judgment Creditor to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party that has been designated an 'Additional Judgment Creditor'" under the Sale Procedures Order. *Id*.

## ARGUMENT

**I.     OIEG's judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* action.**

Prior to the Preparation Launch Date, conditional (or unconditional) writs of attachment, such as OIEG's, should be regarded as "Additional Judgments." In January 2021, this Court ordered that the eventual sale process (and corresponding procedures order) "will result in the sale of as many, but only as many, shares of PDVH as are necessary to satisfy the judgment of Crystallex (and of any other judgment creditor whose judgment may be added to the sale)." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *17 (D. Del. Jan. 14, 2021) ("*Crystallex IV*"). The Court noted that "the time has come for those procedures to be established and implemented to the greatest extent feasible under current circumstances." *Id*. at *2. The Sale Procedures Order so-ordered a process "for the sale of [PDVH Shares] as necessary

4

to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court . . . ."  Sale Procedures Order at p. 2.  Thus, the goal of the Sale Procedures Order (now supported by OFAC) is to organize and administer an orderly, fair process to obtain maximum value for the sale of the PDVH Shares for the benefit of eligible judgment creditors, including OIEG.  As made clear from OFAC's letter to the Court, the OFAC License was granted as a result of "the Order issued by the Court on March 23, 2023 [in favor of OIEG, and others], authorizing the issuance and service of writs of attachment *fieri facias* [against the PDVH Shares]."  D.I. 147, at p. 6.  Additionally, "OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of a sale as contemplated in the [Sale Procedures Order]."  Supplemental Report, Ex. 1 (the "DOJ Letter").

There is no longer any OFAC obstacle to OIEG's judgment being added as and/or deemed an "Additional Judgment" pursuant to the Sale Procedures Order.  With the Launch Date potentially being triggered in the near future, it is vital for parties to know which "additional judgments . . . are to be considered by the Special Master for purposes of the Sale Transaction" as soon as possible.  *See* Sale Procedures Order at ¶ 30.  The Sale Procedures Order provides that the determination of Additional Judgments is a matter left to the discretion of the Court, and there is nothing in the Sale Procedures Order that prohibits the inclusion of judgments that are currently subject to *conditional* writs of attachment – especially in light of the recent OFAC License.  *See* Sale Procedures Order at ¶ 30 ("the Court will decide in accordance with applicable law which, if any, *additional judgments* . . . are to be considered by the Special Master for purposes of the Sale Transaction . . . .") (emphasis added).

Since 2016, OIEG has diligently sought to enforce its ICSID award in the United States – first, by seeking recognition with the DC Court and, as soon as possible under applicable rules,

then registering its judgment with this Court and moving for attachment in early November 2019. Just as with Crystallex, OIEG is entitled to all the benefits of Delaware law and post-judgment devices that are not prohibited by OFAC sanctions – this includes being named an "Additional Judgment Creditor" and having its judgment regarded as an "Additional Judgment," and the Preparation Launch Date should be set to ensure that OIEG is included in the sale process.

II.   **Following the lifting of the Temporary Stay, the Court should issue full, unconditional orders of attachment (including by converting conditional grants) to OIEG and other creditors and direct service of those writs.**

A.   *The Court should issue a full, unconditional order of attachment (including by converting the conditional grant) for OIEG.*

In light of the DOJ Letter and the OFAC License, there is no further OFAC obstacle to this Court entering unconditional orders of attachment once the Temporary Stay is lifted (and pursuant to a procedure outlined below). The policy statements in the DOJ Letter and the OFAC License materially changed the Venezuela sanctions regime as applicable to the PDVH Shares, such that any "evidence" necessary to satisfy the conditions precedent for the writ have been satisfied.

The DOJ Letter confirmed (1) that the United States does not challenge the Court's ruling that "the current Venezuela sanctions regime does not prohibit the Prefatory Steps antecedent to the consummation of the Sales Transaction," and (2) that OFAC "will not take enforcement action against individuals or entities for participating in or complying with such Prefatory Steps set out in the [Sale Procedures Order], as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps." DOJ Letter at 2. The OFAC License subsequently authorized the Clerk of the Court and any Additional Judgment Creditor to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party that has been designated an 'Additional Judgment Creditor'" under the Sale Procedures Order. OFAC License at 8.

6

Under the terms of the Conditional Writ Order, OIEG's writ of attachment was authorized with issuance and service conditioned on OFAC licensing.  D.I. 132, at 2-3.  While the PDVH Shares remain blocked property, the DOJ Letter and the OFAC License both confirm that OFAC intends that creditors be in position to benefit from the sale process and that favorable licensing will be forthcoming from OFAC regarding the ultimate consummation of the sale of PDVH Shares. The OFAC License clears any existing OFAC obstacle to this Court acknowledging that the conditions to OIEG's writ have been satisfied.  While the Temporary Stay may *currently* limit the Court's ability to convert conditional writs of attachment, the Court's Opinion and Conditional Writ Order are more than likely to be upheld by the Third Circuit.  *See* D.I. 146 at pp. 5-6.  Given the expedited appellate schedule, this Court will be well positioned to convert conditional writs of attachment (and implement procedures for priority) after the Temporary Stay is lifted.

### B.  The Court should direct service of OIEG's order of attachment.

As the goal of the sale is to establish a value maximizing process, permitting the issuance and service of existing conditional writs to establish perfection and priority shortly after the Temporary Stay is lifted (in accordance with a procedure as discussed in Section III below) will benefit the sale process as a whole.  Establishing attachable interests on the PDVH Shares is a standard, necessary step before completing such a value maximizing sale.  Among other things, the contemplated Marketing Process under the Sale Procedures Order will require a clear statement of the judgments subject to potential satisfaction through the sale of the PDVH Shares in advance of the bid deadline.  And attachments will be prerequisites to benefit from sale proceeds.  While there is no requirement in the Sale Procedures Order (or otherwise) that Additional Judgments must have been *served* on the PDVH Shares prior to the sale hearing, the lack of an attachable interest could result in a process with bids that undervalue the PDVH Shares.  Having clarity for

creditors, the Special Master and potential bidders on *which* judgments are ultimately capable of being satisfied will be necessary to ensure that bidders are aware of the potential clearing price.

Following the lifting of the Temporary Stay, this Court will have the power to order service of OIEG's writ of attachment (and others) on the PDVH Shares. *See Crystallex III*; OFAC License. Section 169 of the Delaware General Corporation Law ("DGCL") gives this Court jurisdiction to issue attachments and consider issues of ownership of shares in Delaware companies. *See* 8 *Del. C.* § 169. Courts also have the power to attach shares by directing service of a writ of attachment on the issuer. 8 *Del. C.* §§ 169, 324(b). This has long been the law of Delaware. As this Court previously explained, "Delaware law permits a judgment creditor to obtain a writ of attachment," and "the types of property a judgment creditor may attach include a debtor's shares in a Delaware corporation." *Crystallex I*, 333 F. Supp. 3d at 387-88. Pursuant to Section 5031, "[t]he plaintiff in any judgment . . . may cause an attachment, as well as any other execution," on the judgment, "containing an order for the summoning or garnishes, to be proceeded upon and returned as in cases of foreign attachment." 10 *Del. C.* § 5031. The process is straightforward. First, Section 324(a) of the DGCL provides that "[t]he shares of any person in any corporation with all the rights thereto belonging . . . may be attached under this section . . . if such person appears on the books of the corporation to hold or own such shares." 8 *Del. C.* § 324(a). It is undisputed that PDVSA appears on the books and records of PDVH as PDVH's sole shareholder. Second, as provided by Section 324(b) of the DGCL:

> When attachment process issues for shares of stock . . . a certified copy of the process shall be left in this State . . . with the registered agent of the corporation. Within 20 days after service of the process, the corporation shall serve upon the plaintiff a certificate of the number of shares held or owned by the debtor . . . .

8 *Del. C.* § 324(b).  As this Court determined in 2021, the PDVH Shares "were attached; that is, they were (and remain) restricted from alienation by operation of the Court's order." *Crystallex IV*, 2021 WL 129803, at *6.[4]

Here, the Court has already entered an order, which is not subject to any appeal, providing:

> If the location of the PDVH Shares cannot be located with reasonable precision or if the Special Master reasonably determines that the custodian of the PDVH Shares is unlikely to cooperate in connection with an order compelling the person or entity to transfer the PDVH Shares in connection with any Sale Transaction, the Special Master shall file a recommendation with the Court in advance of the Sale Hearing regarding the appropriate steps to be taken to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction.  The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares to the applicable Successful Bidder and cancel the registration of the shares attached to the books of PDVH.

Sale Procedures Order ¶ 49.  The Court is thus well within its discretion to approve a process by which service and perfection (and priority) is established as of a date certain in accordance with an orderly procedure.  Additionally, Delaware law provides this Court with numerous options to compel the surrender of the PDVH Shares for safekeeping and to assist in service and priority determinations.  *See* 8 *Del. C.* § 324(c).  To the extent necessary, corporate shares may be reissued by Court order.  *See* 8 *Del. C.* § 168; 6 *Del. C.* § 8-112(e) ("A creditor whose debtor is the owner of a certificated security [or] uncertificated security . . . is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated

---

[4] Just as in *Crystallex*, the Venezuela Parties are collaterally estopped from asserting that the PDVH Shares cannot be (once again) attached: "the validity of the writ of attachment . . . was previously adjudicated, was actually litigated, and was necessarily decided in the court of this Court deciding to grant Crystallex's motion for a writ of attachment, issue a writ, and have it served." *Id.* at *9. So too here: "[OIEG's] renewed motion (Misc. No. 19-290 D.I. 48) for an order authorizing the issuance of a writ of attachment *fieri facias* [on the PDVH Shares], pursuant to 28 U.S.C. § 1610(c), is conditionally GRANTED." D.I. 132.  This Court has already determined that the PDVH Shares have been attached and levied upon in Delaware, and it would be inequitable to now hold otherwise.

security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.").

Thus, not only does the Court have the *authority* to approve service of writs of attachment (which it should do after the Temporary Stay is lifted), it is also in all parties' interests to have OIEG's writ of attachment (and any other similarly situated writs of attachment) issued and served in an orderly fashion before the Marketing Process gets underway in earnest.

III.    **Following the lifting of the Temporary Stay, the Court should implement a procedure (by Court order) to establish the priority of any judgments that are made Additional Judgments based on (a) the timing of a judgment creditor's motion for attachment or, alternatively, (b) the date the Court approved each conditional (or unconditional) writ of attachment.**

*A.    This Court has authority to implement procedures to establish priority.*

In Delaware, priority of attachments is governed by statute: "[a]n execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed.  An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant within the bailiwick, which shall be actually levied upon within 60 days thereafter."  10 *Del. C.* § 5081.[5]  "If several executions against the same defendant are delivered on the same day, the first delivered shall have priority.  If several executions against the same defendant are delivered together, they shall have priority according to their respective numbers."  10 *Del. C.* § 5082;[6] *see also In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Bankr. D. Del. 2006); *but see Shupe v. Lott*, 1986 WL 4260, at *3 n.1 (Del. Super. Ct. Mar. 31, 1986) ("Under common law the lien ran from the teste of the writ . . . ; under 10 *Del. C.* § 5081 the lien ran from the delivery of the writ to

---

[5] This Court's authority to conduct a post-judgment sale of the PDVH Shares is premised upon Rule 69 of the Federal Rules of Civil Procedure.  This Rule invokes state law post-judgment procedures but also retains the application of pertinent federal statutes where applicable.  *See* Fed R. Civ. P. 69(a)(1).

[6] As is clear from the numerous captions in the May 10 Scheduling Order, OIEG's attachment proceeding was one of the first in number to register and seek an attachment of the PDVH Shares – and OIEG's motion for attachment was the first filed after Crystallex.

the Sheriff"); *PSC, Inv. v. Londergan*, 1985 WL 189266, at *1 (Del. Super. Ct. Sept. 11, 1985) ("[T]he relative priority of liens of judgment creditors . . . is based on the date the writ of attachment is placed in the hands of the Sheriff in the County where the property is located or the date when the Sheriff makes the levy.").

A sale of a judgment debtor's equity securities under applicable state law, 8 *Del. C.* § 324, requires that the shares to be sold "upon an order issued therefor by the court." Because state law provides for a *judicial* sale of shares of stock, the Court has broad discretion to determine how to conduct the sale and the judgments benefitting from that sale. *See U.S. v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales."). Long-standing Delaware practice supports Court discretion in implementing perfection procedures where either "actual or constructive" delivery could suffice. *See*, *e.g.*, *McAllister v. Kallop*, 1995 WL 462210, at *16 (Del. Ch. July 28, 1995), *aff'd sub nom. Kallop v. McCallister*, 678 A.2d 526 (Del. 1996). Additionally, this Court has authority to implement procedures that account for a creditor's diligent efforts to attach assets where outside forces otherwise prevent immediate attachment and establishment of priority. *See*, *e.g.*, *Newell v. Morgan*, 2 Del. 225, 227 (Del. 1837) ("[A] judgment creditor who so takes out execution at law, but is unable to reach [the judgment debtor's property] . . . gains, by his execution and legal diligence, a legal preference to the assistance of this court . . . when such a judicial preference has been established by the superior legal diligence of any creditor, that preference will be observed in the distribution of assets"); *see also Stockley v. Horsey*, 9 Del. 603, 610 (Del. 1874) ("[T]he Court on appeal [in *Newell*] held that the principle of diligence should prevail and that the proceeds of the land should be distributed, not as equitable assets, but according to the legal priority which the judgments would have held against the land itself.").

11

**B.   This Court should implement procedures to establish priority that take into account legal and equitable considerations.**

While under normal circumstances, technical priority would be determined by the sequence of seizure of the PDVH Shares or service by the U.S. Marshals Service of the writs against the PDVH Shares in compliance with applicable requirements of Delaware law, these proceedings involve anything but normal circumstances.  Thus, OIEG proposes that this Court, following the lifting of the Temporary Stay, implement an orderly procedure to establish (or deem) priority of the Additional Judgments based on equitable and legal factors.

Following the lifting of the Temporary Stay, the Court should establish a procedure by which existing writs of attachment (conditional or otherwise) are served and perfected, based on legal and equitable considerations, such that perfection is established as of (1) the timing of a judgment creditor's initial request for an attachment and/or when, but for OFAC sanctions, it could have obtained a conditional (or unconditional) writ of attachment, or, alternatively, (2) the date the Court approved the conditional (or unconditional) writ of attachment for a judgment creditor.  For OIEG, those dates would be established as (1) November 4, 2019 or February 19, 2021[7] (or, no later than March 2, 2022), or, alternatively, (2) March 23, 2023.

In implementing these procedures, the Court is well within its discretion to enter an order that sequences the issuance and ultimate service and levy by the U.S. Marshal on the PDVH Shares to recognize (and solidify) the priority proposal(s) above and to ensure an orderly process for those with existing writs of attachment.  Given the length of time that passed since OIEG first sought (and then renewed) its attachment and subsequently obtained a conditional writ, OIEG submits

---

[7] OIEG's initial motion was filed on November 4, 2019 – its renewed motion was subsequently filed on February 19, 2021.  For the reasons discussed below, OIEG's initial motion (based on collateral estoppel principles) should be considered by the Court for priority purposes because the eventual alter ego decision in March 2023 confirmed that an alter ego decision in 2019 was, and should have been, the same as in 2018 (in *Crystallex I*) or 2022 (when the Court ultimately granted the first conditional writ of attachment).

that permitting other judgment creditors to have equal (or senior) priority would be inequitable –

by no fault of OIEG, other creditors obtained conditional writs of attachment before OIEG,[8] and

others have been able to reach OIEG's current procedural status (i.e., a conditional writ of

attachment based on alter ego principles) even though their attachment motions were filed long

after OIEG's original[9] and renewed motions were briefed *and* subjected to a lengthy evidentiary

hearing.[10]

OIEG's original attachment motion, filed in November 2019, based on collateral estoppel

arguments, was denied.  However, the recent Opinion confirms that OIEG's collateral estoppel

argument was right at the time.[11]  In the Opinion, this Court determined that not only was the

Maduro regime acting just as it did in 2018 when *Crystallex I* was decided, but also that the current

recognized Venezuelan government had changed nothing (at least as far as control over PDVSA

and its assets are concerned) – thus, as argued by OIEG in 2019, the change in government had no

legal significance regarding PDVSA's status as an alter ego of Venezuela.

But for OFAC guidance implemented post-*Crystallex I* and after OIEG's original motion,

*see* D.I. 25, OIEG would have been eligible to obtain its alter ego findings and writ of attachment

in (or shortly after) November 2019.  Furthermore, even taking into account the OFAC sanctions

and this Court's determination that collateral estoppel principles did not apply in 2019, OIEG was,

---

[8] *See, e.g., Phillips Petroleum Company Venezuela, et. al. v. Petroleos de Venezuela, S.A., et. al.*, Case No. 19-mc-342 (LPS); *Red Tree Investments, LLC v. Petroleos de Venezuela, et. al.*, Case Nos. 22-mc-68 (LPS), 22-mc-69 (LPS); *ConocoPhillips Gulf of Paria B.V. v. Petroleos de Venezuela, S.A., et. al.*, Case No. 22-264; *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*, Case No. 22-mc-347 (LPS).

[9] *See, e.g., Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venezuela*, Case No. 20-mc-257 (LPS).

[10] *See, e.g., ACL1 Investments Ltd., et. al. v. Bolivarian Republic of Venezuela*, Case No. 21-mc-46 (LPS); *Rusoro Mining Limited v. Bolivarian Republic of Venezuela*, Case No. 21-mc-481 (LPS); *Koch Minerals Sarl, et. al. v. Bolivarian Republic of Venezuela*, Case No. 22-mc-156 (LPS); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, Case No. 22-mc-453 (LPS).

[11] The facts of the two cases do not need to be identical so long as any factual differences have no 'legal significance' in 'resolving the issues presented in both cases.'"  *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984).

on March 2, 2022, eligible to obtain its requested relief based on its renewed motion filed in February 2021.   As the Court noted in 2022, its decision *not* to issue findings of fact and conclusions of law on the alter ego issue was a result of its reluctance to do so in light of existing OFAC sanctions[12] – however, those OFAC sanctions existing in March 2022 *did not* prevent the grant of a conditional writ of attachment, and OIEG should not now be subordinated to any creditor that was able to obtain its conditional writ of attachment on or after March 2, 2022.[13]   It would be inequitable to permit certain creditors to obtain priority over OIEG when OIEG had already made a full case of (at minimum) legal parity as of March 2022 – and, but for OFAC sanctions, equitable priority.

In the alternative, this Court should implement a procedure (following the lifting of the Temporary Stay) that establishes priority of judgment creditors based on when this Court first approved such creditor's motion for a writ of attachment, conditional or otherwise (and to the extent service is to be made on the same day, by case number, *see* 10 *Del. C.* § 5082).   Such a procedure would be consistent with Delaware law that establishes a first-in-time priority structure – which benefits judgment creditors that seek and obtain relief from the Court first.

---

[12] "The Court is declining to make [alter ego] findings of fact, notwithstanding certain of the judgment creditors' efforts to make a record on which such findings could be based, because it has concluded that it should first issue its legal conclusions about the impact of the [OFAC] sanctions and determine whether to certify an interlocutory appeal of those conclusions." *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *9 (D. Del. Mar. 2, 2022).

[13] "From the perspective of judicial administration, it makes sense that ConocoPhillips and the other judgment creditors will all have access to the same form of relief at the same point in their judgment enforcement efforts." *OI European Group B.V.*, 2022 WL 611563, at *9.  The "other judgment creditors" with attachment motions pending at that time were OIEG, Huntington and ACL.

**CONCLUSION**

For the reasons set forth above, the Court should (1) deem OIEG's judgment to be an "Additional Judgment" under the Sale Procedures Order (and deem OIEG to be an "Additional Judgment Creditor"), and (2) following the lifting of the Temporary Stay, implement procedures to establish the timing of issuance, service, perfection, and priority of existing writs of attachment based on equitable and legal considerations discussed herein.

Dated: May 24, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Jonathan M. Albano (*pro hac vice*)
Christopher L. Carter (*pro hac vice*)
One Federal Street
Boston MA 02110
Telephone: 617-341-7700
Facsimile: 617-341-7701
jonathan.albano@morganlewis.com
christopher.carter@morganlewis.com

**SEQUOR LAW, P.A.**

Edward H. Davis, Jr. (*pro hac vice*)
Fernando J. Menendez (*pro hac vice*)
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
edavis@sequorlaw.com
fmenendez@sequorlaw.com

*Attorneys for Plaintiff, OI European Group B.V.*

15